**EXHIBIT 4**

# PROTECTIVE COVENANTS AGREEMENT

*[For employees in Georgia, Tennessee, Alabama, Florida, Maryland, District of Columbia, Virginia]*

THIS PROTECTIVE COVENANTS AGREEMENT ("Agreement"), effective this 10th day of April, 2006, is made between BB&T Investment Services, Inc., a North Carolina corporation ("Employer"), and Adol T. Owen-Williams, Jr. ("Employee") (collectively, the "Parties").

## RECITALS

A.   *Employer desires to employ Employee (or to continue such employment, as the case may be), and Employee desires to accept such employment with Employer, in a position of trust and confidence to aid Employer in the furtherance of services and/or products to and for its customers and prospective customers;*

B.   *Employee acknowledges that Employer has made a substantial investment in time and resources in developing its business, services, products, and customer relationships and that it is a legitimate business interest of Employer to protect its investment and its confidential information and trade secrets, and to retain the good will of its customers;*

C.   *Employer and Employee desire to set forth in writing certain covenants, terms, and conditions of their agreement and understanding as to such employment, with this Agreement being ancillary to, an integral term and condition of and in consideration for such employment with Employer, the compensation and benefits to be provided pursuant to Section 2 hereof, and, as and if applicable to Employee's position, Employer's sponsorship of Employee for licensing, Employer's registration of Employee with various exchanges, and Employer's provision of office facilities and sales support;*

NOW, for the above-referenced and other good and valuable consideration, the sufficiency of which is hereby acknowledged, and intending to be legally bound, the Parties voluntarily agree as follows:

1.   **Position and Duties**.  Subject to the terms of this Agreement, Employer agrees to employ (or continue to employ, as the case may be) Employee as an at-will employee in the position of **Investment Counselor**. Employee accepts such at-will employment with Employer. Employee agrees to perform those duties, responsibilities, and services that relate or are incidental to Employee's position and capacity (including but not limited to the creation and maintenance of goodwill through contacts with Employer's customers) in addition to other duties, responsibilities, and services as may be requested and/or assigned to Employee from time to time by authorized management officials.

Employee shall render Employee's services exclusively to Employer during Employee's employment with Employer and shall devote Employee's full and exclusive working time, attention, and best efforts and abilities to represent Employer properly and to perform and discharge Employee's duties, responsibilities, and services. Employee also agrees to honor the applicable duty of loyalty to Employer and to conduct all business of Employer in a lawful manner and in accordance with this Agreement and all policies of and instructions from Employer.

Employee understands that compliance with the obligations referenced in this Section and throughout this Agreement does not ensure or guarantee any continuation of employment with Employer and that, as referenced in Section 3, Employee's employment with Employer remains at-will at all times.

1

2. **Compensation and Benefits**. Employee's salary compensation shall be paid in accordance with Employer's regular payroll practices, on its normal payroll periods, and subject to any and all withholdings pursuant to applicable law.

If Employee is employed for a partial calendar month for his or her first or last month of employment, then Employee's compensation for such partial month will be pro-rated based on the number of days actually employed during that month.

In addition to salary compensation, Employee may also be eligible for commission-based compensation, in accordance with any and all terms, conditions, and eligibility requirements for any applicable commission plan, policy, or program, as may from time to time be amended or prescribed by Employer in its sole discretion. Such commission-based compensation shall also be paid in accordance with Employer's regular payroll practices, on its normal payroll periods, and subject to any and all withholdings pursuant to applicable law.

Employee will also be eligible to participate in employee benefit programs and fringe employee benefits generally provided by Employer to similarly situated employees, subject to any and all terms, conditions, and eligibility requirements for these programs and benefits, as may from time to time be amended or prescribed by Employer in its sole discretion.

3. **Employment-at-Will**. EMPLOYEE ACKNOWLEDGES AND UNDERSTANDS THAT NOTHING SET FORTH IN THIS AGREEMENT CREATES OR IS INTENDED TO (OR IS TO BE CONSTRUED TO) CREATE ANY EMPLOYMENT CONTRACT OF ANY SPECIFIED TERM BETWEEN THE PARTIES. RATHER, THE PARTIES AGREE THAT EMPLOYEE'S EMPLOYMENT IS CONSIDERED AT WILL AND MAY BE TERMINATED BY EITHER EMPLOYEE OR EMPLOYER AT ANY TIME, FOR ANY REASON, AND WITH OR WITHOUT NOTICE.

