**EXHIBIT A**

# IN THE SUPERIOR COURT
## OF THE DISTRICT OF COLUMBIA

### CIVIL DIVISION

| | | |
|---|---|---|
| ADOL OWEN-WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 3084 CA 06 |
| v. | ) | |
| | ) | |
| BB&T INVESTMENT SERVICES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT BB&T INVESTMENT SERVICES, INC.'S
## NOTICE OF FILING OF NOTICE OF REMOVAL

TO THE HONORABLE JUDGE OF SAID COURT AND PLAINTIFF:

Please take notice that Defendant BB&T Investment Services, Inc. filed a Notice of

Removal in this action in the United States District Court for the District of Columbia on May

19, 2006. A copy of the said Notice of Removal is attached to this Notice as Exhibit 1, and is

served and filed herewith. Pursuant to 28 U.S.C. § 1446(d), all further proceedings in this action

shall take place in the United States District Court and the District of Columbia court shall

proceed no further unless and until the case is remanded.

Respectfully submitted,

Alan L. Briggs (D.C. Bar #445237)
Squire, Sanders & Dempsey L.L.P.
1201 Pennsylvania Avenue, N.W.
Suite 500
Washington, D.C. 20004
(202) 626-6600 (telephone)
(202) 626-6780 (facsimile)

06 0948

Dated: May 19, 2006

*Counsel for BB&T Financial Services, Inc.*

**FILED**

MAY 1 9 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

**EXHIBIT B**

# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

## Civil Division

ADOL OWEN-WILLIAMS          )
1031 Hillside Lake Terrace      )
North Potomac, Maryland 20878  )
                                )
        Plaintiff,              )
                                )
v.                              )
                                )
BB&T Investment Sevices, Inc.   )
C T Corporation System          )
1015 15th Street, N.W.          )
Suite 1000                      )
Washington, D.C. 20005          )
                                )
        Defendants.             )

0003024--06

Case Number:

RECEIVED
Civil Clerk's Office

APR 2 1 2006

Superior Court of the
District of Columbia
Washington, D.C.

## COMPLAINT
### (Equitable Relief, Breach of Contract and Detrimental Reliance)

NOW COMES the plaintiff Adol Owen-Williams, by and through his undersigned Counsel and complains against the Defendant as follows:

### Parties

1.    Adol Owen-Williams resides at 1031 Hillside Lake Terrace, North Potomac, Maryland in Montgomery County.

2.    BB&T Investment Services, Inc. Is a regional Bank with headquarters in the State of North Carolina and doing business in the District of Columbia.

3.    The position of employment offered to and accepted by Adol Owen-Williams was located in the District of Columbia.

### Jurisdiction

4.    This court has subject matter jurisdiction over all matters seeking equitable relief.

06 0948

FILED

MAY 1 9 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

5.    The position of employment offered to, and accepted by, Adol Owen-Williams was located in the District of Columbia.

6.    This Court has jurisdiction pursuant to Rules of the District of Columbia.

### Background

7.    Adol Owen-Williams graduated from the University of Maryland in 1988 *ACW* with a Bachelor of Arts in business management and a minor in finance. Prior to graduating from the University of Maryland, Plaintiff briefly attended Towson University.

8.    On September 9, 1987, while attending Towson University, Plaintiff was arrested by the Towson University Campus Police for allegedly entering an all-womens dormitory during non-visiting hours, where his girlfriend at the time resided. While he was being arrested, Plaintiff engaged in a shouting match with the campus police officer. He was charged with various offenses including assault and trespass. All charges were dopped except the trespass charge to which Plaintiff pled guilty. After accepting responsibilty for his actions as a young college student, Plaintiff sought to put the incident behind him and move on with his life.

9.    After graduating from the University of Maryland, Mr. Owen-Williams launched his career as a financial consultant at Dean Witter Reynolds and eventually moved on to a position at Merrill Lynch.

10.    Mr. Owen-Williams is a licensed broker registered with the NASD and has at all times been a member in good standing with the NASD.

11.    In 1992, Plaintiff decided it would be a good idea to have his criminal record stemming from the Towson University incident expunged. On August 28, 1992 the Order

2

for Expungement of Records was entered in the District Court for Baltimore County, Maryland. A copy of the Order is attached hereto as **Exhibit A**. This Order was sent to all law enforcement agencies that kept Plaintiff's Towson University Incident records on file. A copy of this Order was also sent to the NASD because Plaintiff had provided the licensing body a copy of the criminal record as part of his disclosure requirements.

12.    In the Fall of 1999, Mr. Owen-Williams had the misfortune of crossing paths with an individual who would leave a lasting and negative impact on his life. Plaintiff's neighbor, Ms. Peggy Weldon sought to involve Plaintiff in a scheme to defraud an insurance company. When Plaintiff declined to participate, Ms. Weldon began to systematically terrorize Plaintiff. Eventually Plaintiff sought a series of Restraining Order against Ms. Weldon and filed a Complaint with the Montgomery County, Maryland police after Ms. Weldon tried to run him over with her automobile.

13.    Ms. Weldon retaliated by filing a series of false and harassing complaints against Plaintiff leading to his arrest on two different occasions. Ms. Weldon's scheme came undone when she made the absurd allegation, under oath, that Plaintiff had threatened her life in open court in front of Judge Mitchell in the Montgomery County, Maryland District Court. A review of the Court's audio tapes revealed no such threat was ever made. The states attorney declined to prosecute Mr. Owen-Willians on any charges and decided instead to prosecute Ms. Weldon for making false statements under oath. A copy of the October 26, 2004 notice of *Nolle Prosequi* is attached hereto as **Exhibit B**.

14.    This incident has left Mr. Owen-Williams scarred. Despite the Maryland States Attorney's decision to decline to prosecute him, his reputation will be forever damaged.

3

In the eyes of the law Mr. Owen-Williams is an innocent man, however, anyone who is presented with this bizarre saga will always prejudge him.

15.    Plaintiff tried as best as he could to put the previous year's nightmare behind him and In January 2005 was offered a position as a financial adivisor at Mass Mutual Financial Services, Inc., a subsidiary of Mass Mutual Insurance Company.  This position involved substantial responsibilities and was a great achievement for Mr. Owen-Williams.  As part of the application process, Plaintiff made a full disclosure of the previous years incident with Ms. Weldon.  After checking with the NASD and conducting their own background investigation Mass Mutual hired Mr. Owen-Williams.

16.    Mr. Owen Williams thought he had the perfect job until a headhunter contacted him in January 2006 and told him about another job opening at BB&T Investment Services ("BB&T").  The position at BB&T Investment Services was truly Mr. Owen-Williams' "dream job."  Despite a promising future at Mass Mutual Insurance Company, Plaintiff contacted BB&T regarding the opening.

