# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Adol Owen-Williams, | ) | |
| Plaintiff, | ) | Case No. 1:06CV00948 |
| | ) | |
| v. | ) | The Honorable Colleen Kollar-Kotelly |
| | ) | |
| BB&T Investment Services, Inc., | ) | |
| Defendant. | ) | |

## DEFENDANT BB&T INVESTMENT SERVICES, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY PROCEEDINGS

Defendant BB&T Investment Services, Inc. ("BB&T"), by and through counsel, hereby submits the following memorandum of law in support of its Motion to Compel Arbitration and Dismiss or Stay Proceedings.

## I.    FACTS

On April 21, 2006, Plaintiff filed a Complaint captioned *Adol Owen-Williams v. BB&T Investment Services, Inc.*, Case No. 3084 CA 06, in the Superior Court of the District of Columbia. On May 19, 2006, Defendant BB&T filed a Notice of Removal with this Court because this Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

This lawsuit is a dispute about an employment contract. That contract contains an arbitration clause. The Plaintiff filed a three count Complaint. In Count One, he asks the Court to specifically enforce this employment contract; in Count Two, he alleges breach of the employment contract and again asks the Court to require BB&T to honor the contract, or alternatively, award him $170,000 for breach of the contract; and in Count Three for detrimental reliance Plaintiff again asks the Court to require BB&T to honor the contract, or, again, alternatively award him $170,000. Specifically the Complaint states:

COUNT I.
(Equitable Relief)

21.    On March 21, 2006, Plaintiff recieved [sic] a telephone call from Mr. Roccograndi who informed him that he had been chosen to fill the position and an offer of employment and employment contract would be arriving in the mail.  Two days later, on March 23, 2006, plaintiff recieved [sic] a letter offering him the position and **an employment contract.**  He promptly executed and returned the contract.

\* \* \*

37.    Plaintiff still considers the BB&T position his "dream job" and would still like to be employed by BB&T.

WHEREFORE the premises considered, **Plaintiff respectfully requests that this Court direct BB&T to respect and honor the employment agreement entered into with Adol Owen-Williams**, and allow Plaintiff to begin his employment as scheduled.

\* \* \*

COUNT II.
**(Breach of Contract)**

43.    On April 17, 2006, two days before Plaintiff was set to begin his employment at BB&T he was informed he no longer had a job.  Plaintiff was fired before he ever started.

\* \* \*

46.    **Plaintiff** still considers the BB&T position his "dream job" and **would like BB&T to honor the employment contract.**

WHEREFORE the premises considered, **Plaintiff respectfully requests that this Court direct BB&T to respect and honor the employment agreement entered into with Adol Owen-Williams**, and allow Plaintiff to begin his employment as scheduled.  In the alternative Plaintiff requests that this Court award damages in the amount of $170,000 to compensate Plaintiff for their breach and to make him whole again.

\* \* \*

COUNT III.
(Detrimental Reliance)

56.    In reliance on Defendants offer of employment, (and Plaintiff's acceptence) [sic] Plaintiff resigned from his job and agreed to give up his clients. Plaintiff relied on Defendant's offer of employment to his detriment. Defendants fired Plaintiff two days before he was to begin his employment.

\* \* \*

**57.    Plaintiff still considers the BB&T position his "dream job" and would like BB&T to honor the employment contract.**

WHEREFORE the premises considered, **Plaintiff respectfully requests that this Court direct BB&T to respect and honor the employment agreement** entered into with Adol Owen-Williams, and allow Plaintiff to begin his employment as scheduled. In the alternative Plaintiff requests that this Court award damages in the amount of $170,000 to compensate Plaintiff for relying, to his detriment, on Defendants promises and to make him whole again.

(Emphasis added.)

The employment contract which Plaintiff claims is breached and which Plaintiff wants

honored has an arbitration provision:

Arbitration. The Parties agree that any and all disputes, disagreements, claims, or other conflicts regarding, relating to, or arising out of this Agreement, the Parties' employment relationship, any termination thereof, any employment-related act or practice by Employer or its employees, representatives, or agents, any breach of this Agreement, or any alleged breach of this Agreement, shall be subject and submitted to binding arbitration.

