UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Adol Owen-Williams, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>BB&T Investment Services, Inc., )<br>)<br>Defendant. ) | Case No. 1:06CV00948<br><br>The Honorable Colleen Kollar-Kotelly |

**REPLY MEMORANDUM OF BB&T INVESTMENT SERVICES, INC.
IN SUPPORT OF MOTION TO COMPEL ARBITRATION**

**INTRODUCTION**

The Motion to Compel Arbitration should be granted, and this case dismissed. Plaintiff's efforts to avoid arbitration are without merit. First, the arbitration agreement at issue here is supported by consideration. While plaintiff argues in his opposition that he signed the Protective Covenants Agreement, which contains the arbitration agreement, at a "later" time than when he signed and sent back the employment offer letter, the facts tell a different story. At both hearings in this case, the plaintiff testified that the Protective Covenants Agreement was attached to the offer letter. Plaintiff received the offer letter with the Protective Covenants Agreement on March 24, 2006; he signed and sent back both the same day. There was consideration for the arbitration agreement. Second, BB&T did not waive its right to arbitrate. To the contrary, BB&T has consistently sought to arbitrate the Plaintiff's dispute. Finally, this case is governed by the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA") and the strong federal policy favoring arbitration. The Motion to Compel Arbitration should be granted.

**STATEMENT OF FACTS**[1]

Plaintiff resides in North Potomac, Maryland (Complaint ¶1). BB&T Investment Services, Inc. ("BB&T") is incorporated in North Carolina and has its home office in Charlotte, North Carolina but locally it is located in Frederick, Maryland (Ex. 2, p. 15). Plaintiff applied for a position with BB&T as an investment counselor. On March 6, 2006, T. J. Roccograndi of BB&T first interviewed plaintiff in person. This interview took place in Germantown, Maryland (Ex. 2, p. 9). Mr. Roccograndi was seeking to hire someone as an "investment counselor for the DC Metropolitan market." The office in which plaintiff would have been located was at Farragut Square on Connecticut Avenue in the District of Columbia (Ex. 2, p. 24).

Mr. Roccograndi was favorably impressed with plaintiff, and the next step Mr. Roccograndi took toward hiring plaintiff was, when Mr. Roccograndi was in Charlotte, North Carolina for a sales meeting, he sought approval for hiring plaintiff from the BB&T compliance department. He received a preliminary approval from the compliance department to proceed forward, it was contingent on getting a written statement of an incident plaintiff described with his neighbor and, thereafter, getting that statement reviewed and approved by the compliance department (Ex. 2, p. 13-14).

Debbie Travers, a BB&T employment counselor who is also located in Frederick, Maryland, next interviewed the plaintiff. She liked him. Mr. Roccograndi then sought, and obtained, the approval of his immediate superior to extend an offer to plaintiff, again subject to

---

[1] Plaintiff's bald, unsupported assertions in his opposition memorandum misstate the facts. While it is not necessary in this Reply to address each and every misstatement (as many are irrelevant), BB&T will respond to some of the more egregious misstatements of fact, which are pertinent to its arbitration motion. Attached hereto are the transcripts from the two hearings which have been held –Exhibit 1 – the April 21, 2006 hearing and – Exhibit 2 – the May 8, 2006 hearing. The parties testified to the facts at these hearings and references will be made to these exhibits to support the factual allegations stated in this brief.

receiving a written statement explaining the situation plaintiff described with his neighbor. (Ex. 2, p. 15-16)

Accordingly, on March 23, 2006, Debbie Travers called plaintiff and offered him the position. On that same day, Mr. Roccograndi sent by overnight mail the offer letter with the Protective Covenants Agreement attached to it:

> Q. Is that the March 23rd letter, tab 7?
>
> A. Yes, sir, it is.
>
> Q. And does that have attached to it a protective covenant agreement as well?
>
> A. It does.
>
> Q. And is that your signature on that contract?
>
> A. Yes, sir, it is.
>
> Q. On the offer letter and then on the contract as well?
>
> A. Yes, sir, it is.
>
> Q. All right. And you Federal Expressed those to Mr. Owen-Williams; is that what you said?
>
> A. I did.

(Ex. 2, pp. 17-18.)

