UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ADOL OWEN-WILLIAMS,

    Plaintiff,

      v.

BB&T INVESTMENT SERVICES, INC.,

    Defendant.

Civil Action No. 06-0948 (CKK)

**MEMORANDUM OPINION**
(July 31, 2006)

Plaintiff Adol Owen-Williams ("Plaintiff") filed this action against Defendant BB&T

Investment Services, Inc. ("Defendant" or "BB&T") in Superior Court of the District of Columbia

on April 21, 2006, alleging Defendant breached its employment contract with Plaintiff.  The case

was removed to this Court on May 19, 2006.  Presently before the Court is Defendant BB&T

Investment Services, Inc.'s Motion to Compel Arbitration and Dismiss or Stay Proceedings

("Defendant's Motion to Compel"), in which Defendant asks the Court to enforce the arbitration

clause in its employment contract with Plaintiff.  For the reasons set forth below, the Court shall

grant Defendant's motion and dismiss without prejudice Plaintiff's present action.

**I. BACKGROUND**

In January and February of 2006, Plaintiff was interviewed by phone and in person by one

of Defendant's recruiters, T.J. Roccograndi, about a position with BB&T.  Compl. at 4.

Roccograndi decided he "wished to move forward with [Plaintiff]" and asked Plaintiff to fill out a

standard industry background form.  Def.'s Reply Mem. of BB&T Investment Services, Inc. in

Support of Mot. to Compel Arbitration ("Def.'s Reply"), Ex. 2 (5/8/06 Hr'g Tr.) at 9:4-23; Pl.'s

Opp'n to Def.'s Mot. to Compel Arbitration and Stay Proceedings ("Pl.'s Opp'n") at 2 n.2.  At this time, Plaintiff told Roccograndi "he had to fill yes out to one of the questions [regarding involvement in prior litigation] because he said that he was involved in a litigation case with his neighbor . . . ."  Def.'s Reply, Ex. 2 (5/8/06 Hr'g Tr.) at 9:24-10:2.  Plaintiff went on to explain the nature of that litigation and that "the judge . . . totally dismissed it."  *Id*. at 10:3-25.  Because the incident "had nothing to do with [Plaintiff's] business ethics," Roccograndi was satisfied with Plaintiff's explanation.  *Id*. at 11:1-5.  Following the interview, Roccograndi had the form faxed to BB&T's Compliance Department in Charlotte, North Carolina, so that a background check of Plaintiff could be conducted.  *Id*. at 11:17-12:6.  The Compliance Department told Roccograndi, based on Plaintiff's initial description of the incident, they wished to proceed in the hiring process, but that they would need Plaintiff to put that description in writing.  *Id*. at 13:17-14:2.

Plaintiff was brought in for his final interview on March 21, 2006, and Plaintiff was offered the position via telephone the following day.  *Id*. at 14:13-23, 46:13-23.  On March 23, 2006, Defendant sent two documents to Plaintiff via Federal Express.  Def.'s Reply, Ex. 3 (3/23/06 letter from Roccograndi to Pl. re: job offer ("Employment Contract")), (Protective Covenants Agreement ("Covenants Agreement")).[1]  Roccograndi testified that he sent the letter to Plaintiff communicating the employment offer, accompanied by the Protective Covenants Agreement.  Def.'s Reply, Ex. 2 (5/8/06 Hr'g Tr.) at 17:13-18:2.  Plaintiff testified that the Covenants Agreement was attached to the Employment Contract.  *Id*. at 59:8-14.

---

[1] For the sake of clarity, the Court will employ Plaintiff's terms to distinguish between the letter extending Defendant's employment offer to Plaintiff ("Employment Contract") and the document attached to that letter providing the terms of employment ("Covenants Agreement"). However, as will be set forth fully below, the Court does not agree with Plaintiff's view that the Employment Contract alone, and not the Covenants Agreement, is the sole binding contract between Plaintiff and Defendant.

The Employment Contract stated that "[a]ll employment offers are contingent upon standard background checks . . . ," and informed Plaintiff that his employment would begin April 10, 2006. Employment Contract.  The Covenants Agreement contained the following arbitration clause:

> The parties agree that any and all disputes, disagreements, claims, or other conflicts regarding, relating to, or arising out of this Agreement, the Parties' employment relationship, any termination thereof, any employment-related act or practice by Employer or its employees, representatives, or agents, any breach of this Agreement, or any alleged breach of this Agreement, shall be subject and submitted to arbitration.

Covenants Agreement at 7.  The Covenants Agreement also stated that the law of Georgia would govern the agreement.  *Id.* at 6.  Plaintiff signed both documents and returned them March 24, 2006, the day he received them.  Def.'s Reply, Ex. 2 (5/8/06 Hr'g Tr.) at 47:6-7, 47:24-48:1; Covenants Agreement (signed and dated by Plaintiff 3/24/06).

