# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ADOL OWEN-WILLIAMS,

    Plaintiff,

     v.

BB&T INVESTMENT SERVICES, INC.,

    Defendant.

Civil Action No. 06-948 (CKK)

## MEMORANDUM OPINION
(May 24, 2010)

By Memorandum Opinion and Order dated July 31, 2006, this Court granted Defendant BB&T Investment Services, Inc.'s ("Defendant" or "BB&T") request to compel arbitration of Plaintiff's breach of contract claims. The parties subsequently proceeded to arbitration, and a final arbitration award was issued in Defendant's favor. Plaintiff, proceeding *pro se*, now moves the Court to vacate the unfavorable arbitration decision or, alternatively, to reconsider the Court's July 31, 2006 Order compelling arbitration in the first instance. Defendant opposes Plaintiff's motion and cross-moves for an order confirming the arbitration award. Upon consideration of the parties' cross-motions, responsive briefing and attachments thereto, the relevant case law and statutory authority, and the record of this case as a whole, the Court shall DENY Plaintiff's [11] Motion to Vacate Arbitration Ruling and Motion for Reconsideration to Compel Arbitration and shall GRANT Defendant's [13] Application to Confirm Arbitration Award, for the reasons set forth below.

# I. BACKGROUND

The Court assumes familiarity with the factual background of this case, which is set forth in detail in this Court's July 31, 2006 Memorandum Opinion, *Owen-Williams v. BB&T Inv. Servs., Inc.*, Civ. Act. No. 06-948, 2006 U.S. Dist. LEXIS 52392 (D.D.C. July 31, 2006), and therefore addresses herein only such facts as are necessary for resolution of the motions currently before the Court.

### A.    *Plaintiff's Initial Breach of Contract Claims*

This lawsuit stems from BB&T's decision to rescind its offer of employment to Plaintiff. In early 2006, Plaintiff interviewed for and was ultimately offered a position with the Defendant. *Id.* at *1.[1]  The offer of employment was first conveyed orally via telephone on March 22, 2006, by one of Defendant's recruiters, T.J. Roccograndi. *Id.* at *3.  The following day, March 23, 2006, Mr. Roccograndi sent a letter to Plaintiff regarding the job offer ("Employment Contract"), along with an attached Protective Covenants Agreement ("Covenants Agreement").[2]  *Id.*  The Employment Contract stated that "[a]ll employment offers are contingent upon standard background checks . . . ," and informed Plaintiff that his employment would begin April 10, 2006.  *Id.* at *4; *see also* Employment Contract.  The Covenants Agreement contained the following arbitration clause:

---

[1] For convenience, the Court draws the background facts of this case largely from its description of the relevant facts as provided in its July 31, 2006 Memorandum Opinion. *See Owen-Williams v. BB&T Inv. Servs., Inc.*, Civ. Act. No. 06-948, 2006 U.S. Dist. LEXIS 52392 (D.D.C. July 31, 2006).

[2] The Employment Contract and Covenants Agreement are attached as Exhibit 4 to the Notice of Removal, Docket No. [1].

> The parties agree that any and all disputes, disagreements, claims, or other conflicts regarding, relating to, or arising out of this Agreement, the Parties' employment relationship, any termination thereof, any employment-related act or practice by Employer or its employees, representatives, or agents, any breach of this Agreement, or any alleged breach of this Agreement, shall be subject and submitted to arbitration.

*Owen-Williams*, 2006 U.S. Dist. LEXIS 52392, *4; *see also* Covenants Agreement at 7.

Plaintiff signed both documents and returned them on March 24, 2006, the day he received them. *Owen-Williams*, 2006 U.S. Dist. LEXIS 52392, *4.

Shortly thereafter, BB&T decided to rescind its employment offer based on information disclosed during Plaintiff's background check. *Id.* at *6. Mr. Roccograndi communicated BB&T's decision to Plaintiff on April 6, 2006 (i.e., prior to the date Plaintiff and Defendant had agreed Plaintiff would begin his employment). *Id.* On April 11, 2006, Mr. Roccograndi again spoke with Plaintiff and confirmed that the Compliance Department was not willing to approve Plaintiff for hiring based upon information disclosed during the background investigation. *Id.*[3]

After unsuccessfully pursuing the matter further with Mr. Roccograndi, Plaintiff retained counsel[4] and filed suit in Superior Court of the District of Columbia alleging that Defendant

---

[3] Plaintiff, in his opening Motion and Reply briefing, disputes the accuracy of these dates, asserting that he was informed his first day of work would be on April 17, 2006 (rather than April 10, 2006), and that he was notified of BB&T's decision to rescind his offer of employment on April 13, 2006 (rather than April 6, 2006). *See* Pl.'s Mot. to Vacate at p. 8, ¶¶ 35-36. Plaintiff, however, offers no evidentiary support for these assertions nor did he previously indicate to the Court that the dates set forth in its July 31, 2006 Memorandum Opinion were in error. *See generally id.* Regardless, this dispute is immaterial to the issues now before the Court. In essence, Plaintiff asserts that the dates listed above are each incorrect by one week; he does not contest, however, that his offer of employment was rescinded prior to his official start date with Defendant. Accordingly, the alleged difference of seven days has no impact on the outcome of the Court's decisions herein.

[4] Although Plaintiff's current motion is filed *pro se*, the Court notes that Plaintiff was previously represented by counsel in this lawsuit as well as in the subsequent arbitration.

terminated him in violation of his employment contract. *Id.* On April 21, 2006, the day the

Complaint was filed, Plaintiff also filed an emergency motion for a temporary restraining order

("TRO") to prevent Defendant from filling Plaintiff's position at BB&T. *Id.* That same day, the

first of two evidentiary hearings on Plaintiff's requested TRO was held. *Id.* at *7. Superior

Court Judge Robert S. Tignor denied Plaintiff's motion from the bench. *Id.* Three days later,

however, Judge Tignor vacated his denial and issued an order permitting the parties to offer

further evidence at an additional hearing. *Id.* Judge Tignor ultimately denied Plaintiff's

requested temporary restraining in a final order on May 8, 2006. *Id.* at *8, n. 2.

Shortly thereafter, on May 19, 2006, the action was removed by Defendant to this Court.

*See* Notice of Removal. One week later, Defendant filed a Motion to Compel Arbitration, *see*

Docket No. [4], which the Court subsequently granted by Memorandum Opinion and Order dated

July 31, 2006. *See Owen-Williams v. BB&T Inv. Servs., Inc.*, Civ. Act. No. 06-948, 2006 U.S.

Dist. LEXIS 52392 (D.D.C. July 31, 2006). Specifically, the Court found that the arbitration

agreement between the parties was a binding contract supported by consideration, that the

Federal Arbitration Act ("FAA") preempts Georgia law and governs the agreement, and that

Defendant had not waived its right to enforce the arbitration agreement. *Id.* at *9. Accordingly,

the Court concluded that, "[g]iven the breadth of the arbitration agreement and the fact that

Plaintiff and Defendant's dispute falls squarely within the language of the agreement, referring to

termination and breach, it is apparent that all of the issues in this action are subject to

arbitration." *Id.* at *35. The Court therefore granted Defendant's Motion to Compel Arbitration

and dismissed the action without prejudice. *Id.* In so doing, the Court specifically held that

dismissal, rather than a stay, was appropriate. *Id.* at *34-35. Plaintiff did not appeal the Court's

4

July 31, 2006 Order nor did he file a motion for reconsideration of the Court's decision.