4. **Employee Obligations and Covenants**.

(a) <u>Confidential Information and Trade Secrets.</u> During Employee's employment, the Parties acknowledge that Employer will disclose (and/or has disclosed) to Employee for use in Employee's employment and that Employee will be provided (and/or has been provided) access to and otherwise make (and/or made) use of, acquire (and/or acquired), create (and/or created), or add to (and/or added to) certain valuable, confidential, proprietary, and secret information of Employer (whether tangible or intangible and whether or not electronically kept or stored), including financial statements, drawings, designs, manuals, business plans, methods, strategies, techniques, processes, procedures, formulas, inventions, marketing and pricing data, pricing policies, customer and prospect lists and contacts, contracts, sources and identity of vendors and contractors, financial information of customers and Employer, customer buying habits and product preferences, and other proprietary documents, materials, or information indigenous to Employer, its businesses and activities, or the manner in which Employer does business ("Confidential Information").

Employee acknowledges that Confidential Information also includes (i) confidential information regarding the identification and preferences of customers and the terms and conditions upon which Employer has dealt or will deal with customers, including but not limited to such information regarding customers' investments, earnings, transactions with Employer and transactions by customers with third parties which have been arranged or facilitated by Employer and (ii) confidential information of third parties that has been provided to Employee under obligations of non-disclosure.

Employee further acknowledges that (i) such Confidential Information is an extremely valuable, unique and special asset to Employer in conducting its business because the information is kept confidential and is not generally known to, nor readily ascertainable by proper means by, the general public or to other persons (including Employer's competitors) who could obtain economic value from its disclosure or use, (ii) Employer engages in reasonable efforts to maintain the secrecy of such Confidential Information, and (iii) such Confidential Information may be entitled to trade secret status and protection under applicable law.

Confidential Information does not include information generally known or easily obtained from public sources or public records (unless Employee causes such Confidential Information to become generally known or easily obtained therefrom).

(i) To the extent that the Confidential Information rises to the level of a trade secret under applicable law, then Employee shall, during Employee's employment and for as long thereafter as such Confidential Information remains a trade secret (or for the maximum period of time otherwise allowed under applicable law), protect and maintain the confidentiality of such trade secrets and refrain from disclosing, copying, or using any such trade secrets without Employer's prior written consent, except as necessary in Employee's performance of Employee's duties while employed with Employer.

(ii) To the extent that the Confidential Information defined above does not rise to the level of a trade secret under applicable law, Employee shall, during Employee's employment and for a period of two (2) years following the date of any voluntary or involuntary termination of Employee's employment for any reason by either Employee or Employer, protect and maintain the confidentiality of the Confidential Information and refrain from disclosing, copying, or using any Confidential Information without Employer's prior written consent, except as necessary in Employee's performance of Employee's duties while employed with Employer.

(b) <u>Return of Property of Employer</u>. Upon any voluntary or involuntary termination of Employee's employment for any reason by either Employee or Employer and at any time upon request of Employer, Employee agrees to immediately return to Employer all property of Employer that Employee created, used, possessed or maintained while working for Employer from whatever source and whenever created, including all reproductions or excerpts thereof.

Employee acknowledges that such property of Employer includes, but is not limited to, any and all equipment, supplies, records including the names and addresses of customers or clients, notes, materials, documents or other writings, paper files, customer files, electronic files, records, computer disks and computer-generated or retrievable data, or other tangible or intangible things that may or may not relate to or otherwise comprise Confidential Information or trade secrets (as defined by applicable law).

This provision does not apply to purely personal documents of Employee, but it does apply to business calendars, Rolodexes, customer lists, contact sheets, computer programs, disks and their contents and like information that may contain some personal matters of Employee.

Employee acknowledges that all title, right, and interest to such property (including but not limited to Confidential Information) is vested exclusively in Employer and that Employee retains no title, right, or interest to such property.

(c) <u>Non-Diversion of Business Opportunity</u>. During Employee's employment with Employer and consistent with Employee's duties and fiduciary obligations to Employer, Employee shall

3

(i) disclose to Employer any business opportunity that comes to Employee's attention during Employee's employment with Employer and that relates to the business of Employer or otherwise arises as a result of Employee's employment with Employer and (ii) not take advantage of or otherwise divert any such opportunity for Employee's own benefit or that of any other person or entity without prior written consent of Employer.