17.    After two pre-screening telephone interviews with BB&T personnel, Plaintiff was invited to interview for the position with T.J. Roccograndi, the Capitol Region Vice President and Plaintiff's prospective superior.  At this first interview in late January of 2006 Plaintiff told Mr. Roccograndi upfront about the incidents involving Ms. Weldon and the legal odyssey it precipitated.  Always wary that he would be prejudged despite being innocent of all charges Plaintiff was thrilled when he was invited for a second interview.

18.    Plaintiff interviewed a second time with Mr. Roccograndi in February of 2006.

19.    After the second interview, Plaintiff had a series of three interview with various

4

BB&T human resources personnel. Throughout this process Plaintiff was submitting information for an ongoing background investigation. BB&T also contacted the NASD for information on Plaintiff.

20.    On information and belief, the NASD provided BB&T with a copy of the 1987 Towson University incident police report from their backup files, despite having recieved the expungement Order nearly twelve years earlier.

21.    On March 21, 2006, Plaintiff recieved a telephone call from Mr. Roccograndi who informed him that he had been chosen to fill the position and an offer of employment and employment contract would be arriving in the mail. Two days later, on March 23, 2006, plaintiff recieved a letter offering him the position and an employment contract. He promptly executed and returned the contract.

22.    Mr. Owen-Williams was informed that his first day at his new job would be on April 17, 2006. He was expected to travel to BB&T's headquarters in North Carolina to begin a training program. BB&T made flight and hotel arrangements for Plaintiff.

23.    The day Plaintiff accepted the BB&T job he resigned from Mass Mutual Insurance Company, agreeing to stay on to transition his new clients to other Mass Mutual financial advisors. Plaintiff had to give up all of his current client base.

24.    On April 12, 2006, after Plaintiff's last day at Mass Mutual Insurance Company and while Plaintiff was preparing for his new position he received a telephone call from T.J. Roccograndi informing him that, "their was a problem but he [Roccograndi] was looking into it." Later that day T.J. Roccograndi called again and this time informed Plaintiff that he no longer had his job at BB&T. Mr. Owen-Willians was devistated. When pressed for

5

details, Mr. Roccograndi told Plaintiff that a compliance officer had uncovered the Towson State trespass from 1987, which had not been disclosed during the investigation process. Plaintiff explained the expungement.

25.    On Monday, April 17, 2006, the day Plaintiff was to start work, Plaintiff through counsel again contacted BB&T officials. This time the explainaton given for his termination was due to the about the incidents involving Ms. Weldon. This information was fully disclosed to T.J. Roccograndi during the first interview in January, had this been a bar to his employment with BB&T Plaintiff never would have left his previous job.

26.    Plaintiff's has already resigned from his position at Mass Mutual Insurance Company in reliance on the job offer (and his acceptence) from BB&T. Moreover, Plaintiff left all of his clients at Mass Mutual Insurance Company.

27.    Plaintiff's career, once promising, has been totally destroyed. BB&T has induced plaintiff to quit his previous job and accept an offer of employment only to wrongfully, and without just cause, terminate Plaintiff before he ever reported to work.

28.    Mr. Adol Owen-Williams has been irreparably harmed. His employment record will forever be marred by BB&T. Whenever he is asked whether he has ever been terminated from a job - he must now answer yes. BB&T has wrongfully flaunted the expungment Order and pronounced plaintiff guilty of all the charges Ms. Welder lodged against him and that the Maryland States Attorney refused to prosecute, by considering these items and basing their decision to terminate him upon them.

29.    Had BB&T simply informed Plaintiff at the outset, that the Welder incidents would be a bar to employment he never would have left his current job. Instead BB&T strung

not bar his possible employment. Subsequently, Plaintiff interviewd four additional times and was offered employment on March 21, 2006.

37.    Plaintiff still considers the BB&T position his "dream job" and would still like to be employed by BB&T.

WHEREFORE the premises considered, Plaintiff respectfully requests that this Court direct BB&T to respect and honor the employment agreement entered into with Adol Owen-Williams, and allow Plaintiff to begin his employment as scheduled.

## COUNT II.
### (Breach of Contract)

38.    Plaintiff hereby repeats and incorporates paragraphs 1 - 30 as if fully restated herein.

39.    Plaintiff was employed as a financial advisor at Mass Mutual Financial Services, Inc.

40.    On March 21, 2006, Plaintiff was offered a position of employment at BB&T Investment Services, Inc. Two days later he recieved a letter offering employment and an employment contract. Plaintiff accepted the offer by executed the employment contract and mailing it back to Defendant.

41.    In reliance of the offer and acceptance of employment, Plaintiff resigned from Mass Mutual Financial Services and agreed to transfer his clients to other Financial Advisors.

42.    Plaintiff was informed his new job at BB&T would begin on April 17, 2006.

43.    On April 17, 2006, two days before Plaintiff was set to begin his employment at BB&T he was informed he no longer had a job. Plaintiff was fired before he ever started.

8

44.    Defendants based their abrupt decision to terminate Mr. Owen-Williams, at first, on an expunged trespass conviction from 1987 when he was a student at Towson University and later in the Weldon Incident from the previous years.

45.    At the outset, during his first interview with BB&T Financial Services, Inc. in January 2006 Plaintiff made a full disclosure of the Weldon incident in order to make sure it would not bar his possible employment.  Subsequently, Plaintiff interviewed with BB&T four additional times and was offered employment on March 21, 2006.

46.    After a successful fifteen year career in the financial services industry, Plaintiff now finds himself unemployed and without any clients.  BB&T has essentially rendered him a college graduate again.

46.    Plaintiff still considers the BB&T position his "dream job" and would like BB&T to honor the employment contract.

WHEREFORE the premises considered, Plaintiff respectfully requests that this Court direct BB&T to respect and honor the employment agreement entered into with Adol Owen-William, and allow Plaintiff to begin his employment as scheduled.  In the alternative Plaintiff requests that this Court award damages in the amount of $170,000 to compensate Plaintiff for their breach and to make him whole again.

## COUNT III.
### (Detrimental Reliance)

47.    Plaintiff hereby repeats and incorporates paragraphs 1 - 30 as if fully restated herein.

48.    Plaintiff was employed as a financial advisor at Mass Mutual Financial Services, Inc.

9

49.    On March 21, 2006, Plaintiff was offered a position of employment at BB&T Investment Services, Inc. Two days later he recieved a letter offering employment and an employment contract. Plaintiff accepted the offer by executed the employment contract and mailing it back to Defendant.

50.    In reliance of the offer and acceptance of employment, Plaintiff resigned from Mass Mutual Financial Services and agreed to transfer his clients to other Financial Advisors.