In the event such a dispute, disagreement, claim, or other conflict arises, the Parties agree to utilize the services of the National Association of Securities Dealers, Inc. ("NASD") for such binding arbitration, unless the NASD declines such arbitration, in which event the Parties agree to utilize the services of the American Arbitration Association ("AAA").

The arbitration shall be conducted in Charlotte, North Carolina and in accordance with the rules of the NASD or AAA (as the case may be), except that the rules set forth in this Section shall govern such arbitration to the extent that they conflict with the rules of the NASD or AAA. The cost of the arbitration (exclusive of attorney's fees) shall be borne equally by the Parties unless otherwise agreed to by the Parties.

> Each party consents to the personal and subject matter jurisdiction of the arbitration proceedings and waives any defense based upon said jurisdiction, venue, or forum. The award and any order from the arbitration shall be final and binding on all parties to such arbitration and judgment thereon may be entered in any court having jurisdiction thereof.
>
> Notwithstanding the foregoing and without waiving its right to arbitration as provided herein, Employer shall have the right to seek equitable remedies, including injunctive relief, in any court of competent jurisdiction as to any said dispute, controversy, or claim arising under or in connection with Section 4 or 5 of this Agreement.

(Exh. A, ¶ 8). Plaintiff's signature appears on page 8 of the contract. The arbitration requirement is reciprocal, comprehensive, and broad in scope. The contract further provides that arbitration shall be conducted with the National Association of Securities Dealers ("NASD"), unless the NASD declines such arbitration, in which event the Parties agree to utilize the services of the American Arbitration Association ("AAA"). (Exh. A, ¶ 8).

## III.    ARGUMENT

### The Court Should Compel Arbitration of Plaintiff's Claims Pursuant to the Federal Arbitration Act.

#### A.    The Federal Arbitration Act ("FAA") Governs the Arbitrability of Plaintiff's Claims.

The FAA governs whether Plaintiff's claims in this case must be resolved in arbitration. The FAA applies to a claim if (1) there is a written agreement to arbitrate; and (2) the contract evidences a transaction involving commerce. 9 U.S.C. § 2 (1999); *see also Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 274 (1995). Both of these conditions are present here. Additionally, the Supreme Court has held that the coverage of the FAA extends to employment

contracts. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 123 (2001).[1]  Thus, the FAA

applies and compels arbitration of Plaintiff's claims.

### 1.    The Parties' Contract Contains a Written Arbitration Clause That Applies to Plaintiff's Claims in This Lawsuit.

The arbitration clause is written in plain English and is printed in regular type on the

seventh page of the parties' contract. *Id.*  Plaintiff cannot now avoid his agreement to arbitrate

by claiming that he did not read or understand it. *See Tio v. Wash. Hosp. Ctr.*, 2004 U.S. Dist.

LEXIS 23503 (D.C.) ("It is basic law that 'one who signs a contract which he had an opportunity

to read and understand is bound by its provisions.'") (quoting *Patterson v. Reeves*, 304 F.2d 950,

951 (D.C. Cir. 1962).).  Plaintiff signed the contract containing the arbitration agreement and he

should therefore be bound by its terms.

The District of Columbia Courts have adopted the Supreme Court's policy of "broadly

construing" an arbitration clause which, like the Arbitration Agreement here, provides for

arbitration of all disputes arising from or relating to an agreement.  *See Booker v. Robert Half

Int'l, Inc.*, 315 F. Supp. 2d 94 (D.C. 1004) (holding that the language "arising out of or relating

to" in the employment agreement must be broadly construed consistent with the direction of the

Supreme Court in *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625

(1985).).  Plaintiff cannot dispute that the contract's broad and mutual arbitration provision

covers his claims, especially since the arbitration clause itself provides:  "Parties agree that any

and all disputes . . . relating to, or arising out of this Agreement . . . or any alleged breach of this

Agreement, shall be subject and submitted to binding arbitration."  (Exh. A, ¶ 8).