The offer letter specifically stated: "All investment counselors and Investment Associates are required to sign a BB&T Investment Services non-compete agreement as a condition of employment." That agreement titled "Protective Covenants Agreement" was attached and specifically stated:

RECITALS

      A.    Employer desires to employ Employee (or to continue such employment, as the case may be), and Employee desires to accept such employment with Employer, in a position of trust and confidence to aid Employer in the furtherance of services and/or products to and for its customers and prospective customers;

* * *

      C.    Employer and Employee desire to set forth in writing certain covenants, terms, and conditions of their agreement and understanding as to such employment, with **this Agreement being ancillary to, an integral term and condition of and in consideration for such employment with Employer**, the compensation and benefits to be provided pursuant to Section 2 hereof; and, as and if applicable to Employee's position. Employer's sponsorship of Employee for licensing, Employer's registration of Employee with various exchanges, and Employer's provision of office facilities and sales support;

NOW, **for the above-referenced and other good and valuable consideration, the sufficiency of which is hereby acknowledged, and** intending to be legally bound, the Parties voluntarily agree as follows:

      1.    **Position and Duties**.  Subject to the terms of this Agreement, Employer agrees to employ (or continue to employ, as the case may be) Employee as an at-will employee in the position of **Investment Counselor**.  Employee accepts such at-will employment with Employer.  Employee agrees to perform those duties, responsibilities, and services that relate or are incidental to Employee's position and capacity (including but not limited to the creation and maintenance of goodwill through contacts with Employer's customers) in addition to other duties, responsibilities, and services as may be requested and/or assigned to Employee from time to time by authorized management officials.

* * *

(Emphasis added in Recitals; Exhibit 3 hereto.)

    Accordingly, the agreement was for "at will" employment.  The agreement further provided:

4

8. **Arbitration**. The parties agree that any and all disputes, disagreements, claims, or other conflicts regarding, relating to, or arising out of this Agreement, the Parties' employment relationship, any termination thereof, any employment-related act or practice by Employer or its employees, representatives, or agents, any breach of this Agreement; or any alleged breach of this Agreement, shall be subject and submitted to binding arbitration.

In the event such a dispute, disagreement, claim, or other conflict arises, the Parties agree to utilize the services of the National Association of Securities Dealers, Inc. ("NASD") for such binding arbitration, unless the NASD declines such arbitration, in which event the Parties agree to utilize the services of the American Arbitration Association ("AAA").

The arbitration shall be conducted in Charlotte, North Carolina and in accordance with the rules of the NASD or AAA (as the case may be), except that the rules set forth in this Section shall govern such arbitration to the extent that they conflict with the rules of the NASD or AAA. The cost of the arbitration (exclusive of attorneys' fees) shall be borne equally by the Parties unless otherwise agreed to by the Parties.

Each party consents to the personal and subject matter jurisdiction of the arbitration proceedings and waives any defense based upon said jurisdiction, venue, or forum. The award and any order from the arbitration shall be final and binding on all parties to such arbitration and judgment thereon may be entered in any court having jurisdiction hereof.

Notwithstanding the foregoing and without waiving its right to arbitration as provided herein, Employer shall have the right to seek equitable remedies, including injunctive relief, in any court of competent jurisdiction as to any said dispute, controversy, or claim arising under or in connection with Section 4 or 5 of this Agreement.

(Exhibit 3.)

This agreement was signed by Mr. Roccograndi for BB&T on March 23, 2006 before he sent it by overnight mail to the plaintiff. The plaintiff then signed the offer letter and the Protective Covenants Agreement on March 24, 2006 when he received it and sent them back to BB&T.

> Q. When did you notify Mass Mutual of your intentions to leave?
>
> A. The, the day I signed and mailed the contract. It was a multi-page contract. That was the cover page, Judge. There was, there were several other pages attached to it.

(Ex. 1, p. 16).