Roccograndi informed Plaintiff he would need to provide a written record of the incident with his neighbor to ensure Compliance would approve Plaintiff's hiring.  Def.'s Reply Ex. 2 (5/8/06 Hr'g Tr.) at 18:3-6.  Roccograndi received Plaintiff's response to this request on March 28, 2006 and was "disappointed" and "shocked" because the letter communicated what Roccograndi considers "a totally different story from what [he] was initially told by [Plaintiff]" and because Roccograndi "put [his] name on the line" communicating Plaintiff's initial version of the story to the Compliance Department.  *Id.* at 18:7-23.  Roccograndi passed the letter on to Compliance, and, according to Roccograndi's testimony, various employees did not feel comfortable with proceeding with Plaintiff's hiring based on the contents of the letter.  *Id.* at 19:1-20:2.  The next day, Roccograndi was apprised of another incident in Plaintiff's past that Plaintiff did not disclose to Defendant.  *Id.* at 20:3-9.  While Plaintiff was in college, he was convicted of trespassing, a conviction that he has since had expunged from his record, and the National Association of Security

Dealers sent that information to Defendant in error.  Def.'s Reply, Ex. 1 (4/21/06 Hr'g Tr.) at 22:6-

13.  While Plaintiff and Defendant dispute the precise reason, BB&T eventually decided to rescind

its employment offer based on Plaintiff's background check, and Roccograndi communicated this to

Plaintiff on April 6, 2006, prior to the date Plaintiff and Defendant had agreed Plaintiff would begin

his employment.  Def.'s Reply, Ex. 2 (5/8/06 Hr'g Tr.) at 22:15-24, Ex. 1 (4/21/06 Hr'g Tr.) at

40:13-18.  On April 11, 2006, Roccograndi and Plaintiff spoke again, and Roccograndi confirmed

that the Compliance Department was not willing to approve Plaintiff for hiring.  Def.'s Reply, Ex. 1

(4/18/06 Hr'g Tr.) at 41:22-42:1.

After unsuccessfully pursuing the matter further with Roccograndi, Plaintiff retained counsel

in order to file the instant action in Superior Court of the District of Columbia.  *Id.* at 54:25-55:9;

56:2-57:4.  On April 21, 2006, the day the Complaint was filed, Plaintiff also filed an emergency

motion for a temporary restraining order ("TRO") to prevent Defendant from filling Plaintiff's

position at BB&T so that "maybe somebody with a reasonable mind [at BB&T] could take an

objective look at [Plaintiff's] situation again."  Def.'s Reply, Ex. 1 (4/21/06 Hr'g Tr.) at 87:8-15.

That same day, the first of two evidentiary hearings on Plaintiff's requested TRO was held, in which

Plaintiff sought to show he was entitled to injunctive relief.  Def.'s Reply, Ex. 1 (4/21/06 Hr'g Tr.)

at 82:25-16; 87:8-15.  From the bench, Superior Court Judge Robert S. Tignor denied Plaintiff's

motion, *id.* at 102:3-103:13, but three days later, Judge Tignor vacated his denial and issued an

order permitting the parties to offer further evidence at an additional hearing, 4/24/06 Order.[2]  In

---

[2] Plaintiff incorrectly characterizes Judge Tignor's decision on April 21, 2006 as issuing "a temporary injunction preventing BB&T from filing Mr. Owen Williams [sic] position."  Pl.'s Opp'n at 3.  Instead, a review of the transcript indicates that Judge Tignor temporarily vacated his previous decision denying Plaintiff's requested relief pending further hearing.  Ultimately, Judge Tignor denied Plaintiff's requested temporary restraining order for good on May 8, 2006.

preparation for that hearing, Defendant served notices of deposition and document requests on

Plaintiff.  Pl.'s Opp'n at 3.  Defendant never held those depositions, Def.'s Reply at 13, though

Plaintiff states he produced documents in response to Defendant's requests, Pl. Opp'n at 3.  The

second hearing was held on May 8, 2006, and the Superior Court again denied Plaintiff's motion.

*See* Def.'s Reply, Ex. B (5/8/06 Hr'g Tr.); 5/8/06 Order.

The day of the second hearing, Defendant filed its first motion to compel arbitration, which

the Superior Court denied because Defendant failed to comply with D.C. Superior Court Rule 12.

Pl.'s Opp'n at 7 n.8.  On May 11, 2006, Defendant filed Defendant BB&T Investment Services,

Inc.'s Answer and Affirmative Defenses ("Answer"), in which Defendant stated that "this matter

should proceed in arbitration," and that in filing the Answer, Defendant did not intend to waive its

right to seek enforcement of the arbitration agreement contained in the Covenants Agreement.