      B.    *Arbitration*

On December 20, 2007, Plaintiff filed a Statement of Claim for arbitration with the

Financial Industry Regulatory Authority ("FINRA"), based upon the same allegations asserted in

his initial lawsuit. *See* Def.'s Opp'n, Docket No. [12], Ex. 4 (hereinafter, "Statement of

Claim").[5]  A panel of three arbitrators was appointed, and an initial pre-hearing telephone

conference was held on April 30, 2008.  *See id.*, Ex. 6 ("Initial Pre-Hearing Conference

Scheduling Order") at p. 5.  At that time, an Initial Pre-Hearing Conference Scheduling Order

was entered. *See id.* at pp. 5-9.  Discovery was set to close on July 3, 2008, and the hearing

session was scheduled to begin on Wednesday, July 23, 2008, and to continue through and

including Friday, July 25, 2008, as necessary, at the hearing site in Washington, D.C.  *Id.* at p. 6.

Both parties were represented by counsel throughout the arbitration process. *See id.* at p. 5.  No

objections were made by either side to the composition of the arbitration panel at the pre-hearing

conference. *See id.* at pp. 5-6 (indicating that the parties accepted the panel's composition).

As is relevant to Plaintiff's pending motion, the Court notes that on July 2, 2008, prior to

---

[5] Plaintiff, in his reply briefing, urges the Court to exclude from consideration any of the exhibits attached to Defendant's Opposition to Plaintiff's Motion to Vacate.  Pl.'s Reply at 4. According to Plaintiff, he "is unable to rebut any of the alleged exhibits that the Defense Counsel heavily refers to in their Opposition Memorandum due to the fact that the Plaintiff was either never served with said exhibits or the Defense Counsel deliberately buried said unmarked, ungrouped, commingled exhibits in the document flood pile that the Defense delivered to Plaintiff." *Id.*  The Court finds that this objection is without merit.  Defendant has submitted a certificate of service certifying that service of Defendant's Opposition and exhibits was made on Plaintiff.  *See* Def.'s Opp'n, Ex. 17 (Certificate of Service).  Moreover, Plaintiff admits receiving the opposition itself as well as a large number of other documents along with it, and while the volume of exhibits is not insubstantial, it is by no means inordinate.  Accordingly, the Court finds that Plaintiff has failed to demonstrate that Defendant's exhibits must be excluded from consideration.

the start of the arbitration hearing, Defendant filed a motion with the arbitration panel requesting a witness scheduling accommodation. *See* Def.'s Opp'n, Ex. 7 (Motion for Witness Scheduling Accommodation) (hereinafter, "Scheduling Mot."). Defendant asked the panel to permit its witness, Mr. Roccograndi, to testify on Friday, July 25, 2008, the last day of the hearing. *See id.* Defendant represented that Mr. Roccograndi, who was no longer employed with BB&T, was at that time enrolled as a summer student at West Virginia University and was scheduled to be in class and taking final exams the week of the arbitration hearing. *Id.*; *see also* Def.'s Opp'n, Ex. 16 (Declaration of Thomas J. Roccograndi) (hereinafter, "Roccograndi Decl.") ¶¶ 5-6. Defendant therefore requested that, in the event Mr. Roccograndi's live testimony was needed, he be permitted to testify on Friday in order to accommodate his class schedule. *See* Scheduling Mot. On July 10, 2008, after considering all submissions in connection with the motion, the panel granted Defendant's motion and ordered that Mr. Roccograndi would be permitted to testify on Friday, July 25, 2008, in the event Defendant decided to call him as a witness. *See* Def.'s Opp'n, Ex. 8 (Panel Order on Defendant's Scheduling Motion).

The arbitration proceeded as scheduled. On the first day of the hearing, the parties — including Plaintiff's then-counsel — confirmed that they accepted the panel's composition. *See* Def.'s Opp'n, Ex 9 (Hearing Transcript - Vol. 1) (hereinafter, "Hrg Tr. Vol. 1") at 4:3-8 ("Chairman []: At this point in time, given the disclosures have been made, the introductions have been made, I would ask each of the parties to confirm that they accept the panel's composition?" [Plaintiff's Counsel]: We accept the panel.").[6] After introductory remarks,

---

[6] Defendant has attached at Exhibits 9 and 10 to its Opposition copies of the transcript for the first two days of the arbitration hearing. Defendant notes, however, that the transcripts are incomplete; although the first two days were recorded by a tape recorder, certain portions of the

Plaintiff's counsel provided an opening statement, *see id.* at 9:21-11:21, and then proceeded to present Plaintiff's case, *see id.* at 26:6. Plaintiff's counsel completed his presentation by mid-afternoon that day, and Defendant then began to present its case. *See id.* at 140:4.

At the close of the day, the panel inquired as to the schedule for Defendant's remaining presentation. *See id.* at 197:2-198:1; *see also* Urban Decl. ¶ 4. Defendant's counsel stated that they had one or two witnesses left, including Mr. Roccograndi, but indicated that no decision had yet been made as to whether Defendant would rely upon a transcript of Mr. Roccograndi's prior testimony before the D.C. Superior Court or would need to call him live on Friday, July 25, 2008. *See* Hrg Tr. Vol. 1 at 197:2-198:1; *see also* Urban Decl. ¶ 4. In addition, Plaintiff's counsel advised the panel for the first time that he had a potential conflict on the morning of Friday, July 25, 2008. Urban Decl. ¶ 5. Specifically, Plaintiff's counsel informed the panel that he had a divorce and custody hearing in Maryland scheduled for that morning and that he had no control over the timing nor could he secure anyone to cover the hearing for him; accordingly, he stated that he would not be available for the arbitration until the afternoon on Friday, July 25, 2008. *Id.* In response, the panel chairman advised the parties that the hearing would proceed the next day as scheduled and that the panel would reserve its decision as to the remaining schedule. *See* Hrg. Tr. Vol. 1 197:16-23 ("Chairman Urban: I'm prepared to say lets be here at 9:00 tomorrow,

---

recording are inaudible; in addition, Defendant indicates that the final day of the hearing was not recorded. *See* Def.'s Opp'n at 3, n. 2. Defendant has therefore supplemented the hearing transcript with the sworn declaration of Theodore W. Urban, who served as Chairman of the FINRA arbitration panel that heard Plaintiff's claims, *see* Def.'s Opp'n, Ex. 11 (Declaration of Theodore W. Urban) (hereinafter, "Urban Decl."), and the sworn declaration of Mr. Roccograndi, *see* Roccograndi Decl. The Court emphasizes that Plaintiff has ***not*** raised any issues concerning the quality and completeness of the arbitration hearing record, and there is no indication that the absence of a complete hearing transcript has prejudiced him in any way.

present [Defendant's] additional witnesses and if we do need to have Mr. Roccograndi we will come back on Friday for Mr. Roccograndi and closing arguments. If you [Defendant] are to make a decision that you don't need Mr. Roccograndi, and you're just prepared to use his transcript testimony then hopefully (inaudible) and closing tomorrow."). Both counsel for Plaintiff and counsel for Defendant agreed with this approach. *Id.* at 197:23-198:2 ("Chairman Urban . . . Is that fair enough for everybody? [Defendant's counsel]: Yes. [Plaintiff's counsel]: Yes."). The first day of the hearing was then adjourned. *Id.* at 198:2-3.