(d) Non-Solicitation of Customers. During Employee's employment and for a period of one (1) year following the date of any voluntary or involuntary termination of Employee's employment for any reason by either Employee or Employer, Employee agrees not to, directly or indirectly, contact, solicit, divert, appropriate, or call upon with the intent of doing business with the customers or clients of Employer with whom Employee has had material contact during the final year of Employee's employment with Employer (including prospective customers or clients of Employer with whom Employee had such contact during such period) if the purpose of such activity is either (1) to solicit these customers or clients (or prospective customers or clients) for a Competitive Business as defined below (including but not limited to any Competitive Business started by Employee) or (2) to otherwise encourage any such customer or client to discontinue, reduce, or adversely alter the amount of its business with Employer.

Employee acknowledges that due to Employee's relationship with Employer, Employee will develop (and/or has developed) special contacts and relationships with Employer's customers and clients (and prospective customers and clients), and that it would be unfair and harmful to Employer if Employee took advantage of these relationships in a Competitive Business.

A "Competitive Business" is an enterprise that is in the business of providing services and/or products as a broker-dealer of securities (including but not limited to any of the following services: retailing corporate securities over-the-counter as a broker-dealer, retailing mutual funds, brokering U.S. government securities, brokering municipal securities, selling securities for non-profit organizations, selling tax shelters or limited partnerships in primary distributions, selling variable or fixed annuities, and providing services and/or products related thereto), which services and/or products relate to Employer's business and are substantially similar or identical to those offered by Employer during Employee's employment with Employer.

(e) Non-Piracy of Employees and Independent Contractors. During Employee's employment and for a period of one (1) year following the date of any voluntary or involuntary termination of Employee's employment for any reason by either Employee or Employer, Employee covenants and agrees that Employee shall not, directly or indirectly: (a) solicit, recruit, or hire (or attempt to solicit, recruit, or hire) or otherwise assist anyone in soliciting, recruiting, or hiring, any employee or independent contractor of Employer who performed work for Employer within the final year of Employee's employment with Employer or (b) otherwise encourage, solicit, or support any such employee or independent contractor to sever his or her relationship with Employer, until such individual's relationship with Employer has ceased for at least six (6) months.

(f) Acknowledgement. It is acknowledged that the purpose of these covenants and promises is (and that they are necessary) to protect Employer's legitimate business interests, to protect Employer's investment in the specialized training provided to (and in the enhancement of the skills obtained by) Employee during Employee's employment in addition to the overall development of its business and the good will of its customers, and to protect and retain (and to prevent Employee from unfairly and to the detriment of Employer utilizing or taking advantage of) such business trade secrets and Confidential Information of Employer and those substantial contacts and relationships (including those with customers

4

and employees of Employer) which Employee established due to Employee's employment with Employer.

Employee represents that Employee's experience and abilities are such that existence or enforcement of these covenants and promises will not prevent Employee from earning or pursuing an adequate livelihood and will not cause an undue burden to Employee or Employee's family. Employee acknowledges that these covenants and promises (and their respective time, geographic and/or activity limitations) are reasonable and that such limitations are no greater than necessary to protect Employer's legitimate business interests in light of Employee's specialized and unique position, Employee's area(s) of responsibility for Employer, and the nature and scope of Employer's business and market.

(g) Attorneys' Fees. In the event that it is necessary for Employer to employ legal counsel to represent it or present its claim for damages, injunction, specific performance, or recovery of money as against Employee due by reason of any actual or threatened breach of this Section and Employer is the prevailing party in such claim, Employee shall pay, in addition to such sums as may be due or such other relief to which Employer may be entitled, reasonable fees for such legal counsel and related costs in such claim.

5. **Work Product; Inventions**.

(a) Ownership by Employer. Employer shall own all right, title and interest in and to all work product developed by Employee in Employee's provision of services to Employer, including without limitation, all preliminary designs and drafts, all other works of authorship, all derivative works and patentable and unpatentable inventions and improvements, all copies of such works in whatever medium such copies are fixed or embodied, and all worldwide copyrights, trademarks, patents or other intellectual property rights in and to such works (collectively the "Work Product"). All copyrightable materials of the Work Product shall be deemed a "work made for hire" for the purposes of U.S. Copyright Act, 17 U.S.C. § 101 et seq., as amended (the "Copyright Act").