51.    Plaintiff was informed his new job at BB&T would begin on April 17, 2006.

52.    On April 17, 2006, two days before Plaintiff was set to begin his employment at BB&T he was informed he no longer had a job. Plaintiff was fired before he ever started.

53.    Defendants based their abrupt decision to terminate Mr. Owen-Williams, at first, on an expunged trespass conviction from 1987 when he was a student at Towson University and later in the Weldon Incident from the previous years.

54.    At the outset, during his first interview with BB&T Financial Services, Inc. in January 2006 Plaintiff made a full disclosure of the Weldon incident in order to make sure it would not bar his possible employment. Subsequently, Plaintiff interviewed with BB&T four additional times and was offered employment on March 21, 2006.

55.    After a successful fifteen year career in the financial services industry, Plaintiff now finds himself unemployed and without any clients. BB&T has essentially rendered him a college graduate again.

56.    In reliance on Defendants offer of employment, (and Plaintiff's acceptence) Plaintiff resigned from his job and agreed to give up his clients. Plaintiff relied on Defendant's offer of employment to his detriment. Defendants fired Plaintiff two days before he was to begin

10

his employment.

57.     Plaintiff still considers the BB&T position his "dream job" and would like BB&T to honor the employment contract.

WHEREFORE the premises considered, Plaintiff respectfully requests that this Court direct BB&T to respect and honor the employment agreement entered into with Adol Owen-William, and allow Plaintiff to begin his employment as scheduled. In the alternative Plaintiff requests that this Court award damages in the amount of $170,000 to compensate Plaintiff for relying, to his detriment, on Defendants promises and to make him whole again.


### VERIFICATION

I hereby verify under penalty of perjury that except as may be qualified on the phrase, upon information and belief, the foregoing is true and correct.


Executed on April 21, 2006


Adol Owen-Williams

11

Respecfully Submitted,


Seann P. Malloy 490343
Simmons & Associates, Chartered
7347 Wisconsin Avenue
Suite 200
Bethesda, Maryland
(301) 986-8444 Direct
(240) 597-0749 Fax


## REQUEST FOR JURY TRIAL

Plaintiff respecfully requests a jury trial for all issues so triable.


Seann P. Malloy

12



DISTRICT COURT OF MARYLAND FOR MONTGOMERY COUNTY
27 COURTHOUSE SQUARE    (C)
ROCKVILLE           MD 20850-2325                                    0601

CASE NUMBER:  5D00151324

TO: OWEN-WILLIAMS, ADOL
    AKA: ADOL THEO OWEN-WILLIAMS JR
    1027 HILLSIDE LAKE TERRACE
    GAITHERSBURG           MD 20878



## STATE OF MARYLAND  VS.  OWEN-WILLIAMS, ADOL

### N O T I C E

IN ACCORDANCE WITH MARYLAND RULE 4-247, YOU ARE HEREBY NOTIFIED
THAT ON OCTOBER   26, 2004, THE STATE'S ATTORNEY ENTERED A NOLLE
PROSEQUI IN THE ABOVE CASE. THAT IS, THE STATE'S ATTORNEY HAS
DETERMINED THAT THE CASE WILL NOT BE PROSECUTED.

BY: JEFFREY L. WARD              DATE: 10/26/04
    (CLERK)

FOR QUESTIONS CONCERNING THIS DOCUMENT TELEPHONE (301) 217-7300.

HEARING/SPEECH IMPAIRED CALLERS ONLY, TELEPHONE TTY/TT 1-800-925-9690 OR
(301) 217-7300 (VOICE) THRU MARYLAND RELAY SERVICE AT 1-800-735-2258.

1100018991
  0001899A              N         TRACKING NUMBER: 04-1003-89434-1

# DISTRICT COURT OF MARYLAND FOR BALTO CO

Located at 111 ALLEGANY AVE    TOWSON, MD 21204    City/County

*Court Address*

Case No. 644076c6

STATE OF MARYLAND

VS.

ADOL THEO OWEN-WILLIAMS JR
*Defendant/Petitioner*

ID .................... AR ................

D.O.B. 12/19/63 ........

.................................................
*Attorney for Defendant*

.................................................
*Address*                          *Telephone No.*

## ORDER FOR EXPUNGEMENT OF RECORDS 87-09276

The Petitioner ADOL THEO OWEN-WILLIAMS of P.O. BOX 1625    GERMANTOWN, MD 20875

*Name*                                                *Address*

having been found to be entitled to expungement of the police records pertaining to the arrest, detention, or confinement

of the Petitioner on or about 11/09/ , 19 87, at BALTO CO

Maryland by a law enforcement officer of the BALTO CO POLICE DEPT

and the court records in this action it is by the DISTRICT Court for BALTO City/County,

*Law Enforcement Agency*

Maryland this 28th day of AUGUST , 19 92 ,

ORDERED, that each of the following named custodians of police records and the Central Repository shall expunge the records pertaining to Petitioner's arrest, detention, or confinement and comply with the provisions of Section 736(c) of Article 27 of the Annotated Code of Maryland:

BALTO CO POLICE DEPT .................    400 KENILWORTH AVE TOWSON, MD 21204
*law enforcement agency*                    *address*

STATE ATTY ...........................    COUNTY COURTS BLDG TOWSON, MD 21204

MSP CJIS REPOSITORY ................    1201 REISTERSTOWN RD PIKESVILLE, MD 2120:

and it is further TOWSON STATE UNIVERSITY POLICE DEPT    8000 YORK RD    TOWSON, MD 21204

ORDERED, that the clerk serve a true copy of this Order on each of the parties to this proceeding; and it is further

ORDERED, that within 30 days after entry of this Order or upon expiration of any stay the clerk and each of the following-named custodians of court records in this action or proceeding shall expunge all court records in their custody in accordance with Rule 4-511:

.................................................    .................................................
*custodian*                                   *address*

.................................................    .................................................

and it is further

ORDERED, that the following public or private institutions or agencies to which court records may have been disseminated are requested to expunge such records in their custody:

.................................................    .................................................
*Institution/Agency*                          *address*

.................................................    .................................................

.................................................    .................................................

MDCCS

and it is further

ORDERED, that the clerk serve on each of the custodians of records above-named two true copies of this Order together with a blank form of Certificate of Compliance, and it is further

ORDERED, that within 30 days after being served with a copy of this Order each custodian of records file an executed Certificate of Compliance and serve a copy on the Petitioner.

8/28/92 ...........................    .................................................
*Date*                                        *Judge*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 20, 2006, I made the following attempts to notify Defendants of this Motion for Temporary Restraining Order, Motion for Preliminary Injunction and Verified Complaint:

On April 19, 2006 I spoke with Mark Booze, attorney for BB&T and notified him of Plaintiffs intent to seek relief from Court on April 20, 2006.  His numnber is (336) 733-2269

On April 19, 2006 I spoke with Jordan Spivok, outside counsel for BB&T, and notified him of Plaintiffs intent to seek relief from Court on April 20, 2006.  His numnber is (301) 524-3572

On April 20, 2005 I spoke with Allan Briggs, outside counsel for BB&T, and notified him of Plaintiffs intent to seek relief from Court on April 20, 2006.  His numnber is (202) 626-6702.