---

[1] "We have been clear in rejecting the supposition that the advantages of the arbitration process somehow disappear when transferred to the employment context . . . Arbitration agreements allow parties to avoid the costs of litigation, a benefit that may be of particular importance in employment litigation."

The contract contains a written arbitration provision encompassing Plaintiff's claims in this case. The first requirement for application of the FAA is, therefore, satisfied.

### 2.    The Arbitration Provision at Issue Evidences a Transaction Involving Interstate Commerce.

The FAA applies to contracts "evidencing a transaction involving commerce." 9 U.S.C. § 2 (1999). The Supreme Court recently clarified how expansive Section 2 is: "We have interpreted the term 'involving commerce' in the FAA as the functional equivalent of the more familiar term 'affecting commerce'--words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power. *Allied-Bruce Terminix Cos.*, 513 U.S. 265, 273-274 (1995). . . [I]t is perfectly clear that the FAA encompasses a wider range of transactions than those actually 'in commerce' -- that is, 'within the flow of interstate commerce' . . ." *The Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003). As a result, the precise action in question need not itself substantially affect interstate commerce so long as in "aggregate the economic activity in question would represent 'a general practice . . . subject to federal control.' Only that general practice need bear on interstate commerce in a substantial way." *Id.* at 57.

For that reason, "[t]he Supreme Court recently held that the FAA applies to all employment contracts, except to those contracts of transportation workers." *Nelson v. Insignia/ESG, Inc.*, 215 F. Supp. 2d. 143, 149 (2002) (citing *Circuit City*, 532 U.S. at 111). The contract in this case implicates interstate commerce because Plaintiff's employment would have required that he negotiate and oversee financial transactions related to securities sales arising in various states and direct funds flowing across state lines. In fact, Plaintiff's primary responsibility, the sale of investment securities to individuals, institutional and corporate customers, is a practice subject to federal control by the United States' Securities and Exchange

Commission.    Thus, the FAA is applicable because the job responsibilities under the employment contract at issue impact interstate commerce.

**B.        The Parties' Agreement to Arbitrate Is Valid, Irrevocable, and Enforceable Under Section 2 of the Federal Arbitration Act.**

The FAA requires that courts "rigorously enforce agreements to arbitrate." *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987).  The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).   The mandatory provisions of the FAA do not permit parties to "ignore the contract and resort to the courts.  Such a course could lead to prolonged litigation, one of the very risks the parties, by contracting for arbitration, sought to eliminate."  *Southland Corp. v. Keating*, 465 U.S. 1, 7 (1984).  Finally, any doubts concerning arbitration must be resolved in favor of arbitration.  *See, e.g., Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

Plaintiff has entered into a valid and enforceable arbitration agreement that encompasses his claims against BB&T in this case.    The arbitration agreement is fair and balanced.  Specifically, the arbitration will be conducted by a well-known and widely-accepted neutral organization, the National Association of Securities Dealers ("NASD") and the fees will be equally shared by Plaintiff and BB&T.  (Exh. A, ¶ 8).

Because the broad arbitration agreement here is susceptible to an interpretation that would compel arbitration of the present dispute, and any doubts are to be resolved in favor of arbitration, the Court should compel arbitration.

**C.    The Court May Dismiss or Stay This Case.**

The law authorizes this Court to stay (9 U.S.C. § 3 (1999)) or dismiss (*Dowley v. Dewey Ballantine, LLP*, 2006 U.S. Dist. LEXIS 23304 (D.C.C. 2006) this case.

**IV.    CONCLUSION**

For the foregoing reasons, BB&T respectfully requests that the Court compel the Plaintiff's claims to arbitration and dismiss these proceedings.  A proposed Order is attached at Exhibit B.

Dated: May 26, 2006

Respectfully submitted,

/s/Alan L. Briggs
Alan L. Briggs, DC Bar No. 445237
SQUIRE, SANDERS & DEMPSEY L.L.P.
1201 Pennsylvania Ave., N.W.
Suite 500
Washington, DC  20004
Telephone:  (202) 626-6600
Facsimile:  (202) 626-6780

*Attorney for BB&T Investment Services, Inc.*