> Q. Let me then ask you about the offer of employment letter you received from BB&T.
>
> Do you have that in front of you, sir? Look behind Tab Ten, the chronology.
>
> A. Yes, sir.
>
> Q. And is that the offer letter?
>
> A. Yes.
>
> Q. Let me invite your attention to the second sentence. It states "All employment offers are contingent upon standard background checks, including educational and employment records search, criminal record search. NASD Central Registration, responsive check and satisfactory result of our company pre-employment substance abuse test."
>
> Did I read that sentence accurately, sir?
>
> A. Yes.
>
> Q. And you understood that before you signed that letter; did you not?
>
> A. Yes.
>
> Q. And attached to that letter was identified and titled Protective Covenant Agreement; is it not, sir?
>
> A. Yes.
>
> Q. And you understood that was an offer of an employment contract for a position with BB&T which was an at will employment; did you not, sir?
>
> A. Yes.

(Ex. 2, pp. 58-59).

6

At the same time as the offer was made to plaintiff on March 23, 2006, Mr. Roccograndi called plaintiff and explained to him the additional requirement for the written statement about the incident he described with his neighbor. Then on March 28, 2006, plaintiff sent to BB&T, by facsimile, a letter explaining the neighbor incident (Ex. 2, p. 18). Mr. Roccograndi was shocked by the revelations in the letter and discussed it with the BB&T compliance department. Thereafter, BB&T concluded to, and did, rescind the offer (Ex. 2, p. 22).

On Friday, April 21, 2006, plaintiff filed this lawsuit in the Superior Court of the District of Columbia. A hearing was held that same day, starting at 2:27 PM, on plaintiff's motion for a temporary restraining order.

At the conclusion of the hearing, the Court denied the motion for a TRO:

> I don't think there's a basis under the law for issuing a temporary restraining order, so request is denied.

(Ex. 1, p.103).

However, on Monday, April 24, 2006, prior to signing the order memorializing its decision to deny the Motion for a Temporary Restraining Order, the Court vacated its decision and scheduled the TRO Motion for further hearing on May 8, 2006. On May 8, 2006, the Court explained its reasoning for this action:

> THE COURT: All right. Well, before we do that, I'm not sure – I suppose we will need some testimony, but just for the record, on April the 21st we were last here.
>
> The matter came before the Court late in the afternoon on the date that the petition for a temporary restraining order was filed and at the end of the hearing, the Court indicated – I indicated that I did not think that the predicate for a temporary restraining order had been established.
>
> On further consideration over the weekend, it seemed to me appropriate that more of an opportunity should be accorded the parties to present testimony or other evidence and that perhaps a

7

> further hearing was appropriate and so I vacated my oral order of April 21st and continued the matter until today for further hearing.
>
> Frankly, my concern for these – one, the matter came up late in the evening. We had the fire alarm go off and Mr. Owen-Williams was absent from some of the hearing because he had gone to his car to attend to it and then had been delayed getting back into the judge in chambers.
>
> Furthermore, I had anticipated that a hearing – at least a status hearing on the request for preliminary injunction would have been scheduled sometime in May.
>
> Actually, I understand it was scheduled in July; is that correct? Is that the date of the next hearing?
>
> MR. BRIGGS:    I'm not sure.
>
> MR. MALLOY:    I'm not sure, your Honor.
>
> THE COURT:    In any event, all these factors caused me some concern as to whether indeed there might be the need for a temporary restraining order. So, I will hear further from both sides today.

(Ex. 2, p. 4-5.)

On May 8, 2006 BB&T filed its Motion to Compel Arbitration. This was filed prior to the 10:00 AM continued hearing on the Motion for a TRO. Thereafter at the 10:00 AM hearing, the parties again testified and the Court reached the same decision as it did on April 21, 2006, and held:

> So, I think in terms of all three of those prerequisites, the petition for a temporary restraining order fails and so for those reasons, I'm compelled to deny your request for a temporary restraining order.

(Ex. 2, p. 67.)

On May 8, 2006 the Court entered its Order denying the Motion for a Temporary Restraining Order. On May 11, 2006, BB&T answered the Complaint, and on May 19, 2006 BB&T removed the case to this Court. On May 22, 2006 a telephone hearing was held with this

Court and the Court established a schedule for the refiling and briefing of the Motion to Compel Arbitration. In accordance therewith, the Motion to Compel arbitration was filed on May 26, 2006.