Answer at 1.  On May 19, 2006, the action was removed by Defendant to this Court.  *See* Defendant

BB&T Investment Services, Inc.'s Notice of Removal.  One week later, Defendant filed the motion

presently before the Court, Defendant's Motion to Compel, in which Defendant seeks enforcement

of the arbitration clause in the Covenants Agreement.

## II. DISCUSSION

Plaintiff argues that Defendant's Motion to Compel should be denied because the arbitration

agreement was not supported by consideration and thus was not part of a binding contract; because

Georgia law governs the terms of Plaintiff and Defendant's employment agreement, such that

Georgia's policy preference against the enforcement of broad arbitration agreements dictates that the

instant arbitration agreement is too broad to be enforced; and because, even if the arbitration

agreement were valid and appropriate here, Defendant waived its right to enforce the agreement by

acting inconsistently with an intention to arbitrate and actively litigating the action thus far.  The

5

Court will address each of Plaintiff's contentions in turn, concluding that the arbitration agreement is a binding contract supported by consideration, that the Federal Arbitration Agreement ("FAA") preempts Georgia law and governs the agreement, and that Defendant has not litigated the merits of this action and thus has not waived its right to enforce the arbitration agreement.

> A.     The Covenants Agreement, Including the Arbitration Clause, Is a Binding Contract

Plaintiff's primary argument is that the arbitration clause is not enforceable because it was included in the Covenants Agreement and not the Employment Contract. Pl.'s Opp'n at 4-5. According to Plaintiff, the Covenants Agreement was signed by Plaintiff subsequent to his entry into the Employment Contract, such that there was no additional consideration for the provisions of the Covenants Agreement. *Id.* Plaintiff avers that the terms of the Covenants Agreement are "purely one-sided" and thus, the Covenants agreement is not an enforceable contract, making all of its provisions, including the arbitration clause, unenforceable. *Id.* at 5. Plaintiff supports his contention that the Covenants Agreement is not a contract by quoting a provision that appears twice in the document:

> Employment-at-Will. Employee acknowledges and understands that nothing set forth in this agreement creates or is intended to (or is to be construed to) create any employment contract of any specified term between the parties. Rather, the parties agree that employee's employment is considered at will and may be terminated by either employee or employer at any time, for any reason, and with or without notice.

Covenants Agreement at 2; *see also* Covenants Agreement at 8.

It is wholly apparent to the Court that the provision that Plaintiff cites, not once in its entirety, is meant to distinguish between at-will employment, in which either party can terminate the employment relationship at any time, and an employment contract for a specified period of time. While the Court acknowledges Plaintiff's efforts to bring this clause to its attention, including

quoting it three times, bolded and underlined, the Court would have appreciated Plaintiff quoting the full provision or including ellipses indicating any omitted material, particularly where, as here, the omitted language is material to the meaning of the sentence. *Compare* Pl.'s Opp'n at 6 n.7 ("Nothing Set Forth In This Agreement Creates or is Intended to Create Any Employment Contract.") *and* Covenants Agreement at 2 ("Employment-at-Will:  Employee acknowledges and understands that nothing set forth in this agreement creates or is intended to (or is to be construed to) create any employment contract of any specified term between the parties.").  This provision is clearly not meant to state that the Covenants Agreement was not a binding employment contract, particularly given that the document also states:  "for the above-referenced and other good and valuable consideration, the sufficiency of which is hereby acknowledged, and intending to be legally bound, the Parties voluntarily agree" to the terms set forth in the Covenants Agreement. *Id*. at 1.

In an attempt to prove the Covenants Agreement was not a binding contract, Plaintiff argues: "[t]he March 23rd, 2006 Employment Contract constituted a binding employment contract with the Defendant.  Later, after executing and returning the Employment Contract by mail, Plaintiff was presented with another document called the 'Protective Covenant Agreement.'" Pl.'s Opp'n at 6. As Defendant notes, the facts fail to support Plaintiff's assertion; rather, the Employment Contract and the Covenants Agreement were sent to Plaintiff together on March 23, 2006, received, signed, and returned by Plaintiff the following day.  Def.'s Reply at 5, Ex. 2 (5/8/06 Hr'g Tr.) at 17:15-18:2, 59:8-14; Covenants Agreement.  Plaintiff's assertion that he received the Covenants Agreement subsequent to his signing and returning the Employment Contract is contrary to his own testimony under oath, as well as the dates borne by both of the documents, which indicate they were returned to Defendant together. *See* Employment Contract (dated March 23, 2006 by Defendant); Covenants Agreement (dated March 24, 2006 by Plaintiff's signature).  Plaintiff stated that he

7

"signed and mailed the contract," which was "multi-page" containing "several other pages attached to" the cover letter.  Def.'s Reply, Ex. 1 (4/21/06 Hr'g Tr.) at 16:6-9.  Based upon the signed and dated documents and Plaintiff's testimony, the Court concludes that the documents were, indeed, received, signed, and returned together.  As such, Plaintiff's attempt to convince the Court that the Covenants Agreement is not a binding contract because it was signed by Plaintiff "later" than the Employment Contract fails because this assertion is contrary to the record before the Court.