The hearing resumed the next morning, Thursday, July 24, 2008, with the presentation of the Defendant's case. *See* Def.'s Opp'n, Ex. 11 (Hearing Transcript - Vol. 2) (hereinafter, "Hrg Tr. Vol. 2") at 2:3-9. During the course of the day, counsel for Defendant advised the panel that he planned to call Mr. Roccograndi live on Friday, July 25, 2008. Urban Decl. ¶ 7. Plaintiff's counsel again confirmed that he would be unavailable until the afternoon on Friday, July 25, 2008, as he anticipated that the hearing in Maryland would last until approximately noon. *See id.* ¶ 7; *see also* Hrg. Tr. Vol. 2 at 2:14-25. In addition, one of the panel members advised the panel chairman that she was not able to stay late on Friday afternoon. Urban Decl. ¶ 7. Accordingly, the panel members discussed whether to proceed on Friday afternoon, once Plaintiff's counsel was available, or to continue the hearing to another day. *Id.* Because the parties would need time to present their closing arguments in addition to the time needed to present Defendant's remaining witnesses, the panel concluded that the hearing would not likely be completed in one afternoon. *Id.* The panel therefore decided that the hearing should be continued to another time when all parties were available for a full day hearing. *Id.* "In making this determination, the panel specifically considered the likelihood that [Plaintiff's counsel] would not arrive at the

arbitration hearing in downtown Washington, D.C. until 1:00 p.m. or later; the potential length of Mr. Roccograndi's testimony; and the desirability of providing both parties ample time to present their closing arguments without interruption.  For these reasons, the panel continued the hearing."  *Id.*  As Chairman Urban avers, "BB&T did not request that the hearing be continued from July 25, 2008, and, to the best of my knowledge, was ready, willing and able to proceed on July 25, 2008 to complete the Arbitration, if [Plaintiff's counsel] had been available."  *Id.* ¶ 8. Furthermore, as set forth in Mr. Roccograndi's Declaration, he had made arrangements to travel to Washington, D.C. on Friday, July 25, 2008, for the arbitration hearing and was prepared to testify in person on that date, until he was informed by Defendant's counsel that the hearing had been rescheduled.  Roccograndi Decl. ¶¶ 7-10.  The final day of the hearing was ultimately rescheduled by FINRA to September 9, 2008.  *Id.*

Thereafter, on August 13, 2008, (i.e., during the intervening period of time prior to the rescheduled hearing date), Defendant filed a Motion for Non-Party Subpoena with FINRA. *See* Def.'s Opp'n, Ex. 12 (Motion for Non-Party Subpeona) (hereinafter, "Mot. for Subpoena"). As set forth therein, Defendant requested the authority to subpoena a representative of the Registrar's office at the University of Maryland in order to address evidence offered by Plaintiff for the first time during the hearing that he was a graduate of the University of Maryland, College Park.  *See id.*  Defendant indicated that the Registrar representative would testify that the University of Maryland, University College had no records of Plaintiff's attendance at or graduation from the institution.  *See id.* at 1-2.  The panel granted Defendant's motion and issued a Subpoena Duces Tecum for the Assistant Registrar to appear at the September 9, 2008 hearing. *See* Def.'s Opp'n, Ex. 13 (Subpoena Duces Tecum issued on August 26, 2008).

The final day of the hearing commenced as scheduled on September 9, 2008. *See* Urban Decl. ¶ 2. Although no transcript for that day is available, *see supra* pp. 6-7, n. 6, the present record indicates that Defendant offered into evidence the videotaped deposition testimony of Mr. Roccograndi as well as the live testimony of the University of Maryland Assistant Registrar. *See* Roccograndi Decl. ¶ 12; *see also* Def.'s Opp'n, Ex. 13 (Subpoena Duces Tecum issued on August 26, 2008). The arbitration hearing closed that day, *see* Urban Decl. ¶ 2, and the panel issued its decision on September 22, 2008, *id.*; *see also* Def.'s Opp'n, Ex. 14 (Award FINRA Dispute Resolution) (hereinafter, "Final Arbitration Award").

As set forth in the Final Arbitration Award, judgment was awarded in Defendant's favor. *See id.* Specifically, the panel concluded that,:

> [a]fter considering the pleadings, the testimony and evidence presented at the hearing, the Panel has decided in full and final resolution of the issues submitted for determination as follows:
>
> Respondent is not liable and Claimant's claims are denied, with prejudice.
>
> Any and all claims for relief not specifically addressed herein, including Claimant's request for punitive damages and the parties' requests for attorneys' fees are denied.

*Id.* at 2. No further written explanation was provided. *See generally id.* The panel assessed hearing fees in the amount of $7,200.00 to Defendant. *See id.* at 3.

## C. The Parties' Pending Cross-Motions

As indicated above, the panel issued its final decision on September 22, 2008. Shortly thereafter, Plaintiff, proceeding *pro se*, filed the now-pending Motion to Vacate Arbitration Ruling and Motion for Reconsideration to Compel Arbitration. *See* Docket No. [11] (hereinafter, "Pl.'s Mot. to Vacate"). Defendant filed an Opposition to Plaintiff's Motion, *see* Docket No.

[12] (hereinafter, "Def.'s Opp'n"), as well as a Cross-Motion to Confirm the Arbitration Award, *see* Docket No. [13] (hereinafter, "Def.'s Cross-Mot. to Confirm"). Plaintiff subsequently filed an Opposition to Defendant's Cross-Motion to Confirm, *see* Docket No. [14] (hereinafter, "Pl.'s Opp'n"), as well as a Reply in support of his Motion to Vacate, *see* Docket No. [16] (hereinafter, "Pl.'s Reply"). Finally, Defendant filed a Reply in support of its Cross-Motion to Confirm. *See* Docket No. [15] (hereinafter, "Def.'s Reply"). Accordingly, the parties' Cross-Motions are now ripe and ready for the Court's review and resolution.

## II. LEGAL STANDARD

A. *Legal Standard for Reconsideration of Final Judgment*

Plaintiff first moves for reconsideration of the Court's July 31, 2006 Order granting Defendant's motion to compel arbitration. Courts treat such motions for reconsideration as a "[Fed. R. Civ. P.] 59(e) motion if filed within 10 days of entry of the challenged order and as a Rule 60(b) motion if filed thereafter." *United States v. Pollard*, 290 F. Supp. 2d 153, 156 (D.D.C. 2003) (internal quotations omitted). In this case, Plaintiff's motion was filed on September 29, 2008, more than two years after the challenged Memorandum Opinion was issued on July 31, 2006. Accordingly, the Court shall treat Plaintiff's motion as seeking relief from a final judgment pursuant to Rule 60(b), which provides that:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or

misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).

The Rule "was intended to preserve 'the delicate balance between the sanctity of final judgments . . . and the incessant command of the court's conscience that justice be done in light of all the facts.'" *Good Luck Nursing Home, Inc. v. Harris*, 636 F.2d 572, 577 (D.C. Cir. 1980) (quoting *Bankers Mortgage Co. v. United States*, 423 F.2d 73, 77 (5th Cir. 1970)). As the D.C. Circuit has emphasized, Rule 60(b) "gives the district judge broad latitude to relieve a party from a judgment," *Richardson v. Nat'l R.R. Passenger Corp.*, 49 F.3d 760, 765 (D.C. Cir. 1995), but "should be only sparingly used," *Good Luck Nursing Home*, 636 F.2d at 577. In addition, the Rule specifies that any motions for relief from a final judgment "must be made within a reasonable time — and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c).

B.      *Legal Standard for Vacating or Affirming Arbitration Award*

As the D.C. Circuit has "repeatedly recognized, 'judicial review of arbitral awards is extremely limited.'" *Kurke v. Oscar Gruss & Son, Inc.*, 454 F.3d 350, 354 (D.C. Cir. 2006) (quoting *Teamsters Local Union No. 61 v. United Parcel Serv., Inc.*, 272 F.3d 600, 604 (D.C. Cir. 2001)). Courts "'do not sit to hear claims of factual or legal error by an arbitrator.'" *Id.* Rather, the FAA, 9 U.S.C. § 10(a), lists only four grounds upon which an arbitration award may

be vacated:

> (1) where the award was procured by corruption, fraud, or undue means;

> (2) where there was evident partiality or corruption in the arbitrators, or either of them;

> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).[7]  By contrast, "[u]nder the terms of § 9 [of the FAA], a court 'must' confirm an

arbitration award 'unless' it is vacated, modified, or corrected 'as prescribed'" in section 10(a).