(b) Assignment and Transfer. In the event any right, title or interest in and to any of the Work Product (including without limitation all worldwide copyrights, trademarks, patents or other intellectual property rights therein) does and shall not vest automatically in and with Employer, Employee agrees to and hereby does irrevocably assign, convey, and otherwise transfer to Employer, and Employer's respective successors and assigns, all such right, title and interest in and to the Work Product with no requirement of further consideration from or action by Employee or Employer.

(c) Registration Rights. Employer shall have the exclusive worldwide right to register, in all cases as "claimant" and when applicable as "author", all copyrights in and to any copyrightable element of the Work Product, and file any and all applicable renewals and extensions of such copyright registrations. Employer shall also have the exclusive worldwide right to file applications for and obtain (i) patents on and for any of the Work Product in Employee's name and (ii) assignments for the transfer of the ownership of any such patents to Employer.

(d) Additional Documents. Employee agrees to execute and deliver all documents requested by Employer regarding or related to the ownership and/or other intellectual property rights and registrations specified herein. Employee hereby further irrevocably designates and appoints Employer Employee's agent and attorney-in-fact to act for and in Employee's behalf and stead to execute, register and file any such assignments, applications, registrations, renewals and extensions and to do all other lawfully permitted acts to further the registration, prosecution and issuance of patents, copyright or

5

similar protections with the same legal force and effect as if executed by Employee.

6. **Injunctive Relief.** Employee acknowledges that it would be difficult to calculate Employer's damages from Employee's breach of any of those obligations in this Agreement, that such breach would cause Employer irreparable injury and damage, and that money damages would therefore be an inadequate remedy. Accordingly, upon such breach, Employee acknowledges that Employer may seek and shall be entitled to temporary, preliminary, and/or permanent injunctive relief against Employee, and/or other appropriate orders to restrain such breach. In the event of such injunctive relief, Employer shall not be required to post or pay any bond. Nothing in this Section shall limit Employer from seeking any other damages or relief provided by applicable law for breach of this Agreement or any section or provision of this Agreement.

7. **Miscellaneous.**

(a) **Employee Claims.** Employee acknowledges and agrees that the existence of any claim or cause of action against Employer shall not constitute a defense to the enforcement by Employer of Employee's covenants, obligations, or undertakings in this Agreement.

(b) **Legality and Severability.** In the event a court of competent jurisdiction finds any provision (or subpart thereof) of this Agreement to be illegal or unenforceable, the Parties agree that the court shall modify such provision(s) (or subpart(s) thereof) to make such provision(s) (or subpart(s) thereof) and this Agreement valid and enforceable. The provisions (or subpart(s) thereof) of this Agreement are severable, and any illegal or unenforceable provision (or subpart thereof), or any modification by any court, shall not affect the remainder of this Agreement, which shall continue at all times to be valid and enforceable.

(c) **Entire Agreement; Modification.** This Agreement constitutes the entire understanding between the Parties regarding the subject matters addressed in this Agreement and supersedes any prior oral or written agreements, promises, representations, warranties, or inducements between or by the Parties regarding said subject matters. This Agreement can only be modified by a writing signed by both Parties.

(d) **Governing Law; Interpretation.** This Agreement shall be governed by the laws of the State of Georgia without regard to the conflicts of laws provisions of this State. This Agreement shall be deemed to have been drafted by both parties in a collaborative effort, and any rule of contract interpretation, whereby ambiguities are interpreted in favor of the non-drafting party, shall be inapplicable to this Agreement.

(e) **Review and Voluntariness of Agreement.** Employee agrees and represents that he or she (i) has had a sufficient and reasonable amount of time in which to review and consider this Agreement, (ii) has the full legal capacity to enter into this Agreement, (iii) has carefully read, and has fully and completely understood, all of the provisions of this Agreement and their meaning, intent, and legal effect, and (iv) has knowingly and voluntarily entered into this Agreement.

(f) **Non-Waiver.** The failure of Employer to insist upon or enforce strict performance of any provision of this Agreement or to exercise any rights or remedies thereunder will not be construed as a waiver by Employer to assert or rely upon any such provision, right, or remedy in that or any other instance.