_Seann Malloy_

Seann P. Malloy

12

# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

### Civil Division

ADOL OWEN-WILLIAMS                )
1031 Hillside Lake Terrace        )
North Potomac, Maryland 20878     )
                                  )
    Plaintiff,                )
                                  )
v.                                )    Case Number:
                                  )
BB&T Investment Sevices, Inc.     )
C T Corporation System            )
1015 15th Street, N.W.            )
Suite 1000                        )
Washington, D.C. 20005            )
                                  )
    Defendants.               )

> **RECEIVED**
> Civil Clerk's Office
> **APR 2 1 2006**
> Superior Court of the
> District of Columbia
> Washington, D.C.

## PLAINTIFF'S MOTION FOR PRELIMIARY INJUNCTION PURSUANT DISTRICT OF COLUMBIA RULE CIV. PROC 65(a)

Plaintiff Adol Owen-Williams, along with this Motion for Preliminary Injunction a Motion for Temporary Restraining Order and Verified Complaint alleging claims against Defendant BB&T Investment Services, Inc. ("BB&T") for Breach of Contract, Detrimental Reliance and for Equitable Relief.

## A.    Standards Governing Injunctive Relief

For issuance of injunctive relief, Plaintiff must show (1) that there is a substantial likelihood he will prevail on the merits, (2) that he is in danger of suffering irreparable harm, (3) that more harm will result to him from the denial of the injunction than will result to the defendant from its grant, (4) that the public interest will not be disservedby the issuance of the requested Order.

The standards for granting injunctive relief are the same as the standards for granting a

temporary restraining order. Plaintiff's facts and analysis contained in the Motion for Temporary Restraining Order apply equally to this motion. In the interests of economy Plaintiff hereby incorporates and refers to Plaintiffs Motion for Temporary Restraining Order Pursuant to District of Columbia Rule 65(b).

For the reasons states above, and put forth in Plaintiffs Motion for Temporary Restraining Order Pursuant to District of Columbia Rule 65(b) the Court should grant this Motion and Order expedited discovery or set in a hearing as soon as practicable on this request for preliminary injunction.

Respecfully Submitted,


Seann P. Malloy 490343
Simmons & Associates, Chartered
7347 Wisconsin Avenue
Suite 200
Bethesda, Maryland
(301) 986-8444 Direct
(240) 597-0749 Fax

# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

Civil Division

| | |
|---|---|
| ADOL OWEN-WILLIAMS<br>1031 Hillside Lake Terrace<br>North Potomac, Maryland 20878<br><br>     Plaintiff,<br><br>v.<br><br>BB&T Investment Sevices, Inc.<br>C T Corporation System<br>1015 15th Street, N.W.<br>Suite 1000<br>Washington, D.C. 20005<br><br>     Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Case Number: |

## ORDER
(Plaintiff's Motion for Preliminary Injunction
Pursuant to District of Columbia Rule 65(a))

UPON CONSIDERATION of Plaintiff's Motion for a Temporary Restraining Order Pursuant to District of Columbia Rule of Civil Precedure 65(a), the Defendant having been given notice and an opportunity to be heard, the opposition thereto, the record in this case, and the applicable law, it is this _____ day of _____, 2006.

**ORDERED** that Plaintiff's Motion for a Preliminary Injunction pursuant to District of Columbia Rule of Civil Procedure 65(a) be and hereby is GRANTED; and it is further

**ORDERED** that Defenant BB&T Investment Services, Inc. agree to hold Mr. Adol Owen Williams position open, and do not fill the position with another candidate.

**ORDERED** that Plaintiff Adol Owen-Williams post a bond of $500

_____
JUDGE

cc:

Seann P. Malloy 490343
Simmons & Associates, Chartered
7347 Wisconsin Avenue
Suite 200
Bethesda, Maryland
(301) 986-8444 Direct
(240) 597-0749 Fax


Alan Briggs
Holly James
Squire Sanders & Dempsy, LLP
1201 Pennsylvania Avenue, N.W.
Washington, D.C. 20044


Mark Booz, Esq.
BB&T

_____
JUDGE

cc:

Seann P. Malloy
Simmons & Associates, Chartered
7347 Wisconsin Avenue
Suite 200
Bethesda, Maryland
(301) 986-84444

Alan Briggs
Holly James
Squire, Saunders & Dempsy, LLP
1201 Pennsylvania Avenue, N.W.
Washington, D.C. 20044

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

Adol Owen-Williams
    Plaintiff

                                        No.  3084 CA 06

        V.

BB&T Investment
    Defendant

## ORDER

Plaintiff's request for a temporary restraining order was heard as an emergency matter late on the afternoon of April 21, 2006. Plaintiff testified that Defendant's rescission of its employment offer would cause irreparable injury. He also acknowledged a conviction for trespassing which had been expunged in 1992 (hereafter "the expungement") and more recent arrests at the behest of a neighbor, Peggy Weldon (hereafter "the Weldon incidents"). Defendant presented testimony that rescission was warranted under the circumstances and that the position sought by Plaintiff would not be filled by another person for at least thirty days. The court concluded that the prerequisites for a TRO had not been established.

Upon reconsideration, the court is of the view that the parties should be permitted to present further evidence as to the propriety of a TRO and that such evidence should include but not be limited to (1) the chronology of BB&T's receipt of information regarding the expungement and the Weldon incidents and (2) the substance of the information thus acquired.

Accordingly it is this 24th day of April, 2006, *sua sponte,*

**ORDERED** that the court's ruling of April 21, 2006, is vacated and it is further

**ORDERED** that this matter be scheduled for further hearing at 10:00 a.m. May 8, 2006, or whatever time thereafter may be mutually convenient to the parties and court and it is further

**ORDERED** that Defendant refrain from filling the position at issue pending further order of the court.

                                Robert S. Tignor, Senior Judge

Copies:
Sean P. Malloy, Esquire
Allan Briggs, Esquire

**IN THE SUPERIOR COURT
OF THE DISTRICT OF COLUMBIA**

CIVIL DIVISION

RECEIVED
Civil Clerk's Office

MAY 0 5 2006

Superior Court of the
District of Columbia
Washington, D.C.