## ARGUMENT

I.  **THE ARBITRATION CLAUSE IS FULLY SUPPORTED BY CONSIDERATION.**

Plaintiff, in two unsupported statements (Plaintiff's Memo Contra pp. 2, 6), claims that the Protective Covenants Agreement came at a "later" time than the March 23, 2006 offer letter. From this time difference, plaintiff then builds an argument that the second agreement, the "Protective Covenants Agreement," was not supported by consideration as plaintiff had earlier agreed to the employment contract. There is a problem with legal arguments based on unsupported, alleged facts: sometimes the actual facts get in the way. Here, that is the case. Plaintiff testified at both hearings in Superior Court, and on both occasions made it clear, that when he received the offer letter, the Protective Covenants Agreement was attached to it. The plaintiff in fact signed and dated the Protective Covenants Agreement on March 24, 2006, the day he received both. Accordingly, when plaintiff accepted the offer of employment he signed both the offer letter and the Protective Covenants Agreement, in which he agreed to arbitration, and then returned them to BB&T. Therefore, plaintiff's argument that there is no consideration for the arbitration agreement because he signed the Protective Covenants Agreement "later" than the offer letter is contradicted by the facts.

However, even if he had signed the letter on a "later" date as he now claims, which he did not, the arbitration agreement is nonetheless supported by consideration  This Court has found that "mutual agreements to arbitrate are independently sufficient forms of consideration." *Sapiro v. VeriSign*, 310 F. Supp. 2d 208, 213 (D.D.C. 2004). "Despite plaintiff's contention, there was valid consideration for plaintiff's agreement to arbitrate – NSI/VeriSign agreed to employ her,

9

and the ability to enforce the Arbitration Agreement was mutual." *Id.* at 214. As in *Sapiro*, there was valid consideration for Owen-Williams' agreement to arbitrate because BB&T agreed to employ him, and both Owen-Williams and BB&T had the ability to enforce the agreement.

Plaintiff's reliance on *Gibson v. Neighborhood Health Clinics*, 121 F.3d 1126 (7th Cir. 1997) is misplaced. The *Gibson* arbitration agreement was one-sided and contained no promise on the employer's part to submit claims to arbitration. The Seventh Circuit, thus, concluded that the agreement did not contain consideration for Gibson's promise to arbitrate in the form of a promise by the employer to submit disputes to arbitration. Unlike the *Gibson* agreement, however, the arbitration clause in the Protective Covenants Agreement obligates both BB&T and Owen-Williams to submit all disputes to arbitration: "**The Parties agree** that any and all disputes, disagreements, claims, or other conflicts regarding, relating to, or arising out of this Agreement, the Parties' employment relationship, any termination thereof, any employment-related act or practice by Employer or its employees, representatives, or agents, any breach of this Agreement, or any alleged breach of this Agreement, shall be subject and submitted to binding arbitration." Agreement at ¶ 8 (emphasis added). The arbitration clause is mutual and binds both parties. Thus, according to this Court's holding in *Sapiro*, there is no lack of consideration because there was mutual agreement between the parties to arbitrate. *See Sapiro*, 310 F. Supp. 2d at 213.[2]

"Under modern contract law, however, so long as a contract is supported by sufficient consideration there is no requirement of equivalent promises or 'mutuality of obligation' . . . Federal courts addressing the issue recently have consistently concluded that arbitration

---

[2] Of interest, the 7th Circuit has also found that one party's promise to arbitrate was given in exchange for the other party's promise to arbitrate and thus each promise was sufficient consideration for the other. *See Sauer-Getriebeky v. White Hydraulics, Inc.*, 715 F.2d 348, 350 (7th Cir. 1983).

agreements contain adequate consideration, need not have mutuality or equivalency of obligation, and therefore are enforceable." *Booker v. Robert Half Inter'l, Inc.*, 315 F. Supp. 2d 94, 101 (D.D.C. 2004). In addition to the consideration given by Owen-Williams and BB&T to arbitrate all employment-related disputes, both parties provided additional consideration under the terms of the Protective Covenants Agreement. "Subject to the terms of this Agreement, Employer agrees to employ Employee as an at-will employee in the position of Investment Counselor. Employee accepts such at-will employment with Employer. Employee agrees to perform these duties . . . ." Exhibit 3, Agreement ¶ 1.