Additionally, Plaintiff's attempt to urge the Court that the Covenants Agreement is not a binding contract fails because his assertion that the agreement was one-sided and lacking consideration is without merit.  The document states: "this Agreement [is] ancillary to, an integral term and condition of and in consideration for such employment with Employer . . . ."  Covenants Agreement at 4.  Many of its terms are explicitly mutual, such as the frequently cited At-Will provision, which states that "employee's employment is considered at will and may be terminated by *either employee or employer* at any time . . . ."  Covenant Agreement at 2 (emphasis added).

Specifically with regard to the mutuality of the arbitration clause, Plaintiff argues that the present case is similar to *Gibson v. Neighborhood Health Clinics, Inc.*, in which the Seventh Circuit held that an arbitration clause in the plaintiff employee's policy manual was not binding on the plaintiff because the agreement lacked consideration.  121 F.3d 1126, 1131 (7th Cir. 1997).  However, that holding turned on the fact that the agreement was "worded entirely in terms of [the plaintiff's] obligation to submit her claims to arbitration (using phrases such as "I agree" "I understand" "I am waiving"); it contains no promise on [the defendant's] part."  *Id*.  In fact, the court in *Gibson* explicitly stated, "[o]ften, consideration for one party's promise to arbitrate is the other party's promise to do the same," but in that particular agreement, no such return promise from the employer existed.  *Id*. (citing *Patterson v. Tenet Healthcare, Inc.*, 113 F.3d 832, 835 (8th Cir.

8

1997); *Matterhorn, Inc. v. NCR Corp.*, 763 F.2d 866, 869 (7th Cir. 1985)).

Unlike in *Gibson,* the language of the arbitration clause in the instant case is mutually

binding on both Plaintiff and Defendant.  It states:

> The Parties agree that any and all disputes, disagreements, claims, or other conflicts
> regarding, relating to, or arising out of this Agreement, the Parties' employment
> relationship, any termination thereof, any employment-related act or practice by
> Employer or its employees, representatives, or agents, any breach of this Agreement,
> or any alleged breach of this Agreement, shall be subject and submitted to binding
> arbitration.

Covenants Agreement at 7.  "Mutual agreements to arbitrate are independently sufficient forms of

consideration."  *Sapiro v. VeriSign*, 310 F. Supp. 2d 208, 214 (D.D.C. 2004) (citing *Morrison v.

Circuit City Stores, Inc.*, 317 F.3d 646, 667 (6th Cir. 2003)).  *See also Rushing v. Gold Kist, Inc.*,

256 Ga. App. 115, 119, 567 S.E.2d 384 (2002) ("[U]nder Georgia law, a promise is good

consideration for another promise if there is an absolute mutuality of engagement, so that each party

has the right at once to hold the other to a positive agreement. . . . [Defendant cooperative] and its

members are equally bound to arbitrate those categories of cases designated by the board, to comply

with the same arbitration procedures, and to abide by the results.").

Therefore, Plaintiff's argument that the arbitration agreement, as part of the Covenants

Agreement, is not enforceable because it lacks consideration, is without merit.  While Plaintiff's own

testimony directly contradicts Plaintiff's statements in his Opposition regarding the timing of his

receipt of the Employment Contract and Covenants Agreement, even if Plaintiff did not receive the

Covenants Agreement until a later date, the arbitration clause was nonetheless supported by

consideration.  Defendant's mutual and equivalent promise to resolve any disputes arising out of the

agreement in arbitration suffices as consideration for Plaintiff's promise to do the same.  The Court

concludes that the Covenants Agreement, and specifically, the arbitration clause, is a binding and

enforceable contract supported by consideration.

      B.      *The Federal Arbitration Act Governs this Contract*

          1.     <u>Georgia Law is Preempted by the Federal Arbitration Act</u>

Plaintiff attempts to avoid arbitration by arguing that, even if the Covenants Agreement is a binding contract, according to the Governing Law provision, Georgia law governs all disputes relating to the contract. Pl.'s Opp'n at 8. Plaintiff notes Georgia's tendency to only enforce an arbitration contract if it "limits its applicability to questions such as the amount of loss or damage and requires arbitration as a condition precedent to a right of action upon the contract itself." *Id.* (citing *Freeman v. C.W. Redfern Enter., Inc.*, 182 Ga. App. 205, 206, 355 S.Ed.2d 79 (1987) (quoting *Savannah Transit Auth. v. Ledford*, 179 Ga. App. 238, 238, 345 S.Ed.2d 915 (1986))).[3] The arbitration clause in the Covenants Agreement is broad in that it applies to all aspects of disputes arising out of the employment relationship between Plaintiff and Defendant. *See* Covenants Agreement at 7. According to Plaintiff, the arbitration clause is not "narrowly limited as required by Georgia law. . . . [such that] the arbitration clause of the contract should not be enforced and arbitration should not be compelled." Pl.'s Opp'n at 9.