*Hall Street Associates, LLC v. Mattel, Inc.*, 552 U.S. 576, 582 (2008); *see also* 9 U.S.C. § 9.

---

[7] The D.C. Circuit has previously recognized that, in addition to the four statutory grounds listed in 9 U.S.C. § 10(a), an arbitration award may be vacated if it is in "manifest disregard of the law." *See, e.g., Kurke*, 454 F.3d at 354.  The Supreme Court, however, recently held in *Hall Street Associates, LLC v. Mattel, Inc.*, 552 U.S. 576, 582 (2008), that the provisions set forth in 9 U.S.C. § 10 "provide the FAA's exclusive grounds for expedited vacatur."  In light of this holding, "some courts have refused to entertain vacatur based on 'manifest disregard for the law." *See Regnery Publishing, Inc. v. Miniter*, 601 F. Supp. 2d 192, 195 (D.D.C. 2009) (citing cases).  Neither the Supreme Court nor the D.C. Circuit has ultimately resolved this issue, however, and it therefore remains an open question in this Circuit whether the "manifest disregard" standard survives *Hall Street*. *See Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, __ U.S. __, 2010 WL 1655826, *7, n.3 (Apr. 27, 2010) (declining to decide whether "manifest disregard" survives *Hall Street*); *Regnery Publishing, Inc. v. Miniter*, Civ. Act. No. 09cv7039, 2010 WL 1169843, *1 (D.C. Cir. Mar. 17, 2010) (assuming without deciding that the "manifest disregard of the law" standard survives *Hall Street*).  The Court concludes that it not need resolve the question at this time, as even a generous reading of Plaintiff's *pro se* pleadings provides no indication that he intended to argue that the arbitration award should be vacated as in manifest disregard of the law. *See generally* Pl.'s Mot. to Vacate; Pl.'s Reply.  Moreover, it is readily apparent that even if he had made this argument and even if the standard remains viable in this Circuit, Plaintiff has not shown that "(1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case." *LaPrade v. Kidder, Peabody & Co.,* 246 F.3d 702, 706 (D.C. Cir. 2001).

# III. DISCUSSION

As indicated above, this matter comes before the Court upon the filing by Plaintiff of a Motion to Vacate Arbitration Ruling and Motion for Reconsideration to Compel Arbitration. Plaintiff advances three principal arguments in support of his motion. First, Plaintiff argues that the Court's Order compelling arbitration was improper because Plaintiff was not an employee of BB&T. Second, Plaintiff contends that the arbitration award was obtained by fraud. Third, Plaintiff asserts that the arbitration panel failed to sufficiently articulate a reason for its findings. Although Plaintiff's *pro se* briefing does not clearly distinguish between his request to vacate and his request for reconsideration, the Court understands the first of these arguments as challenging the propriety of the Court's July 31, 2006 Order and the latter two arguments as challenging the validity of the arbitration award itself. In addition, Defendant has cross-moved for an order affirming the arbitration award. The Court shall address the Plaintiff's arguments first before turning to consider BB&T's motion to confirm.

### A. *Plaintiff's Motion for Reconsideration*

Plaintiff first moves for reconsideration of the Court's July 31, 2006 Memorandum Opinion and Order compelling arbitration. According to Plaintiff, the Defendant falsely represented in its Motion to Compel Arbitration that Plaintiff was an employee of BB&T at the time of his termination and was for that reason subject to the arbitration clause in the Covenants Agreement. *See* Pl.'s Mot. to Vacate at 13-15. Plaintiff contends, however, that Defendant has since "admitted" during the course of the arbitration hearing that Plaintiff was never an employee of BB&T. *Id.* at 14. Specifically, Plaintiff asserts that Defendant disclosed for the first time during arbitration the fact that it had "never initiated the official act of making the Plaintiff an

employee of BB&T by submitting the Plaintiff's Form U-4 to NASD/FINRA;" Plaintiff argues

that, had this fact been known, "this Honorable Court would have been compelled to find that

Plaintiff was NEVER an employee of BB&T" and would not have granted the Defendant's

Motion to Compel Arbitration. *Id.* Given this new "admission" by BB&T, Plaintiff contends

that the Court's Order compelling arbitration should therefore be vacated. *Id.*

The Court does not agree. First, to the extent Plaintiff moves for reconsideration of the

Court's July 31, 2006 Memorandum Opinion and Order, Plaintiff's motion is time-barred.

Although Plaintiff's opening motion does not specify which provisions of Rule 60(b) he believes

apply in this instance, Plaintiff indicates in his reply briefing that he intended to invoke Rule

60(b)(2), (3), and (6). *See* Pl.'s Reply at 5, 6. Under those provisions of Rule 60(b)(2), "the

court may relieve a party or its legal representative from a final judgment, order, or proceeding

for:"

> (2) newly discovered evidence that, with reasonable diligence, could not have been
> discovered in time to move for a new trial under Rule 59(b) [i.e., 28 days];

> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or
> misconduct by an opposing party;

> * * *

> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). Significantly, Rule 609c) further specifies that motions for relief "under

Rule 60(b) must be made within a reasonable time period," which for motions made pursuant to

Rule 60(b)(2) and (3) is "no more than a year after the entry of the judgment or order." Fed. R.

Civ. P. 60(c)(1). "This one-year time limit is 'ironclad,' and cannot be extended by the Court."

*Owens v. District of Columbia*, 631 F. Supp. 2d 48, 58 (D.D.C. 2009) (quoting *Goland v. Central*

*Intelligence Agency*, 607 F.2d 339, 372 (D.C. Cir. 1978) and citing *Carr v. District of Columbia*, 543 F.2d 917, 925-26 (D.C. Cir. 1976)).  In this case, the challenged final judgment was issued on July 31, 2006, but Plaintiff did not file his Rule 60(b) motion until September 29, 2008 — i.e., more than two years after the entry of the order.  As such, Plaintiff's motion for relief under Rule 60(b)(2) and (3) is untimely.  *See id.* (denying motion for relief under Rule 60(b)(2)&(3) as it was filed four months beyond the one-year time limit).

Plaintiff's attempt to avoid this outcome by relying on the Rule's catch-all provision in paragraph (b)(6), which is not subject to the same one year time bar, is without merit.  The Supreme Court "has underscored the stringency of the Rule by holding that the catch-all provision, Rule 60(b)(6), is mutually exclusive with the grounds for relief in the other provisions of Rule 60(b), which include [] newly discovered evidence[] and fraud, [both] of which require that the motion be brought within one year of the judgment from which relief is sought." *Kramer v. Gates*, 481 F.3d 788, 792 (D.C. Cir. 2007); *cf. Williamsburg Wax Museum, Inc. v. Historic Figures, Inc.*, 810 F.2d 243 (D.C. Cir. 1987) ("Rule 60(b)(6) permits a court to grant relief from a final judgment for 'any other reason justifying relief . . .,'" which "courts have universally interpreted [] to mean other than the reasons specified in subsections 60(b)(1)-60(b)(5)").  Accordingly, because Plaintiff's motion is properly construed under Rule 60(b)(2) and/or Rule 60(b)(3), the Court may not consider the motion under Rule 60(b)(6) as well.