6

(g) <u>No Conflicting Obligations</u>. Employee acknowledges and represents that Employee's execution of this Agreement and performance of employment-related obligations and duties for Employer will not cause (and has not caused) any breach, default, or violation of any other employment, non-disclosure, confidentiality, non-competition, or other agreement to which Employee may be a party or otherwise bound.

Moreover, Employee agrees that Employee (A) will not use (and has not used) in the performance of such employment-related obligations and duties for Employer and (B) will not otherwise disclose to Employer (and has not otherwise disclosed to Employer), any trade secrets or confidential information of any person or entity (including any former employer) if and to the extent that such use or disclosure may cause a breach or violation of any obligation or duty owed to such employer, person, or entity under any agreement or applicable law.

In the event that Employee's above representation(s) should be untrue to any material extent and a related third-party action should be initiated against Employer, Employee agrees to indemnify Employer for any resulting liability and incurred costs, including Employer's attorneys' fees, in full.

(h) <u>Adequate Consideration</u>. Employee acknowledges that this Agreement is supported by sufficient and adequate consideration including, but not limited to, employment or continued employment which is in addition to anything of value to which Employee is already entitled.

(i) <u>Recitals.</u> All of the recitals and representations in the preamble of this Agreement are incorporated into and made a material part of this Agreement.

(j) <u>Assignment</u>. Employer may assign this Agreement and Employee's obligations to the fullest extent authorized by law. The services to be provided by Employee hereunder may not be delegated by Employee, nor may Employee assign any of his rights hereunder. Except as otherwise provided herein, this Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, successors or assigns.

8. <u>Arbitration</u>. The Parties agree that any and all disputes, disagreements, claims, or other conflicts regarding, relating to, or arising out of this Agreement, the Parties' employment relationship, any termination thereof, any employment-related act or practice by Employer or its employees, representatives, or agents, any breach of this Agreement, or any alleged breach of this Agreement, shall be subject and submitted to binding arbitration.

In the event such a dispute, disagreement, claim, or other conflict arises, the Parties agree to utilize the services of the National Association of Securities Dealers, Inc. ("NASD") for such binding arbitration, unless the NASD declines such arbitration, in which event the Parties agree to utilize the services of the American Arbitration Association ("AAA").

The arbitration shall be conducted in Charlotte, North Carolina and in accordance with the rules of the NASD or AAA (as the case may be), except that the rules set forth in this Section shall govern such arbitration to the extent that they conflict with the rules of the NASD or AAA. The cost of the arbitration (exclusive of attorneys' fees) shall be borne equally by the Parties unless otherwise agreed to by the Parties.

Each party consents to the personal and subject matter jurisdiction of the arbitration proceedings and waives any defense based upon said jurisdiction, venue, or forum. The award and any order from the

7

arbitration shall be final and binding on all parties to such arbitration and judgment thereon may be entered in any court having jurisdiction thereof.

Notwithstanding the foregoing and without waiving its right to arbitration as provided herein, Employer shall have the right to seek equitable remedies, including injunctive relief, in any court of competent jurisdiction as to any said dispute, controversy, or claim arising under or in connection with Section 4 or 5 of this Agreement.

**AS REFERENCED ABOVE, EMPLOYEE ACKNOWLEDGES AND UNDERSTANDS THAT NOTHING SET FORTH IN THIS AGREEMENT CREATES OR IS INTENDED TO (OR IS TO BE CONSTRUED TO) CREATE ANY EMPLOYMENT CONTRACT OF ANY SPECIFIED TERM OR DURATION BETWEEN THE PARTIES. INSTEAD, THE PARTIES ACKNOWLEDGE THAT EMPLOYEE'S EMPLOYMENT IS CONSIDERED AT WILL AND MAY BE TERMINATED BY EITHER EMPLOYEE OR EMPLOYER AT ANY TIME, FOR ANY REASON, AND WITH OR WITHOUT NOTICE.**

Employer:

BB&T Investment Services, Inc.

Date: March 23, 2006     By: _____
                             T.J. Roccograndi, Regional Sales Manager

Employee:

Date: 3/24/06     _____
                  Signature of Employee

                  _____
                  Printed Name of Employee

8