ADOL OWEN-WILLIAMS                )
                                                       )
        Plaintiff,                                )
                                                       )
v.                                                    )        Case Number:  3084 ca 06
                                                       )
BB&T Investment Services, Inc.        )
                                                       )
        Defendant.                             )

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO
PLAINTIFF'S MOTION FOR A
TEMPORARY RESTRAINING ORDER**

**INTRODUCTION**

Plaintiff's Motion for a Temporary Restraining Order should be denied.  First, plaintiff has no likelihood of prevailing on the merits.  In his first claim, plaintiff asks this Court to order BB&T Investment Services, Inc. ("BB&T") to employ him even though BB&T does not want to employ him.  Plaintiff can not prevail on this claim because courts of equity do not specifically enforce personal service contracts – equity will not force an employee to work for an employer for whom he does not want to work nor will equity force an employer to hire someone it does not want.  Each is left to their legal remedies.

Additionally, plaintiff's request for equitable relief should be denied because plaintiff comes to Court with unclean hands.  Prior to extending an offer to plaintiff, BB&T asked plaintiff in writing if he had been a party to an arbitration or civil litigation.  Plaintiff responded in writing: "No."  In fact, after being fired by Merrill Lynch in 1992, plaintiff has been a party to and lost no less than five significant cases.  One of those lawsuits was brought by Miles &

Stockbridge, the lawyers who represented Merrill Lynch, who sued plaintiff after plaintiff made several death threats against them. The Circuit Court for Montgomery County has permanently enjoined plaintiff from any further action. Plaintiff can not fail to disclose this 12 years of litigation in order to induce BB&T to hire him, and then come into this Court and ask this Court to use its extraordinary equity powers to secure for him a job he obtained by fraud.

Further, plaintiff can not prevail because the employment contract on which plaintiff sues is for at-will employment and was terminable any time by either party for any reason.

Further, plaintiff can not prevail because he has an adequate remedy at law – money damages. In his prayer, he asks for either injunctive relief or $170,000.

The Motion for a Temporary Restraining Order should be denied.

I.    **THE LEGAL STANDARD FOR ISSUING A TEMPORARY RESTRAINING ORDER**

In order to grant a temporary restraining order the plaintiff must prove four prerequisites:

> A preliminary injunction may not be granted unless:
>
> the moving party has clearly demonstrated (1) that there is a substantial likelihood [it] will prevail on the merits; (2) that [it] is in danger of suffering irreparable harm during the pendency of the action; (3) that more harm will result to [it] from the denial of the injunction than will result to the defendant from its grant; and, in appropriate cases, (4) that the public interest will not be disserved by the issuance of the requested order.
>
> *Id. at 21* (quoting I, 350 A.2d 384, 387 (D.C. 1976) (footnote omitted. Furthermore, in determining whether to grant a motion for a preliminary injunction, "the most important inquiry is that concerning irreparable injury ... because the primary justification for the issuance of a preliminary injunction 'is always to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits.'" *683 A.2d at 22* (quoting *Canal Auth. v. Callaway, 489 F.2d 567, 576 (5th Cir. 1974)).

2

<u>District of Columbia v. Eastern Trans-Waste of Maryland</u>, 758 A.2d 1 (D.C. Sup. Ct. 2000).

The same four prerequisites must be met for a temporary restraining order:

> A temporary restraining order and/or a preliminary injunction may be granted only when the plaintiff demonstrates (1) a substantial likelihood of success on the merits; (2) that irreparable injury will result in the absence of the requested relief; (3) that no parties will be harmed if temporary relief is granted; and (4) that the public interest favors entry of injunctive relief.

<u>Wilkinson v. Legal Services Corp.</u>, 1991 U.S. Dist. LEXIS 12502 (D.C.).

## II.    <u>PLAINTIFF HAS NO LIKELIHOOD OF SUCCESS ON THE MERITS</u>

The first element plaintiff must prove is he has a substantial likelihood of prevailing on

the merits. Here, plaintiff has no such likelihood.

### A.    **Plaintiff does not have a likelihood of Success of Prevailing on Count 1 for at least two separate and independent reasons.**

#### (1)    A court of equity will not specifically enforce a personal services contract <u>and order an employer to hire someone it does not want to employ.</u>

In Count 1, plaintiff alleges defendants offered him a job, he accepted and was supposed

to start employment on April 17, 2006. He then alleges "on April 17, 2006, two days before

plaintiff was set to begin his employment at BB&T, he was informed he no longer had a job.

Plaintiff was fired before he ever started." (¶ 34)

Plaintiff then asks the following relief for Count 1:

> WHEREFORE the premises considered, Plaintiff respectfully requests that this Court direct BB&T to respect and honor the employment agreement entered into with Adol Owen-Williams, and allow Plaintiff to begin his employment as scheduled.

What plaintiff asks this Court to do is to specifically enforce a personal services contract.

That would require this Court to order BB&T to employ someone it does not want to employ.

Plaintiff cannot prevail on this claim regardless of who is right or wrong on the facts alleged because courts will not issue mandatory injunctions to enforce personal service contracts.

Employment contracts are personal service contracts. The law is well settled that a Court of Equity will not issue an injunction compelling an employer to employ someone it does not want to employ. A good summary of this well established legal principle is stated in American Jurisprudence 2d:

### § 127.   Generally

Injunctive relief is not normally available in cases involving employment contract disputes, in that damage awards are deemed adequate to compensate for losses that result from breaches of such contracts. Further, a court of equity will generally not issue an injunction preventing the violation of a contract which, indirectly or negatively, compels the affirmative performance of, or the affirmative acceptance of, merely personal services, based upon the difficulty or impossibility of enforcement and of passing judgment upon the qualify of performance, the undesirability of compelling the continuance of personal association after disputes have arisen and confidence and loyalty are gone, the resemblance to enforcing involuntary servitude, and the danger of getting the courts too involved in running businesses.

* * *

b. ENJOINING EMPLOYER'S ACTIONS [§ 128]

### § 128.   Enjoining employer from discharging employee; compelling reinstatement of employee

An employee whose employment is not coupled with an interest in the business is not ordinarily entitled to injunctive relief to prevent his or her discharge from employment by the employer, as the remedy at law is normally sufficient in such a situation, such as where reinstatement after trial, coupled with back pay, is sufficient to redress the alleged wrongs. An employee termination simply does not generally legally justify the extraordinary relief of a temporary injunction where the harm suffered is of a type common to all discharged employees. In addition, it is viewed by some courts as not desirable to compel the continued association of persons after have arisen and confidence and loyalty are gone.

4

A contract for the performance of continuous personal services will not be enforced by injunction. Thus, an agreement to exchange services for compensation or commission is not subject to equitable enforcement.