Finally. plaintiff's claim that the Protective Covenants Agreement is not an employment agreement is also belied by the facts. The Protective Covenants Agreement is an employment agreement. *See* Recital A. of the Agreement: "Employer desires to employ Employee ... and Employee desires to accept such employment with Employer." *See also* Recital C: "Employer and Employee desire to set forth in writing certain covenants, terms and conditions of their agreement and understanding as to such employment..." The provision cited to by Plaintiff's counsel as evidence that the agreement is not an employment contract goes specifically to the **nature** of the employment agreement. That is, Employee's employment is an at-will situation, and is for no specified term or duration. The very language of the document evidences that it is an employment agreement (See Recitals).

Accordingly, plaintiff's first argument is without merit.

## II.    BB&T HAS NOT WAIVED ITS RIGHT TO ARBITRATION

Plaintiff's second argument is that BB&T waived its right to arbitration. The undisputed facts demonstrate that nothing could be further from the truth. Plaintiff filed this lawsuit on Friday afternoon, March 21, 2006. Because plaintiff's counsel had given BB&T advance notice he was going to seek a TRO, counsel for BB&T was at the court house waiting. At that time,

plaintiff's counsel handed counsel for BB&T a copy of the Complaint and the Motion for Temporary Restraining Order. Moments later the parties were in a hearing where plaintiff sought a temporary restraining order. The Court denied the temporary restraining order that afternoon, but on Monday, April 24, 2006 issued an order vacating that decision and continuing the TRO hearing to May 8, 2006.

On May 8, 2006, prior to the hearing, BB&T filed its Motion to Compel Arbitration. On May 11, 2006, the first day BB&T arguably had any duty to respond to the Complaint, it filed its Answer, and the very first words in the Answer were:

> **Without intending to waive, and specifically asserting, that this matter should proceed in arbitration**, Defendant BB&T Investment Services, Inc. ("BB&T") answers Plaintiff's Complaint to the extent necessary to comply with the District of Columbia Rules of Civil Procedure, and hereby states as follows:

(Emphasis added.)

In addition, BB&T specifically pleaded as its Sixth Defense:

### SIXTH DEFENSE – ARBITRATION

> 66. This Court is not the appropriate forum in which to resolve this dispute. As part of the offer of employment by BB&T described in the Complaint, Plaintiff executed an agreement that includes an unambiguous arbitration provision concerning the employment agreement at issue in this case. Plaintiff's claims should be referred to arbitration.

BB&T removed the case to this Court on Friday, May 19, 2006. On Monday, May 22, 2006 this Court held a scheduling conference by phone with counsel and at that time counsel for BB&T advised the Court it would refile the Motion to Compel Arbitration. The Court established a schedule for the filing and May 26, 2006 was the day established as the last day for the Motion to Compel to be filed and on May 26, 2006 BB&T filed the Motion to Compel. Therefore, the facts make it clear that BB&T has aggressively pursued its right to arbitration.

"A party to an arbitration agreement waives its right to arbitration where it acts inconsistently with its right to do so under the totality of the circumstances." *National Found. for Cancer Research v. A.G. Edwards & Sons, Inc.*, 821 F.2d 772, 774 (D.C. Cir. 1987). Under this totality of the circumstances test, BB&T has not waived its right to arbitration. Plaintiff's counsel lists BB&T's "participation in litigation" in his Opposition, but neglects to state that the totality of the activity was in response to Plaintiff's emergency motion seeking a Temporary Restraining Order against BB&T. Plaintiff's reference to "evidentiary hearings" (Plaintiff's Memo Contra at p. 7) were actually hearings on Plaintiff's emergency TRO motion. Each of the notices of deposition of MassMutual, Ms. Weldon and Plaintiff was in defense of those very same emergency hearings. BB&T cancelled all three depositions when it became apparent the depositions could not take place prior to the May 8 hearing on the TRO. Finally, Plaintiff argues that BB&T's Answer constitutes participation in litigation and as such waives BB&T's right to arbitration. Again, the very first line of BB&T's May 11 Answer states: "Without intending to waive, and specifically asserting, that this matter should proceed in arbitration . . ."