The FAA states:

> If any suit or proceeding be brought in any of the courts of the United States upon
> any issue referable to arbitration under an agreement in writing for such arbitration,
> the court in which such suit is pending, upon being satisfied that the issue involved in

---

[3] Notwithstanding the fact that Georgia law is preempted by the FAA, the Court notes that in 1988, one year after *Freeman*, which Plaintiff cites to illustrate Georgia's policy on arbitration, Georgia's "General Assembly extensively revised the statutory provisions governing arbitration . . . . The stated intention . . . was to extend the enforcement of arbitration construction contracts [only, as had formerly been the case] to all contracts in which the parties have agreed to arbitration in writing." *Weyant v. MacIntyre*, 211 Ga. App. 281, 282, 438 S.Ed.2d 640 (1993) (internal citations omitted). As such, even if Georgia law were not preempted by the FAA, *Freeman* and other pre-1988 Georgia cases would not govern the arbitrability of this action.

such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . .

9 U.S.C. § 3.  The FAA was enacted "to overcome courts' refusals to enforce agreements to arbitrate" and to "place such agreements upon the same footing as other contracts." *Allied-Bruce Terminix Co. v. Dobson*, 513 U.S. 265, 270, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995) (internal citations and quotation marks omitted).

In *Southland Corp. v. Keating*, the Supreme Court concluded that "[i]n creating a substantive rule applicable in state as well as federal courts, Congress intended to foreclose state legislative attempts to undercut the enforceability of arbitration agreements." 465 U.S. 1, 16, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984).  As such, any conflicting state law would violate the Supremacy Clause and be preempted by the FAA. *Id.* at 15-16, 104 S.Ct. 852; *see also Allied-Bruce*, 513 U.S. at 272, 115 S.Ct. 834 (declining to reconsider its decision in *Southland* that the FAA preempts inconsistent state arbitration laws).

The Georgia Court of Appeals has addressed the impact of *Southland* when the party opposing enforcement of the arbitration clause sought to have the Georgia Arbitration Act govern the dispute.  The court stated, "we must conclude that 'the state law and policy . . . must yield to the paramount federal law.'" *Primercia Fin. Servs., Inc. v. Wise*, 217 Ga. App. 36, 41, 456 S.Ed.2d 631 (1995) (quoting *CCC Builders v. City Council of Augusta*, 237 Ga. 589, 592, 229 S.Ed.2d 349 (1976)).  While the Georgia Arbitration Act would have rendered the arbitration clause in *Primercia* unenforceable, the FAA preempted Georgia's law and the Court of Appeals affirmed the district court's enforcement of the arbitration clause. *Id.*

Plaintiff's argument in the instant case fails for the same reasons.  While Plaintiff argues that the arbitration agreement is governed according to Georgia's tendency only to enforce arbitration agreements when they are limited to narrow issues such as damages, this tendency conflicts with the FAA, which places no such limitations on the enforceability of arbitration agreements.  Georgia does not enforce broad arbitration agreements because "the strong could oppress the weak, . . . nullify[ing] the law . . . secur[ing] the enforcement of contracts [that are] usurious, illegal, immoral, or contrary to public policy, *Freeman*, 182 Ga. App. at 81, 355 S.Ed.2d 79 (quoting *Parsons v. Ambos*, 121 Ga. 98, 48 S.E. 696 (1904)).  However, to hold that Georgia's policy preference to limit enforcement of arbitration agreements would lead to precisely the type of forum shopping the Supreme Court concluded Congress would not have intended when it passed the FAA, particularly given the original purpose of its passage was to combat the reluctance of courts to enforce arbitration agreements. *Southland*, 465 U.S. at 15, 104 S.Ct. 852.

The FAA "is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural polices to the contrary.  The effect of the section is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the act."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. at 927, 74 L.Ed.2d 765 (1983).  Accordingly, any preference Georgia may have regarding the enforcement of arbitration agreements is preempted by the FAA.  When the FAA and governing state law conflict, the FAA, with its strong preference for the enforcement of arbitration agreements, governs.

        2.       Plaintiff and Defendant's Arbitration Agreement is within the Scope of the Federal Arbitration Act

In order for the FAA to preempt Georgia law in governing the instant arbitration agreement,

the agreement itself must be within the scope of the FAA.  The FAA states, "A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2. The Supreme Court has clarified the meaning of the phrase "involving commerce," concluding that "the word 'involving,' like 'affecting,' signals an intent to exercise Congress' commerce power to the full."  *Allied-Bruce*, 513 U.S. at 277, 115 S.Ct. 834.  Accordingly, the FAA will govern any contract that involves "commerce" to the extent constitutionally permitted by the Commerce Clause. Additionally, the Supreme Court has stated that the FAA may govern contracts in the employment context.  *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 123, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001).