Second, even if Plaintiff's motion under Rule 60(b) had been timely filed, it is clearly without merit.  Contrary to Plaintiff's present characterization, Defendant did not argue — and the Court did not find — that Plaintiff was an employee of BB&T at the time of his termination. Nor did the Court suggest that application of the arbitration agreement hinged upon a finding that

Plaintiff had been an employee of BB&T. Rather, as the Court emphasized in its July 31, 2006 Memorandum Opinion, the arbitration agreement applied to "any and all disputes, disagreements, claims or other conflicts regarding, relating to, or arising out of [the Covenants] Agreement, the Parties' employment relationship, any termination thereof, any employment-related act or practice by Employer or its employees, representatives, or agents, any breach of [the Covenants] Agreement, or any alleged breach of [the Covenants] Agreement." *Owen-Williams*, 2006 U.S. Dist. LEXIS 52392, at *34 (quoting Covenants Agreement at 7). Thus, the parties' agreement to arbitrate clearly extended to "***any*** disputes arising out of the agreement," and was not predicated upon a finding that Plaintiff had formally entered into an employment relationship with BB&T. *See id.* at *16 (emphasis added). Accordingly, Plaintiff's [11] Motion shall be DENIED to the extent he seeks reconsideration of the Court's July 31, 2006 Memorandum Opinion and Order pursuant to Rule 60(b).

      *B.     Motion to Vacate Arbitration Award*

The Court turns next to consider Plaintiff's request for an order vacating the arbitration award. As indicated above, Plaintiff argues that the arbitration award should be vacated because (1) it was obtained by fraud and (2) the arbitration panel failed to sufficiently articulate a reason for its finding in favor of Defendant. Defendant opposes the motion on substantive grounds and also raises the issue of the Court's jurisdiction to entertain Plaintiff's motion. For the reasons set forth below, the Court concludes that it has jurisdiction over the present motion, but finds that Plaintiff has failed to demonstrate that vacatur is appropriate.

      1.     <u>The Court Has Jurisdiction To Entertain Plaintiff's Motion To Vacate</u>

Defendant first argues that this Court is without jurisdiction to rule on Plaintiff's request

17

to vacate.  As Defendant correctly notes, the Court, in its July 31, 2006 Memorandum Opinion and Order, granted Defendant's Motion to Compel Arbitration and dismissed Plaintiff's claims without prejudice.  *Owen-Williams*, 2006 U.S. Dist. LEXIS 52392, at *34-35.  In light of this dismissal, Defendant contends that Plaintiff was required to file a new action to have the arbitration award vacated.  Because he instead filed a motion to vacate in the same civil action, Defendant concludes that the Court lacks jurisdiction to entertain the present motion.  *See* Def.'s Opp'n at 7-8.

The FAA itself does not independently confer subject matter jurisdiction on a district court.  *See Hall Street*, 552 U.S. at 581-82.  Accordingly, the Court's subject matter jurisdiction must be based on an independent source.  In this case, the lawsuit was removed to this Court on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332.  The question now before the Court, then, is whether it has been deprived of its diversity jurisdiction over this case as a result of its previous Order dismissing the action without prejudice.  Neither party has directed the Court to any case law from within this Circuit addressing whether a court is deprived of jurisdiction to entertain a motion to vacate an arbitration award where, as here, the motion was filed under a case number previously dismissed without prejudice in favor of arbitration nor is the Court itself aware of any such legal precedent.  The issue thus appears to be one of first impression in the D.C. Circuit.

Several courts from outside this jurisdiction, however, have addressed this particular issue, and their decisions are instructive.  For example, in *Green v. Ameritch Corp.*, 200 F.3d 967 (6th Cir. 2000), the Sixth Circuit concluded, under circumstances nearly identical to those at issue here, that the district court had jurisdiction to resolve a motion to vacate an arbitration

award.  The plaintiff in *Green* filed suit alleging that the defendant had unlawfully discriminated

and retaliated against him in violation of several state discrimination statutes.  *Id.* at 969.  The

suit was originally filed in state court and was subsequently removed to federal district court by

the defendant based upon diversity jurisdiction.  *Id.* at 970.  Shortly thereafter, the parties entered

into an arbitration agreement; the district court therefore dismissed plaintiff's case **with** prejudice

based upon the parties' agreement to arbitrate.  *Id*.  The case then proceeded to arbitration, and an

arbitration award was ultimately issued in favor of the defendant.  *Id.* at 971.  The plaintiff

responded by filing a motion to vacate the arbitration award with the district court, but — as here

— did so "under the same case number as the original action."  *Id.* at 972.  The district court

nonetheless  considered and ruled on the substantive merits of the motion, ultimately issuing an

order vacating the arbitration award.  *Id*.  On appeal, the defendant challenged the district court's

subject matter jurisdiction, arguing that, "since the district court dismissed the case . . ., pursuant

to the parties' agreement to arbitrate, there was 'no open proceeding below' through which [the

plaintiff] could challenge the arbitrator's ruling."  *Id*.  Instead, the defendant urged that the

plaintiff should have "institut[ed] a new action under § 10 of the FAA in order to challenge the

arbitral award."  *Id*.  The Sixth Circuit disagreed:

> [Defendant] essentially argues that the procedure employed by [plaintiff] to challenge
> the arbitrator's decision deprived the district court of the subject matter jurisdiction
> it otherwise would have had.  Rather than filing a "new" motion under the FAA,
> [plaintiff] filed an "appeal" of the arbitrator's decision using the case number of the
> dismissed case, and naming the same judge. [Defendant] contends that because
> [plaintiff] proceeded under the old case, he also failed to reestablish diversity
> jurisdiction.  Although the proper procedure for initiating a proceeding under § 10
> when there is no prior jurisdictional basis is to file a motion to vacate the award that
> sets forth the facts establishing jurisdiction, [plaintiff]'s pleading error did not bar the
> district court's exercise of subject matter jurisdiction. The district court clearly had
> diversity jurisdiction over the action. . . . In these circumstances, the district court

properly exercised subject matter jurisdiction. . . .

*Id.* at 973-74.

The Second Circuit has similarly held that "a court which orders arbitration retains jurisdiction to determine any subsequent application involving the same agreement to arbitrate, including a motion to confirm an arbitration award." *Smiga v. Dean Witter Reynolds, Inc.*, 766 F.2d 698, 705 (2d Cir. 1985) ("the application for an order to arbitrate, up to and including the confirmation award, was all one proceeding, and thus, were not separable controversies"). Relying on this language, at least one other court has, in agreement with the Sixth Circuit, concluded that courts retain jurisdiction to hear a motion to vacate even where the original order compelling arbitration dismissed the plaintiff's claims. *See, e.g., Collins v. Horton, Inc.*, 361 F. Supp. 2d 1085, 1091 (D. Ariz. 2005) ("While it is true that the Court dismissed Plaintiffs' claims in favor of arbitration . . ., and that judgment was deemed entered pursuant to Fed. R. Civ. P. 58(b) . . ., courts have held that once a court obtains jurisdiction in an action and enters an order compelling arbitration, that court retains jurisdiction with respect to subsequent motions to confirm or vacate.").

Defendant has not provided the Court with any legal precedent directly holding to the contrary. First, Defendant cites to *Bonar v. Dean Witter Reynolds, Inc.*, 835 F.2d 1378, 1382 (11th Cir. 1988), for the proposition that proceedings to vacate or confirm an arbitration are instituted by filing a motion in the district court that functions as the initial pleading in a post-arbitration case. *See* Def.'s Opp'n at 7-8. *Bonar* does not, however, directly address whether the failure to do so deprives a court of subject matter jurisdiction. On this point, the Sixth Circuit has explained that "[a]lthough the proper procedure for initiating a proceeding under § 10 when

there is no prior jurisdictional basis is to file a motion to vacate the award that sets forth the facts

establishing jurisdiction," the failure to do so does "not bar the district court's exercise of subject

matter jurisdiction" where, as here, the court had diversity jurisdiction over the original action.