42 Am Jur 2d Injunctions, §§ 127-128.

Cases across the United States apply this well accepted principle of law. For example, the Ohio Supreme Court in <u>Masetta v. Nat'l Bronze & Aluminum Foundry</u>, 759 Ohio St. 306 (1953) summarized the law well and held:

> It has long been settled law that a court of equity will not decree specific performance of a contract for personal services. This court has recognized this principle of law whenever occasion arose. See *Port Clinton Rd. Co. v. Cleveland & Toledo Rd. Co.*, 13 Ohio St., 544; *New York Central Rd. Co. v. City of Bucyrus*, 126 Ohio St., 558, [**19] 186 N. E., 450; *Hoffman Candy & Ice Cream Co. v. Department of Liquor Control*, 154 Ohio St., 357, 96 N. E. (2d), 203.
>
> The Supreme Court of Michigan made a clear and concise statement in *Mosshamer v. Wabash Ry. Co.*, 221 Mich., 407, 191 N. W., 210, with which we fully agree. It is:
>
> "* * * it is not the function of the courts to say to the employer by mandatory injunction, you must employ A and discharge B. If A has a contract with the employer which is breached the court of law is always open to him to recover the damages occasioned him by its breach, but a court of equity may not by mandatory injunction thus interfere with the running of the employer's business."
>
> The general rule is well stated in 28 American Jurisprudence, 285, Section 93, as follows:
>
> "It may be stated that as a general rule an employee whose employment is not coupled with an interest in the business is not ordinarily entitled to injunctive relief to prevent his employer from discharging him ***. The remedy at law in such cases is generally adequate to furnish relief, and beside there is a lack of mutuality of equitable remedy, since the employer would not be entitled to similar relief in case the employee left his employment."
>
> In support of the rule so stated, the following decisions, among many others, may be cited: *Arthur v. Oakes,* 63 F., 310;

5

*Hewitt v. Magic City Furniture & Mfg. Co.,* 214 Ala., 265, 107 So.,
745; *Greer v. Austin,* 40 Okla., 113, 136 P., 590, 51 L.R.A. (N.S.,
336.

       The absence of mutuality of equitable remedy in the
instant case is manifest. It is not, and could not be, argued that the
defendant could force the plaintiff to continue in the service of
defendant against plaintiff's will. On that subject it is stated in 135
A.L.R., 282: "Specific performance of a contract for services will
of course be denied when there is no mutuality of obligation."

The Supreme Court of Indiana adopted this same rule of law in 1894 and has continued to

apply it. See also <u>Smith v. General Motor Corp.</u>; 128 Ind. App. 310, 325 (Court of App. 1957)

where the Court held:

      The law seems to be well settled in this state that specific
performance will not lie to enjoin the violation of a contract for
personal services. As the Court stated in *Schwier et al. v. Zitike
et al. (1894),* 136 Ind. 210, 213, 36 N. E. 30;

      "It is now so well settled that a person can not be enjoined
from violating a contract for personal services, when such contract
contains no negative stipulations, that it seems not to be an open
question. (Citing authorities.) "On the other hand, we think it is
equally well settled that the employer can not be enjoined from a
violation of such a contract, by discharging the employee."

This rule of law flows from the general equitable concept of mutuality of remedies --

because a court of equity will not force an employee to perform personal services for an

employer, the Court will not force an employer to hire someone it does not want to hire. The

parties are left to their remedies at law.

      Accordingly, plaintiff has no likelihood of success on Count 1.

WASHINGTON/196245.2

(2)    <u>Plaintiff will not prevail on Count 1 because he has unclean hands</u>.

In Count 1 plaintiff seeks equitable relief – the extraordinary relief of a mandatory injunction from this Court ordering BB&T to hire some one it does not want to hire. Plaintiff should be barred from pursuing this claim because he comes to this Court with unclean hands. It has long been the law in the District of Columbia that equitable relief is not available "to a suitor with unclean hands." <u>United States v. Richards</u>, 33 App. DC 410 (1909). Here plaintiff comes to court with unclean hands.

In the written pre-hire questionnaire plaintiff submitted to BB&T to initiate the process he was asked this question:

> "5. Have you ever been named in an arbitration or civil litigation case?" He responded "No."

This response was false and materially false. Since 1992 plaintiff has been a party to multiple lawsuits.

At present, the known arbitration and court litigation to which Plaintiff has been named as a party which he failed to disclose includes:

(1)    <u>Litigation v. Merrill Lynch</u> – In 1992, he was fired from Merrill Lynch as a financial consultant. He filed a complaint with the EEOC and was given a right to sue letter. This led to an arbitration in which Merrill Lynch prevailed. He then "brought one as more actions in the United States District Court for the District of Maryland, Southern Division, seeking to set aside the arbitration award. Those proceedings, which included at least two appeals to the United States Court of Appeals for the Fourth Judicial Circuit, concluded favorably to Merrill Lynch." See litigation summary from Maryland Court of Special Appeals, Exhibit 1 – hereto).

7

(2)    Litigation v. Employees of Merrill Lynch – was best summarized by the Court of Special Appeals of Maryland.

"The second stage of the saga commenced when the Plaintiff turned his litigation sights to new targets, namely, certain employees of Merrill Lynch who, we infer, had participated in the decision to terminate the Plaintiff's employment. We shall refer to this action as the "Underlying Suit." The Circuit Court for Montgomery County granted summary judgment in favor of the defendants in the Underlying Suit, and that judgment was affirmed by the Circuit Court for Montgomery County, sitting in an *en banc* appeal. An attempted further appeal by the Plaintiff was dismissed by this Court for want of jurisdiction."

(3)    Litigation v. Miles & Stockbridge – as summarized by the Court of Special Appeals of Maryland.

"The third stage of the saga commenced when the Plaintiff instituted the instant action on November 5, 2001. Joined as defendants were Miles & Stockbridge, P.C., the law firm that had represented Merrill Lynch and its employees in the antecedent litigation, and four attorneys who practiced at Miles & Stockbridge, P.C., and who had participated in conducting the defense in the antecedent litigation (collectively, the Defendants). The complaint essentially alleged that the Defendants in the present action had engaged in fraud, deceit, perjury, and other misconduct in representing their clients in the antecedent litigation. That complaint was dismissed with prejudice by the Circuit Court for failure to state a claim upon which relief could be granted. On the Plaintiff's appeal, this Court affirmed in an unreported opinion."

(4)    Litigation by Miles & Stockbridge Against Plaintiff

Miles & Stockbridge had to sue Plaintiff to stop his harassing and threatening behavior, including two death threat by plaintiff directed to the Merrill Lynch lawyers and the family of

8

one of the lawyers.  Below are a few paragraphs from the complaint by Miles & Stockbridge (Exhibit 2 hereto):

10.     Throughout the course of the Merrill Lynch litigation, Owen-Williams engaged in threatening and harassing behavior directed at the Miles & Stockbridge attorneys representing Merrill Lynch, including Kathleen Pontone, Esquire, and plaintiff Garland.