A similar argument as is made by the plaintiff here was made to and rejected by the Court in <u>Popovich v. McDonalds</u>, 189 F. Supp. 2d 772 (ND Ill ED, 2002)

> Second, though a party may waive the right to arbitrate by acting inconsistently with that right, see, e.g., <u>St. Mary's Medical Cener v. Disco Aluminum Products Co., 969 F.2d 585, 588 (7th Cir. 1992)</u>, McDonald's did not waive its right to arbitrate by opposing Popovich's motion for a preliminary injunction. Popovich made his motion before McDonald's had time to catch its breach after being served with the lawsuit: he filed the motion for preliminary injunction just one week after he filed suit, and the Court denied it just slightly more than two weeks later. Though McDonald's could have sought to compel arbitration at that point, a demand for arbitration would not have precluded the Court from considering the preliminary injunction motion. Even when a claim filed in court is subject to arbitration, a court retains the authority to enter a preliminary injunction to preserve the status quo ante and prevent irreparable harm pending a decision by the arbitration panel. See, e.g.,

> IDS Life Insurnace Co. v. SunAmerica, Ltd., 103 F.3d 524, 527 (7th Cir. 1996); Gateway Eastern Ry. V. Terminal Railroad Association, 35 F.3d 1134, 1141 (7th Cir. 1994). Thus McDonald's opposition to Popovich's motion was in no way inconsistent with the right to arbitrate and does not constitute a waiver. See Knorr Brake Corp. v. Harbil, Inc., 556 F. Supp. 489, 492 (N.D. Ill. 1983); Motion Werks Partners, L.P. v. BMW of North America, Inc., 2001 U.S. Dist. LEXIS 20999, No. 01 C 7178, 2001 WL 1607503, at *4 (N.D. Ill. Dec. 17, 2001).
>
> [Id. At 775-776]

The two cases cited by Plaintiff to support his waiver argument are inapposite. In both *Cornell* and *Radiator Specialty Co.*, the party attempting to assert its right to arbitration had substantially participated in litigation by answering the complaints without referencing its right to arbitration. Additionally, the asserting party in both of those cases brought counterclaims against the plaintiff. Indeed, in finding a waiver had occurred in the *Cornell* case, the court distinguished a Second Circuit decision, *Robert Lawrence Co. v. Devonshire Fabrics, Inc.*, 271 F.2d 402, 412-413 (2d Cir. 1959), which found that "no waiver had occurred although the movant defendant had participated to some extent in the lawsuit, because a demand for arbitration was made in his answer." BB&T asserted its right to arbitration on May 8, 2006 by filing a Motion to Compel Arbitration, and again referenced that right to arbitration in its May 11 Answer. To the extent BB&T participated in the proceedings before the D.C. Superior Court, those activities were just to defend against Plaintiff's emergency motion for a TRO. BB&T has consistently sought arbitration of this case. Accordingly, Plaintiff's waiver claim should be rejected.

III.   **THE FEDERAL ARBITRATION ACT APPLIES BECAUSE THE CONTRACT INVOLVES INTERSTATE COMMERCE. THE FAA COMPELS ENFORCEMENT OF THE ARBITRATION PROVISIONS AND PREEMPTS ANY CONTRARY STATE LAW.**

Plaintiff argues that Georgia law applies and cites to *Freeman v. C. W. Redfern Enterprises, Inc.*, 185 Ga. App. 205, 335 S.E.2d 79 (Ga. Ct.App. 1987) as support. However,

plaintiff failed to note that in *Freeman v. C.W. Redfern Enterprises, Inc.*, the Court of Appeals of Georgia actually affirmed the lower court's decision compelling arbitration, and found that counsel's reliance on the very cases relied upon by plaintiff's counsel was misplaced. However, the key issue in response is because federal law applies, it preempts any state law that limits arbitration.

The U.S. Supreme Court has found that arbitration acts "leave ... no place for the exercise of discretion by a district court, but instead mandates ... the district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 218 (1985). These mandatory provisions do not permit parties to "ignore the contract and resort to the courts. Such a course could lead to prolonged litigation, one of the very risks the parties, by contracting for arbitration, sought to eliminate." *Southland Corp. v. Keating,* 465 U.S. 1, 7 (1984).