It is clear that Plaintiff and Defendant's employment agreement is governed by the FAA.  As Defendant argues, "Plaintiff's employment would have required that he negotiate and oversee financial transactions related to securities sales arising in various states and direct funds flowing across state lines."  Def.'s Mot. to Compel at 6.  Plaintiff does not rebut this characterization of his employment, nor does he dispute Defendant's assertion that his employment would have involved interstate commerce.  *See generally* Pl.'s Opp'n.  Accordingly, the Court concludes that Plaintiff and Defendant's employment contract involved interstate commerce within the meaning of the FAA and therefore, the FAA preempts Georgia law governing arbitration agreements.  *See Columbus Anesthesia Group, P.C. v. Kutzner*, 218 Ga. App. 51, 52, 459 S.Ed.2d 422 (1995) (acknowledging "[i]f the agreement involves interstate commerce, the federal law applies to enforce its arbitration provision") (citing *Southland*, 465 U.S. 1, 104 S.Ct. 852).

"By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985) (emphasis in original) (citing 9 U.S.C. §§ 3, 4). Plaintiff and Defendant's arbitration agreement is clearly within the statute:  there is a written arbitration provision in the Covenants Agreement, which the court has already determined is a binding contract supported by consideration, and that contract involves interstate commerce. Accordingly, the Court must direct the parties to arbitration.

C.     *Defendant Has Not Waived its Right to Enforce the Arbitration Clause*

Plaintiff's final argument against compelling arbitration is that, even if the arbitration agreement is part of a binding contract and governed by the FAA, Defendant has waived its right to enforce that provision by actively litigating the case since its inception.  Pl.'s Opp'n at 7.  "The right to arbitration, like any other contract right, can be waived."  *Cornell & Co. v. Barber & Ross Co.*, 360 F.2d 512, 513 (D.C. Cir. 1966).  "[T]he question of whether there has been waiver in the arbitration agreement context should be analyzed in much the same way as in any other contractual context."  *Nat'l Found. for Cancer Research v. A.G. Edwards & Sons, Inc.*, 821 F.2d 772, 774 (D.C. Cir.).

"A party waives his right to arbitrate when he actively participates in a lawsuit or takes other action inconsistent with that right."  *Cornell*, 360 F.2d at 513; *see also McCormick-Morgan, Inc. v. Whitehead Elec. Co.*, 179 Ga. App. 10, 12, 345 S.Ed.2d 53 (1986) ("An agreement to arbitrate is waived by any action of a party which is inconsistent with the right of arbitration.").  Additionally, "[t]he Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the

14

construction of the contract language itself or an allegation of waiver, delay, or a like defense to

arbitrability." *Cone*, 460 U.S. at 24-25, 103 S.Ct. 927.  As such, "questions of arbitrability must be

addressed with a healthy regard for the federal policy favoring arbitration."  *Id.*

    Plaintiff avers that Defendant waived its right to enforce the arbitration because it "waited

over one month to seek to enforce the arbitration clause . . . . [T]he parties have participated in two

full-blown evidentiary hearings, under oath; extensive discovery including:  serving document

requests on plaintiff to which Plaintiff responded; serving a subpoena upon, and noticing the

Deposition of [Plaintiff's former neighbor]; noticing the Deposition of [Plaintiff]; serving a

subpoena upon, and noticing the Deposition of [Plaintiff's former employer]; and filing an Answer."

Pl.'s Opp'n at 7.  Plaintiff also notes that Defendant's initial motion to compel arbitration, filed on

May 8, 2006 in Superior Court prior to the action's removal to this Court, was denied, and that

Defendant subsequently "continued to subpoena witnesses for depositions after this date.  As such,

the effective date that Defendants attempted to invoke the arbitration clause is May 26, 2006," the

date Defendant's current motion was filed with this Court.  *Id.* at 7 n.8.

    As Defendant correctly notes, the "full-blown evidentiary hearings" were regarding

Plaintiff's motion seeking the Superior Court to enjoin Defendant from filling Plaintiff's position

while Plaintiff continued to seek reinstatement of his employment contract.  Def.'s Reply at 11-12,

Ex. 1 (4/21/06 Hr'g Tr.) at 85:19-86:14.  In fact, Plaintiff's Complaint and request for TRO were

filed on April 21, 2006, and the first hearing regarding the TRO was held that same day.  Def.'s

Reply at 11-12.  The second evidentiary hearing was held May 8, 2006, when the Superior Court

asked to hear further argument on Plaintiff's request for TRO.  *Id.*, Ex. 2 (5/8/06 Hr'g Tr.); 4/24/06

Order.  Defendant states that each notice of deposition "was in defense of those very same

emergency hearings. [Defendant] cancelled all three depositions when it became apparent the

depositions could not take place prior to the May 8 hearing on the TRO." Def.'s Reply at 13.