*Green*, 200 F.3d at 973-74.

Second, Defendant relies upon the D.C. Circuit's opinion in *LaPrade, Liddle &

*Robinson, LLP v. Kidder Peabody & Co., Inc.*, 146 F.3d 899 (D.C. Cir. 1998). *See* Def.'s Opp'n

at 8. Again, however, that case does not directly address the question now before the Court, and

the statements relied upon by Defendant are dicta only and do not necessarily conflict with the

decisions outlined above. In *LaPrade*, the district court stayed the underlying action pending

arbitration of the plaintiff's claims pursuant to the parties' arbitration agreement. *LaPrade*,146

F.3d at 901. During the course of the subsequent arbitration proceedings, the plaintiff filed a

separate action in state court seeking a stay of the arbitration hearings; in response, the defendant

returned to the district court requesting issuance of a temporary restraining order barring

plaintiff's efforts to obtain a stay of the arbitration in state court as a violation of the district

court's prior orders. *Id.* The district court agreed and issued a preliminary injunction and

awarded sanctions against plaintiff. *Id.* On appeal, the plaintiff argued that the district court

lacked jurisdiction to enter the sanctions order because it had only ordered the case stayed and

had not actually ordered the parties to enter arbitration; accordingly, the plaintiff asserted that the

district court did not have jurisdiction over the arbitration. *Id.* 902. The Circuit Court disagreed,

finding that "the district court had jurisdiction to address this situation: it retained jurisdiction

over the original suit, and the Arbitration Act did not divest it of jurisdiction." *Id.* at 903. While

the Court of Appeals emphasized in support of this holding that the district court had stayed,

rather than dismissed, the original action, it did ***not*** opine whether dismissal of the action would

have, in fact, deprived the district court of jurisdiction.  *See id.*  Its statements on this issue are

therefore dicta and do not control this action.

Third and finally, Defendant cites to *Bull HN Information Systems, Inc. v. Hutson*, 5 F.

Supp. 2d 68 (D. Mass. 1998).  *See* Def.'s Opp'n at 8.  In that case, the parties proceeded directly

to arbitration, and suit was initiated only after the arbitration had been completed when the

plaintiff filed a motion to vacate the arbitration award.  *Bull HN Info. Servs.*, 5 F. Supp. 2d at 69.

The district court subsequently entered a final judgment granting the motion to vacate.  *Id.*  The

parties therefore returned to arbitration, and a second arbitration award was eventually issued.

*Id.*  The plaintiff again sought to vacate the newly issued arbitration award, but did so by filing a

second motion to vacate in the district court under the same civil action number assigned to its

first motion to vacate.  *Id.* at 69-70.  While recognizing that the issue was "not crystal clear," the

district court ultimately concluded that it had no jurisdiction to take further action in the case

given its previous final judgment vacating the original arbitration award; the district court

indicated that the plaintiff's second motion to vacate should instead be filed as a new, separate

action.  *Id.* at 71.  As is apparent, then, the district court in *Bull HN Information Services, Inc.*,

was concerned with a question distinct from that now before the Court — namely, whether it had

jurisdiction to maintain a "supervisory role once an arbitration award has been vacated and final

judgment has [been] entered."  *Id.* at 70.

Accordingly, in the absence of any case law directly to the contrary, the Court is

persuaded by the logic set forth in *Green*, *Smiga*, and *Collins*, that it has jurisdiction over the

pending Motion to Vacate.  The parties do not dispute that the Court had original jurisdiction

over Plaintiff's lawsuit pursuant to 28 U.S.C. § 1332.  Additionally, the parties' arbitration

agreement recognizes that judgment on the final arbitration award "may be entered in any court

having jurisdiction thereof."  Covenants Agreement at 7-8.  Moreover, while the Court dismissed

Plaintiff's claims, it did so *without* prejudice.  *See Owen-Williams*, 2006 U.S. Dist. LEXIS

52392, at *35.  Given these circumstances, the Court concludes that "[Plaintiff's] pleading error

d[oes] not bar the [] [C]ourt's exercise of subject matter jurisdiction."  *Green*, 200 F.3d at 974.

### 2. Plaintiff Has Not Shown That Vacatur Is Appropriate

The Court turns next to consider Plaintiff's substantive arguments in support of his

motion to vacate.  As indicated above, Plaintiff argues that the arbitration award should be

vacated because (1) it was obtained by fraud and (2) the arbitration panel failed to sufficiently

articulate a reason for its finding in favor of Defendant.  For the reasons set forth below, the

Court finds that neither argument has merit.

### a. Plaintiff has not demonstrated that the arbitration award was procured by fraud.

Pursuant to 9 U.S.C. § 10(a)(1), the Court may vacate an arbitration award where "the

award was procured by corruption, fraud, or undue means."  Here, Plaintiff identifies two

allegedly fraudulent actions taken by Defendant during the course of the arbitration hearing, each

of which he believes justifies an order vacating the arbitration award in Defendant's favor.  <u>First</u>,

Plaintiff contends that Defendant fraudulently obtained a two-month delay in the arbitration

hearing in an attempt to secure more time to "dredge up something salacious in an attempt to

destroy the Plaintiff's character."  Pl.'s Mot. to Vacate at 12.  According to Plaintiff, the

Defendant "did not like the direction in which the Hearing was going."  Pl.'s Reply at 3.  Counsel

for Defendant therefore falsely alleged that Mr. Roccograndi was a student at West Virginia University and was available to testify in person only on the final day of the hearing; then, once it became clear that Plaintiff's counsel had a scheduling conflict on July 25, 2008 (i.e., the last scheduled day for the arbitration hearing), Defendant falsely insisted that "they needed Mr. Roccograndi to testify in person," knowing that this would result in a significant delay in the arbitration hearing. *Id.*; *see also* Pl.'s Mot. to Vacate at 12.

The Court is not so persuaded. As the record makes clear, Defendant advised the arbitration panel and Plaintiff of Mr. Roccograndi's scheduling conflict well in advance of the scheduled hearing. Indeed, Defendant filed a motion formally requesting an order permitting Mr. Roccograndi to testify on the final day in early July. *See* Def.'s Opp'n, Ex. 7 (Motion for Witness Scheduling Accommodation) (hereinafter, "Scheduling Motion"). The panel subsequently granted that motion on July 10, 2008, after considering all submissions in connection with the motion. *See* Def.'s Opp'n, Ex. 8 (Panel Order on Defendant's Scheduling Motion). Accordingly, all parties were aware as of that date that Mr. Roccograndi would be able to testify, if needed, only on Friday, July 25, 2008. Plaintiff's present claim that Defendant waited until the arbitration hearing to "falsely claim[]" that Mr. Roccograndi "was all of a sudden not available" is thus wholly without merit.