11.     As one example, in July 1995, Owen-Williams telephoned Melvin Hirshman, Esquire, Bar Counsel for the Attorney Grievance Commission, referring to Ms. Pontone as "that no-good bitch," and made what Mr. Hirshman interpreted as a death threat against Ms. Pontone.

12.     Mr. Hirshman was so concerned about the threat that he telephoned Ms. Pontone to warn her that he believed she was in grave danger from Owen-Williams.

13.     Plaintiffs and undersigned counsel understand that this Court has instituted special security measures to be taken whenever Owen-Williams appears for in-court proceedings, because of his past behavior in this forum.

14.     After exhausting his appeals in the Merrill Lynch litigation, Owen-Williams sued Miles & Stockbridge, making various claims about the firm's conduct in representing Merrill Lynch.   Miles & Stockbridge prevailed, obtaining summary judgment in its favor.  The court found that in all respects, Miles & Stockbridge and its member and associate lawyers had acted within the scope of their privilege as legal counsel for Merrill Lynch in a contested matter.

15.     After losing his case against Miles & Stockbridge, described above, Owen-Williams, representing himself, appealed to the Court of Special Appeals of Maryland, which denied his appeal and affirmed the decision of the Circuit Court.  Owen-Williams then filed a *pro se* motion for rehearing, which the Court of Special Appeals denied.

16.     On February 28, 2003, after the Court of Special Appeals denied Owen-Williams' request for a rehearing, plaintiff James Garland received a telephone call from Owen-Williams.  In that telephone call, Owen-Williams told Garland that he expected that the Court of Appeals would deny his petition for certiorari and he would have exhausted his legal recourse.

9

17.    In that conversation, Owen-Williams told Mr. Garland that he had tried to "play the game by the rules," but had lost any opportunity to win by playing by the rules.

18.    Owen-Williams then told Garland, *"now that you have taken my life from me, I intend to take your life and your family's life from you."* He also said that he might as well spend the rest of his life in the gutter as in prison because there was "nothing left" for him now.

19.    Despite being contacted by law enforcement authorities both after the 1995 threat and the more recent ones, Owen-Williams has continued his harassing, threatening, defamatory, and illegal behavior.

This lawsuit by Miles & Stockbridge led to a full adversary hearing and a "Final and Permanent Information" entered by the Circuit Court for Montgomery County Maryland against plaintiff wherein the Court ORDERED:

WHEREFORE, this Court Orders that:

a.    the Defendant Owen-Williams be and hereby is enjoined from any and all communication or contact, whether in person, or by telephone, correspondence, e-mail, or any means whatsoever, with James P. Garland or any of his family and the Law Offices of Miles & Stockbridge, P.C. or any of its members or employees;

b.    the Defendant Owen-Williams be and hereby is enjoined from going or being within a half a mile from James P. Garland's residence, or place of worship or within 100 feet of him or any member of his family;

c.    the Defendant be and hereby is enjoined from going or being on the premises of the Law Offices of Miles & Stockbridge, P.C. or within 100 feet of the entrance to its building at 10 Light Street, Baltimore, Maryland;

d.    the Defendant is enjoined from any and all defamatory statements, oral, written, or otherwise, about James P. Garland or about the Law Offices of Miles & Stockbridge, P.C. or any of its members or employees.

(Exhibit 3 hereto.)

(5)     Litigation in the Circuit Court in Montgomery County, Maryland in 2004 in which Plaintiff claims he was discriminated against in connection with housing.

The twelve plus years of arbitration, litigation, harassment and death threats carried on by plaintiff is absolutely incredible.  It is so incredible it is clear why he did not tell BB&T about it because he knew BB&T would never hire him if it had known.

The courts of equity in the District of Columbia are not open to those who enter with unclean hands.

Accordingly plaintiff will not prevail on Count 1.

**B.     Plaintiff will not prevail on Count 2, a claim for breach of contract, because there was a failure to meet the condition precedent and the employment contract was for "at will" employment terminable at any time by either party.**

Plaintiff's second claim is for breach of contract.  The March 23, 2006 written offer of employment was expressly conditioned upon the required background checks:

> All employment offers are contingent upon standard background checks including educational and employment records search, criminal records search, NASD Central Registration Depository Report, reference checks and satisfactory results of our company's pre-employment substance abuse.

(Exhibit 4 hereto).

Plaintiff accepted the employment knowing of this condition.

Plaintiff was specifically advised that as part of this process, he had to provide a written summary of the oral disclosure he had made regarding his neighbor.  On March 28, 2006, plaintiff provided a detailed three page letter which revealed facts far different than he had disclosed earlier (Exhibit 5 hereto).  After this letter was reviewed by multiple people at BB&T, it was clear that BB&T did not want to hire plaintiff.  Further review of the NASD files revealed an arrest for assault in 1987 while plaintiff was at Towson State.  When the facts of the Towson State arrest were combined with the facts in the March 28, 2006 letter and the overall tone of the

11

letter itself was considered, it was clear BB&T did not want to hire him. They sensed that he may have anger management issues and did not want to hire someone with such a risk.[1]

Accordingly, BB&T withdrew the offer of employment, as there had been a failure to satisfactorily meet the conditions precedent.

Plaintiff chooses to characterize this as a "firing."

> 43. On April 17, 2006, two days before Plaintiff was set to begin his employment at BB&T he was informed he no longer had a job. Plaintiff was fired before he ever started.

In Count 2 of the complaint, plaintiff alleges that BB&T breached the employment contract by firing him. The clear language of the employment contract makes it clear plaintiff's employment was to be "at will." This is spelled out in bold in paragraph 3:

> **3.    Employment-at-Will.    Employee acknowledges and understands that nothing set forth in this Agreement creates or is intended to (or is to be construed to) create any employment contract of any specified term between the Parties. Rather, the Parties agree that Employee's employment is considered at will and may be terminated by either Employee or Employer at any time, for any reason, and with or without notice.**

Additionally, immediately above the signature line, another paragraph in bold is included which states:

> **As referenced above, Employee acknowledges and understands that nothing set forth in this Agreement creates or is intended to (or is to be construed to) create any employment contract of any specified term or duration  between the Parties. Instead, the Parties acknowledge that Employee's employment is considered at will and may be terminated by either Employee or Employer at any time, for any reason, and with or without notice.**

---

[1] BB&T did not even know that Merrill Lynch had fired him in 1992 for anger management issues and that plaintiff followed that firing with twelve years of litigation, all of which he lost, and retaliated with death threats against the Merrill Lynch lawyers.

WASHINGTON/196245.2

Accordingly, when the law is analyzed as to whether or not plaintiff can prevail on his breach of contract claim for "firing" plaintiff, it is clear plaintiff cannot prevail. Plaintiff was an "at will" employee and could be fired "at any time" "for any reason." Therefore, plaintiff has no likelihood of prevailing on the merits of Count 2.