> In *Southland Corp. v. Keating, supra,* this Court decided that Congress would not have wanted state and federal courts to reach different outcomes about the validity of arbitration in similar cases. The Court concluded that the Federal Arbitration Act pre-empts state law; and it held that state courts cannot apply state statutes that invalidate arbitration agreements. *Id.,* at 15-16.

[*Allied Bruce Terminex Co. v. Dobson,* 513 U.S. 265, 273 (1995)]

Because this is a contract that implicates interstate commerce as stated in BB&T's Motion to Compel Arbitration and Dismiss or Stay Proceeding, the Federal Arbitration Act applies to this agreement. The Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* ("FAA") requires that courts "rigorously enforce agreements to arbitrate." *Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 226 (1987). The FAA states:

> § 2. Validity, irrevocability, and enforcement of agreements to arbitrate

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

Thus, the FAA applies to a claim if (1) there is a written agreement to arbitrate; and (2) the contract evidences a transaction involving commerce. *See* 9 U.S.C. § 2 (1999); *see also Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 274 (1995). On March 24, 2006, the Plaintiff in this case, Mr. Adol Owen-Williams, signed and dated BB&T's Protective Covenants Agreement which provides for mandatory arbitration of any disputes.

Both of the FAA conditions are satisfied in this case. The written agreement to arbitrate was contained within the BB&T Agreement Plaintiff signed on March 24, 2006 and is legally enforceable, and Plaintiff's employment evidences a transaction involving commerce.[3] Because

---

[3] "The Supreme Court has interpreted the term 'involving commerce' in the FAA as the functional equivalent of the more familiar term 'affecting commerce' – words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power." *Jenkins v. First Am. Cash Advance of Ga., LLC*, 400 F.3d 868, 874 (11th Cir. 2005). The Supreme Court also has clarified that "Congress' Commerce Clause power may be exercised in individual cases without showing any specific effect upon interstate commerce if in the aggregate the economic activity in question would represent a general practice subject to federal control." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56-57 (2003). The Supreme Court and the District of Columbia Circuit have both held that coverage of the FAA extends to agreements to arbitrate contained in employment contracts. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 123 (2001); *see also Cole v. Burns Int'l Security Services*, 105 F.3d 1465, 1470-71 (D.C. Cir. 1997). Georgia's laws and policies yield to federal law "where the transactions out of which the claim for arbitration arose involve 'commerce' within the meaning of 9 U.S.C. § 1 of the Federal Arbitration Act." *Primerica Financial Services, Inc. v. Wise*, 456 S.E.2d 631, 632 (Ga. App. 1995) (quoting *ADC Constr. Co. v. McDaniel Grading*, 338 S.E.2d 733 (Ga. App. 1985)). "Commerce within the meaning of the Arbitration Act, means interstate commerce, and the determination of whether a contract evidences transactions in interstate commerce is a question on which federal rules of contract construction and interpretation govern." *Id.*

the FAA applies, it governs whether Plaintiff's claims in this case must be resolved in arbitration.

Accordingly plaintiff's third argument is without merit.

**CONCLUSION**

For the foregoing reasons the Motion to Compel Arbitration should be granted and the case should be dismissed.

                                          Respectfully submitted,

                                          /s/ Alan L. Briggs
                                          Alan L. Briggs, DC Bar No. 445237
                                          SQUIRE, SANDERS & DEMPSEY L.L.P.
                                          1201 Pennsylvania Ave., N.W.
                                          Suite 500
                                          Washington, DC  20004
                                          Telephone:  (202) 626-6600
                                          Facsimile:  (202) 626-6780
                                          *Attorney for BB&T Investment Services, Inc.*

Dated: June 16, 2006

CERTIFICATE OF SERVICE

I hereby certify that a copy foregoing document was served pursuant to the electronic filing system in the United States District Court on:

> Seann P. Malloy
> Simmons & Associates, Chartered
> 7347 Wisconsin Avenue
> Suite 200
> Bethesda, Maryland  20814
> Attorneys for Plaintiff

/s/Alan L. Briggs
Alan L. Briggs