Defendant argues that this Court should follow *Popovich v. McDonald's Corp.*, where the court concluded the defendant "did not waive its right to arbitrate by opposing [the plaintiff's] motion for a preliminary injunction." 189 F. Supp. 2d 772, 775 (N.D. Ill. 2002). There, the plaintiff filed his motion for preliminary injunction one week after filing suit, the court denied the motion two weeks later, and a month after that denial, the defendant filed its motion to compel arbitration. *Id.* at 774. The court acknowledged that the defendant could have sought enforcement of the arbitration clause during the preliminary injunction proceedings, but "a demand for arbitration would not have precluded the Court from considering the preliminary injunction motion. Even when a claim filed in court is subject to arbitration, a court retains the authority to enter a preliminary injunction to preserve the *status quo ante* and prevent irreparable harm pending a decision by the arbitration panel. . . . Thus, [defendant's] opposition to [plaintiff's] motion was in no way inconsistent with the right to arbitrate and does not constitute a waiver." *Id.* at 775-76 (internal citations omitted).

*Popovich* is consistent with the widely held view that waiving one's right to seek arbitration via acting inconsistently with that right occurs through actively litigating or pursuing discovery of the substantive aspects of a case. *See, e.g.*, *A.G. Edwards*, 821 F.2d at 776 (finding that the defendant "chose to have the substance of [plaintiff's] arbitrable claims decided by a court. This election was wholly inconsistent with an intent to arbitrate and constituted an abandonment of a right to seek arbitration."). The court in *A.G. Edwards* explained that to let the defendant arbitrate substantive issues that had already been litigated before the court would violate the "policy that arbitration may not be used as a strategy to manipulate the legal process." *Id.* There, the party seeking arbitration had engaged in discovery, noticing and taking depositions, and requesting and

16

receiving documents. *Id.* at 775.  Similarly, in *Burnham v. Cooney*, the Georgia Court of Appeals

affirmed the trial court's finding that the defendant had waived his right to arbitration when he "pled

to the merits of the case, responded to discovery, and obtained a transfer of the case . . . ." 265 Ga.

App. 246, 247, 593 S.Ed.2d 701 (2004).  Unlike here, in *A.G. Edwards* and *Burnham*, those

depositions were directed at the substantive issues of each case.  *Id.*

      In the instant case, no depositions were actually taken, and those noticed were directly

related to the resolution of Plaintiff's request for a TRO.  Def.'s Reply at 13.  The fact that those

depositions were only noticed for the purposes of the TRO hearing and not to begin litigating the

merits of the case is substantiated by Defendant cancelling those depositions "when it became

apparent the depositions could not take place prior to the May 8 hearing on the TRO."[4]  Def.'s

Reply at 13.  Regarding the documents Defendant requested and received from Plaintiff, the timing

of the proceedings suggests those documents were exchanged in anticipation of the TRO hearing.

Requesting documents in an attempt to defend itself from a TRO should not be viewed as an

abdication of Defendant's right to seek enforcement of the arbitration agreement.  Defendant stated

its intention to enforce the arbitration agreement less than one month after receiving Plaintiff's

Complaint, first in its May 8, 2006 Motion to Compel Arbitration and Stay Proceedings, and then

again in its May 11, 2006 Answer.  When Defendant first stated that intention, the hearings

---

    [4] Plaintiff alleges that "Defendant continued to subpoena witnesses for deposition after" its initial motion to compel arbitration was filed and denied.  Pl.'s Opp'n at 7 n.8.  Accordingly, Plaintiff contends that the Court should conclude "the effective date that Defendants attempted to invoke the arbitration clause is May 26, 2006," the day Defendant filed its instant Motion to Compel, because up until that date, Defendant was acting inconsistently with its arbitrate.  *Id.* However, the Superior Court's docket contains no notices of deposition after Defendant's May 8, 2006 motion seeking enforcement of the arbitration agreement, and the only notices of deposition were filed on April 26, 2006.  As such, the Court cannot agree with Plaintiff's statement regarding the "effective date" on which Defendant sought to enforce the arbitration agreement.

regarding Plaintiff's request for TRO were still ongoing.

Additionally, when a party seeking arbitration has stated that intention in its answer, courts generally hold they have not acted inconsistently with their right to arbitrate the dispute. *See, e.g.*, *Freeman*, 182 Ga. App. at 206, 355 S.Ed.2d 79 ("[Defendant] raised arbitration as a defense when it filed its answer . . . . [T]here is no evidence that it took any action inconsistent with its assertion that arbitration was the proper disposition of the controversy."); *Weyant*, 211 Ga. App. at 283-84, 438 S.Ed.2d 640 (affirming the trial court's decision to compel arbitration where the defendant "asserted the arbitration clause in his answer and promptly moved to compel arbitration . . . .").