Rather, the record demonstrates that the delay in the arbitration hearing became necessary only when Plaintiff's counsel advised the panel for the first time at the hearing that he had a potential conflict on the morning of Friday, July 25, 2008. Urban Decl. ¶ 5. Given this conflict as well as the fact that one of the panel members was unable to stay late on Friday afternoon, the panel concluded that the hearing would not likely be completed in one afternoon. Urban Decl. ¶

7. The panel therefore decided that the hearing should be continued to another time when all parties were available for a full day hearing. *Id.* As indicated above, the panel chairman has averred that "[i]n making this determination, the panel specifically considered the likelihood that [Plaintiff's counsel] would not arrive at the arbitration hearing in downtown Washington, D.C. until 1:00 p.m. or later; the potential length of Mr. Roccograndi's testimony; and the desirability of providing both parties ample time to present their closing arguments without interruption. For these reasons, the panel continued the hearing." *Id.* The request to continue the hearing was not made by BB&T, who remained at all times "ready, willing and able to proceed on July 25, 2008 to complete the Arbitration, if [Plaintiff's counsel] had been available." *Id.* ¶ 8; *see also* Roccograndi Decl. ¶¶ 7-10 (averring that he had made arrangements to travel to Washington, D.C. on Friday, July 25, 2008, and was prepared to testify in person on that date).

Plaintiff complains, however, that this decision was made based upon the Defendant's false representation that Mr. Roccograndi was a student at West Virginia University, such that the delay was nonetheless fraudulently obtained. *See* Pl.'s Mot. to Vacate at 12; Pl.'s Reply at 3. As support for this proposition, Plaintiff states that "there has been zero evidence proffered by BB&T or Mr. Roccograndi to show that Mr. Roccograndi was a student at West Virginia University," Pl.'s Reply at 3, and that he himself "later inquire[d] and learn[ed] that Roccograndi was not currently a student at West Virginia University," Pl.'s Mot. to Vacate at 12; *see also* Pl.'s Reply at 3-4 (indicating that "Plaintiff's investigator searched in depth and found no one by the name of Thomas James Roccograndi, or any other person named Roccograndi, at West Virginia University during the time of the Arbitration Hearing"). Plaintiff has also attached a flier purportedly from West Virginia University that includes an exam schedule for the summer

session 2008, indicating that exams were held only on June 27, 2008 and on August 7, 2008. *See id.*, Ex. 5 (flier). The implication, of course, is that "had Roccograndi even been a student at West Virginia University the exam schedule that the University established would have in no manner, shape or form conflicted with the three original Arbitration Hearing dates in July." Pl.'s Mot. to Vacate at 12.

Contrary to Plaintiff's claims, Defendant has proffered evidence that Mr. Roccograndi was a summer student at West Virginia University at the time of the arbitration hearing. Specifically, Defendant has submitted the Declaration of Mr. Roccograndi, in which he avers under oath that he "was attending the summer session at West Virginia University" during July of 2008, and "was unable to appear before the FINRA Panel, in Washington, D.C., on July 23-24, 2008 because [he] was busy attending classes and preparing for final exams." Roccograndi Decl. ¶¶ 5-6. Plaintiff's unsupported, hearsay statements that he himself "later inquire[d] and learn[ed] that Roccograndi was not currently a student at West Virginia University" or that an investigator checked the records on his behalf are insufficient to rebut the sworn testimony of Mr. Roccograndi.[8] Plaintiff offers no documentary evidence to support these claims nor does he provide any detail indicating to whom he allegedly spoke and what specifically he was told or

---

[8] The Court notes that Plaintiff, in filing his *pro se* pleadings, has indicated that he "solemnly swear[s] under the penalty of perjury that [he] is competent to testify in the above caption[ed] [case]" and that "the contents of the statement[s] set forth in [his Motion and Reply] are the absolute truth to the best of [his] knowledge, information, and belief." *See* Pl.'s Mot. to Vacate at 1; Pl.'s Reply at 1. Accordingly, the Court, in deference to Plaintiff's *pro se* status, has treated any statements made by Plaintiff attesting to his personal knowledge of the facts at issue as if they had been asserted in an unsworn declaration under penalty of perjury pursuant to 28 U.S.C. § 1746. Nonetheless, to the extent Plaintiff's statements consist solely of unsupported, hearsay statements, such statements are clearly insufficient to support his motion for an order vacating the arbitration award in this case.

proffer a statement from the alleged investigator. Moreover, even accepting Plaintiff's evidence that no exams were scheduled for July 23-25, 2008, this does not demonstrate fraud on the part of Defendant. Admittedly, Defendant's motion for a witness scheduling accommodation broadly indicates that during "July 23-24, 2008, [Mr. Roccograndi] is in class and is taking final exams." *See* Scheduling Mot. ¶ 2. The clear import of this request, however, was that the panel accommodate Mr. Roccograndi's school schedule and permit him to testify on Friday, July 25, 2008, as "he ha[d] only one class" that day, which he could more easily skip. *Id.*; *see also* Roccograndi Decl. ¶ 6 ("I was unable to appear before the FINRA Panel, in Washington, D.C., on July 23-24, 2008 because I was busy attending classes and preparing for final exams."). Plaintiff has failed to demonstrate that this statement is false.

Finally, the Court notes that even if Plaintiff had shown that the Defendant secured a two-month delay in the arbitration hearing based upon fraudulent and false statements — which the Court expressly rejects — Plaintiff has not shown how this allegedly fraudulent misrepresentation and resulting delay was material to the arbitration's final award. Indeed, Plaintiff's counsel did not object to the delay at the time the hearing postponement was scheduled. *See* Hrg. Tr. Vol. 1 at 197:16-198:2. Moreover, Plaintiff himself acknowledges that Roccograndi's eventual testimony "offered absolutely no new evidence that was not already a part of the record." Pl.'s Mot. to Vacate at 12. While the delay did permit BB&T time to respond to Plaintiff's allegations at the hearing that he was a graduate of the University of Maryland, College Park (as is discussed in detail below), the question of Plaintiff's academic qualifications is a minor point and Plaintiff does not argue, nor does the Court find, that the panel's decision would have been different had such evidence not been presented. Accordingly,

in the absence of proof that arbitration award was ***procured*** by fraud, Plaintiff has not demonstrated that vacatur under 9 U.S.C. § 10(a)(1) is appropriate.

Second, Plaintiff asserts that Defendant fraudulently presented false testimony that the University of Maryland, College Park had no record of his attendance. Pl.'s Mot. to Vacate at 12-13. According to Plaintiff, Defendant intentionally presented this false information notwithstanding that (a) the "University of Maryland has recently had to concede that hundreds of thousands of records have be[en] lost and or misplaced" and (b) the position with BB&T "did NOT mandate a University Degree." *Id.* at 13. Significantly, Plaintiff offers no evidence other than his own unsupported, hearsay statements to demonstrate that the University of Maryland in fact lost certain records, as he now claims; once again, plaintiff has not proffered any documentary evidence to support this claim nor does he provide any detail indicating the alleged basis for this present claim. Plaintiff also has not argued that he was somehow denied a fair opportunity to make this argument to the arbitration panel itself during the hearing. Similarly, even assuming that the position with BB&T did not require a college degree, Plaintiff does not dispute that he testified during the arbitration hearing that he was a graduate of the University of Maryland, College Park (indeed, he continues to insist that he attended the University of Maryland, College Park); as such, evidence regarding the veracity of that statement is clearly relevant. Finally and most significantly, Plaintiff offers no evidence that the testimony presented by Defendant was false or fraudulently obtained. For that reason, Plaintiff has not demonstrated that vacatur under 9 U.S.C. § 10(a)(1) is appropriate.

       b.      Because arbitrators are not required to explain the basis for their awards, the lack of an explanation does not justify vacatur.

Plaintiff also argues that the arbitration award should be vacated because the arbitration panel did not provide an explanation of the award. Pl.'s Mot. to Vacate at 15. While Plaintiff does not clearly indicate under which of the provisions set forth at 9 U.S.C. § 10 the absence of an explanation falls, he appears to imply in his opening motion that the panel's failure to provide an explanation demonstrates that the arbitrators were partial to Defendant in violation of section 10(a)(2). *See id.* at 15. In his reply briefing, however, Plaintiff indicates that the arbitrators failure to provide an explanation was in violation of 9 U.S.C. § 10(a)(4), which permits a court to vacate an arbitration award "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." *See* Pl.'s Reply at 6. Regardless, under either theory, Plaintiff's argument is without merit.