C.    **Plaintiff will not prevail on Count 3 for detrimental reliance.**

Plaintiff can not prevail on his Count 3 for detrimental reliance. The legal claim of detrimental reliance is a claim where someone makes a promise on which one reasonably relies to their detriment. Under narrow circumstances they may bring a claim even though the promise never rose to the level of a contract. See Restatement of Contracts, 2d §90. See Heffinger v. Gibson, 290 A.2d 390 (DC 1972).

However, here there was no promise that did not rise to the level of a contract. There was a written offer, it was accepted and a contract was signed. Whatever legal rights the parties have arise out of those documents. No separate promise is alleged.

Accordingly, plaintiff can not prevail on Count 3.

## III.    PLAINTIFF WILL NOT SUFFER IRREPARABLE HARM IF A TRO IS NOT GRANTED - PLAINTIFF HAS AN ADEQUATE REMEDY AT LAW FOR MONEY DAMAGES

Plaintiff in his prayer seeks the following relief:

> WHEREFORE the premises considered, Plaintiff respectfully requests that this Court direct BB&T to respect and honor the employment agreement entered into with Adol Owen-Williams, and allow Plaintiff to begin his employment as scheduled. In the alternative Plaintiff requests that this Court award damages in the amount of $170,000 to compensate Plaintiff for relying, to his detriment, on Defendants promises and to make him whole again.

He either wants a mandatory injunction in which the Court compels defendant to employ plaintiff, or, in the alternative he wants money damages of $170,000. Plaintiff does not allege

13

that money damages will be difficult or impossible to determine. Rather he calculates them and states his damages will be $170,000.

This is a classic case where by plaintiff's own complaint he makes it clear that money damages are adequate.

The law of the District of Columbia, as well as every state and federal court in United States is in order for injunctive relief to be ordered plaintiff must prove "irreparable harm will result in the absence of such relief." See Wilkinson v. Legal Services Corporation, 1991 U.S. Dist. LEXIS 12502 wherein David L. Wilkerson, Inspector General of the Legal Services Corporation (LSC), sought to enjoin LSC from terminating him. Judge Green denied the request for injunctive relief holding:

### 2.     *Irreparable Harm*

Concerned that he will lose control over pending investigations, Mr. Wilkinson expresses a desire to retain his employment as Inspector General by the Legal Services Corporation for approximately three more months, to perform and complete his important responsibilities in protecting the public interest and reporting to Congress about the programs and operations of this Corporation.

The Court does fully appreciate the importance of the Inspector General's position, the reasons for its establishment, and the plaintiff's concerns, but these concerns do not warrant emergency injunctive relief to stop the termination. **Mr. Wilkinson's loss of employment would not irreparably harm him. If it is subsequently demonstrated that he was wrongfully terminated, he can then seek full monetary damages, and other relief, to obtain redress.**

It is fundamental in our legal system that before equity should act there must be a determination that the remedy at law is inadequate:

"It is a "'basic doctrine of equity jurisprudence that courts of equity should not act ... when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief.'"

14

Morales v. TWA, 504 U.S. 374, 380 (1992).

The most basic question considered first is the adequacy of money damages to redress the alleged wrong. Here plaintiff does not claim money damages are inadequate or can not be calculated. In fact, he has calculated the damages at $170,000.

Accordingly, plaintiff can not establish the second element necessary for a temporary restraining order – irreparable harm.

## IV.    BB&T AND THE PUBLIC WILL BE HARMED IF THIS COURT ISSUES A TEMPORARY RESTRAINING ORDER

BB&T has been seeking to fill the position of Investment Advisor for its Farragut Square office. The position is presently vacant. As a result BB&T is losing income on potential new sales and does not have anyone presently in place at this location to provide investment advice and guidance. As a result, BB&T's customers in the District of Columbia are presently suffering damages.

## V.    <u>CONCLUSION</u>

For the foregoing reasons the Motion for a Temporary Restraining Order should be denied. A proposed Order is attached.

Date: May 8, 2006

                      _____
                      Alan L. Briggs
                      SQUIRE, SANDERS & DEMPSEY L.L.P.
                      1201 Pennsylvania Avenue, N.W.
                      Washington, D.C. 20044-0407
                      (202) 626-6600
                      (202) 626-6780 (fax)
                      abriggs@ssd.com
                      Attorneys for Defendant BB&T Investment
                      Services

15

## CERTIFICATE OF SERVICE

I hereby certify that on this ___ day of May, 2006, I emailed and deposited in the mail first class, postage prepaid, a copy of the foregoing Defendant's Memorandum In Opposition To Plaintiff's Motion For A Temporary Restraining Order addressed to:

Seann P. Malloy
Simmons & Associates, Chartered
7347 Wisconsin Avenue, Suite 200
Bethesda, Maryland  20814


_____

Alan L. Briggs

16

## IN THE SUPERIOR COURT
## OF THE DISTRICT OF COLUMBIA

### CIVIL DIVISION

ADOL OWEN-WILLIAMS,    )
                       )
        Plaintiff,     )        Case No. 0003084-06
                       )
    vs.                )        Hon. Judith E. Retchin
                       )
BB&T INVESTMENT SERVICES, INC.,    )
                       )
        Defendant.     )
_____)

### (PROPOSED) ORDER DENYING PLAINTIFF'S
### MOTION FOR A TEMPORARY RESTRAINING ORDER

This case came on for oral hearing on Plaintiff's Motion for Temporary Restraining Order filed April 21, 2006. This matter was heard by the Court on April 21, 2006 and on May 8, 2006. After review of the Plaintiff's Verified Complaint, Motion and incorporated brief, and after full consideration of the testimony, exhibits, memo contra and argument of counsel, the Court finds the Motion should be DENIED.

Based on the evidence presented Plaintiff has not proven a substantial likelihood of prevailing on the merits and has not proven he will suffer irreparable harm in the absence of injunctive relief. Accordingly, the Court finds the motion should be and hereby is DENIED.

It is, therefore, ORDERED that Plaintiff's Motion for a Temporary Restraining Order is DENIED.

It is so ORDERED this 8th day of May, 2006.


_____
The Honorable Robert S. Tignor
Superior Court of the District of Columbia

Copies to:

Seann P. Malloy  #490343
Simmons & Associates, Chartered
7347 Wisconsin Avenue
Suite 200
Bethesda, Maryland  20814
(301) 986-8444 (telephone)
(301) 597-0749 (facsimile)
Attorney for Plaintiff

Alan L. Briggs  #445237
Holly Brooke James  #490503
Squire, Sanders & Dempsey L.L.P.
1201 Pennsylvania Avenue, N.W.
Suite 500
Washington, D.C.  20004
(202) 626-6600 (telephone)
(202) 626-6780 (facsimile)
Attorneys for Defendant