Plaintiff argues that the "effective date that Defendants attempted to invoke the arbitration clause is May 26, 2006," the date Defendant filed its Motion to Compel with this Court because, prior to removal, Superior Court denied Defendant's May 8, 2006 motion seeking enforcement of the arbitration clause pursuant to the Superior Court Rules of Civil Procedure, Rule 12.  Pl.'s Opp'n at 7 n.8.  Rule 12, similar to the corresponding rule in the Federal Rules of Civil Procedure, is a procedural rule governing the timing of filing certain defenses.  D.C. Sup. Ct. R. 12(b).  The Superior Court's denial of Defendant's motion was procedural and did not reflect a judgment on the merits of Defendant's right to seek arbitration.  In fact, the Court notes that the *sua sponte* denial occurred before Plaintiff even filed an opposition to Defendant's motion.  Additionally, prior to the May 26, 2006 filing of its Motion to Compel, Defendant asserted its right to arbitration on May 11, 2006, in its Answer listing arbitration as one of its defenses.  Answer at 7-8.

Because the standard governing waiver is that the party seeking to enforce the arbitration clause has acted inconsistently with an intention to arbitrate, the Court must conclude that Defendant has not waived its rights, particularly given the Supreme Court's urging that "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration."

*Cone*, 460 U.S. at 24-25, 103 S.Ct. 927.  Defendant's initial procedural error in filing its arbitration

defense prior to filing its Answer does not detract from Defendant's express intention to assert its

right to arbitration less than one month after Plaintiff served its Complaint.

Taken together, the history of this litigation results in the necessary conclusion that Defendant has

not waived its right to enforce the arbitration agreement.  Defendant has acted consistently with its

intention to pursue enforcement of the clause.  Defendant initially responded to Plaintiff's

emergency TRO motion, has not engaged in litigation as to the merits of this case, and stated its

intention to pursue arbitration less than one month into this action in Defendant's Answer, expressly

noting that in answering Plaintiff's Complaint, Defendant was not waiving its right to arbitration.

Answer at 1, 7-8.  Accordingly, Plaintiff's argument that Defendant waived its right to enforce the

arbitration agreement fails, and this Court will compel arbitration.

> D.    *Dismissal is Appropriate Because all of the Issues Will Be Arbitrated*

The FAA states that, when a district court deems arbitration is appropriate, the court shall

"stay the trial of the action until such arbitration has been had in accordance with the terms of the

agreement . . . ."  9 U.S.C. § 3.  However, when "all of plaintiff's claims must be submitted to

arbitration" dismissal is appropriate.  *Nelson v. Insignia/ESG, Inc.*, 215 F. Supp. 2d 143, 158

(D.D.C. 2002); *see also Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir.

1992) ("[t]he weight of the authority clearly supports dismissals of the case when all of the issues

raised in the district court must be submitted to arbitration").

Plaintiff and Defendant's arbitration agreement states:

> The Parties agree that any and all disputes, disagreements, claims, or other conflicts
> regarding, relating to, or arising out of this Agreement, the Parties' employment
> relationship, any termination thereof, any employment-related act or practice by
> Employer or its employees, representatives, or agents, any breach of this Agreement,
> or any alleged breach of this Agreement, shall be subject and submitted to binding

arbitration.

Covenants Agreement at 7.  Plaintiff's Complaint alleges breach of contract and detrimental reliance, seeking relief either through Defendant re-hiring Plaintiff or, in the alternative, damages being awarded to Plaintiff to compensate for his detrimental reliance.  Compl. at 8-9, 11.  The thrust of Plaintiff's action is that Defendant breached a binding employment contract by terminating Plaintiff's employment.  *Id*.  Defendant, on the other hand, avers that the employment agreement was expressly contingent upon background checks, such that Defendant was not in breach when it decided it did not want to hire Plaintiff upon discoveries Defendant made about Plaintiff's past, or, in the alternative, that Defendant did not breach the contract because Plaintiff's employment was at-will.  Answer at 5-7.

Given the breadth of the arbitration agreement and the fact that Plaintiff and Defendant's dispute falls squarely within the language of the agreement, referring to termination and breach, it is apparent that all of the issues in this action are subject to arbitration.  As such, the appropriate remedy is dismissal of Plaintiff's action.

## III.  CONCLUSION

For the reasons set forth above in this Memorandum Opinion, the Court shall grant Defendant's motion to enforce the arbitration agreement and dismiss this action without prejudice.  An appropriate Order accompanies this Memorandum Opinion.


Date:   July 31, 2006


                                    /s/
                                    COLLEEN KOLLAR-KOTELLY
                                    United States District Judge

20