"The Supreme Court has observed that arbitration awards may be made without explanation." *Sargent v. Paine Webber Jackson & Curtis, Inc.*, 882 F.2d 529, 532 (D.C. Cir. 1989) (citing *Wilko v. Swan*, 346 U.S. 427, 436 (1953)). As the D.C. Circuit has explained, "an explanation requirement would unjustifiably undermine the speed and thrift sought to be obtained by the 'federal policy favoring arbitration.'" *Id.* (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). Accordingly, "[i]n the context of arbitration, where there is no statutory requirement that the panel state its reasons, and (as here) none imposed by the institution under whose auspices the arbitration occurred, . . . the interest in assuring that judgment be swift and economical . . . must generally prevail." *Sargent*, 882 F.2d

at 533; *cf. Kurke*, 454 F.3d at 354-55 ("'Even where an explanation for an award is deficient or non-existent, we will confirm it if a justifiable ground for the decision can be inferred from the facts of the case.'") (quoting *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 390 (2d Cir. 2003)). In this case, Defendant asserts — and Plaintiff does not dispute — that FINRA itself does not require that arbitration awards issued under its rules be accompanied by a written explanation. *See* FINRA Manual, Rule 13904, *available* at http://finra.complinet.com/en/display/display_main.html?rbid=2403&element_id=4292 (last visited May 18, 2010). Because the panel was not required to provide a written explanation of its decision, the failure to do so does not justify vacatur of the arbitration award under either 9 U.S.C. § 10(a)(2) or § 10(a)(4).

Finally, the Court notes that Plaintiff also appears to suggest in passing that a finding of partiality on the part of the arbitrators is warranted because: (a) the arbitration panel's conclusion allegedly contradicts that reached by Superior Court Judge Tignor and therefore indicates that the panel "ignored the evidence presented to them;" and (b) the fact that the arbitrators assessed all arbitration costs to the defendant, rather than to plaintiff, is "conclusive and indisputable evidence that the Arbitrators found that BB&T was indeed liable but as Industry Arbitrators they refuse to assess punitive damages . . . against a fellow Member Firm of the Industry no matter how guilty they find they were." Pl.'s Mot. to Vacate at 15. Neither of these claims, however, is sufficient to warrant vacatur under 9 U.S.C. § 10(a)(2).

"'It is well established that a mere appearance of bias is insufficient to demonstrate evident partiality.'" *Williams Fund Private Equity Grp., Inc. v. Engel*, 519 F. Supp. 2d 100, 104 (D.D.C. 2007) (quoting *Alston v. UBS Fin. Servs., Inc.*, Civ. Act. No. 04-1798, 2006 WL 20516,

at *3 (D.D.C. Jan. 2, 2006)). "The party seeking to vacate an arbitration award on this ground must establish 'specific facts that indicate improper motives on the part of an arbitrator.'" *Id.* (quoting *Al-Harbi v. Citibank, N.A.*, 85 F.3d 680, 683 (D.C. Cir. 1996)). This Plaintiff has not done. First, as the Court explained in its July 31, 2006 Memorandum Opinion, while Judge Tignor temporarily vacated his previous decision denying Plaintiff's request for injunctive relief, he ultimately denied the temporary restraining order, concluding that "[i]nasmuch as Plaintiff did not actually commence employment with Defendant, he is unlikely to prevail on his request for injunctive relief." *See* Def.'s Opp'n, Ex. 1 (Order on Plaintiff's Motion for Temporary Restraining Order). The arbitration award finding in Defendant's favor is not, therefore, in conflict with Judge Tignor's final decision. Regardless, even if the arbitration panel had reached a conclusion different from that of Superior Court Judge Tignor, this by itself would not have demonstrated that the panel ignored evidence or was partial to Defendant. To the contrary, the panel's award clearly indicates that they "consider[ed] the pleadings, the testimony and evidence presented at the hearing." *See* Final Arbitration Award at 5. Second, the Court is not persuaded that the panel's assessment of the hearing costs to Defendant, rather than Plaintiff, may be read as an indication that the panel believed Defendant was liable but did not want to rule against him because of bias towards a "fellow Member Firm." Such an argument is entirely speculative and unsupported by the type of specific facts necessary to indicate improper motives on the part of an arbitrator. Moreover, the Court notes that Plaintiff's counsel twice confirmed Plaintiff's acceptance of the panel composition during the arbitration hearing and at no time voiced an objection to the panel members. *See* Initial Pre-Hearing Conference Scheduling Order at pp. 5-6 (indicating that the parties accepted the panel's composition); Hrg Tr. Vol. 1 at 4:3-8 ("Chairman

[]: At this point in time, given the disclosures have been made, the introductions have been made, I would ask each of the parties to confirm that they accept the panel's composition?" [Plaintiff's Counsel]: We accept the panel."). Accordingly, the Court finds that Plaintiff has not demonstrated that vacatur under either 9 U.S.C. § 10(a)(2) for these additional reasons. The Court shall therefore DENY Plaintiff's [11] Motion insofar as he moves for an order vacating the arbitration award in Defendant's favor.

### C. Defendant's Cross-Motion to Confirm

All that remains before the Court, then, is the Defendant's [13] Cross-Motion to Confirm the Arbitration Award. Defendant moves for confirmation of the award pursuant to 9 U.S.C. § 9, which provides as follows:

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title. If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made.

As the Supreme Court has observed, "[o]n application for an order confirming the arbitration award, the court 'must grant' the order 'unless the award is vacated, modified, or corrected.'" *Hall Street*, 552 U.S. at 587. "There is nothing malleable about 'must grant,' which unequivocally tells courts to grant confirmation in all cases, except when one of the 'prescribed' exceptions applies." *Id.*; *see also Int'l Thunderbird Gaming Corp. v. United Mexican States*, 473 F. Supp. 2d 80, 83 (D.D.C. 2007) ("in the absence of a legal basis to vacate, this court has no discretion but to confirm the award") *aff'd* 255 Fed. App'x 531 (D.C. Cir. 2007).

In this case, the parties' arbitration agreement specifies that "[t]he award and any order from the arbitration shall be final and binding on all parties to such arbitration and judgment thereon may be entered in any court having jurisdiction thereof." Covenants Agreement at 7-8. Under the plain language of 9 U.S.C. § 9, this agreement permits Defendant to apply to the United States court in and for the district within which the award was made for confirmation of the award. As indicated above, the arbitration hearing took place in Washington, D.C. *See* Final Arbitration Award. Plaintiff's application for confirmation of the award to this Court is thus proper. Moreover, because Plaintiff has not demonstrated that the arbitration award must be vacated or modified, the Supreme Court has made clear that this Court "must grant" Defendant's application for an order confirming the arbitration award. *See Hall Street Assocs.*, 552 U.S. at 587. The Court shall therefore GRANT Defendant's [13] Cross-Motion to Confirm Arbitration Award.

## IV.  CONCLUSION

For the reasons set forth above, Plaintiff's [11] Motion to Vacate Arbitration Ruling and Motion for Reconsideration to Compel Arbitration shall be DENIED and Defendant's [13] Application to Confirm Arbitration Award shall be GRANTED. An appropriate Order accompanies this Memorandum Opinion.

Date:   May 24, 2010

/s/
**COLLEEN KOLLAR-KOTELLY**
United States District Judge